| | |
|---|---|
| 1 | Jeffrey M. Tillotson, P.C. - State Bar No. 139372 |
| | jtillotson@lynnllp.com |
| 2 | Alan Dabdoub |
| | adabdoub@lynnllp.com |
| 3 | John Volney |
| | jvolney@lynnllp.com |
| 4 | Gail A. Hayworth |
| | ghayworth@lynnllp.com |
| 5 | LYNN TILLOTSON PINKER & COX, L.L.P. |
| | 2100 Ross Avenue, Suite 2700 |
| 6 | Dallas, Texas 75201 |
| | Telephone:  (214) 981-3800 |
| 7 | Facsimile:   (214) 981-3839 |

Ekwan E. Rhow - State Bar No. 174604
  eer@birdmarella.com
David I. Hurwitz - State Bar No. 174632
  dih@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Defendant Samsung
Telecommunications America, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SHANE GALITSKI, RICHARD TALIAFERRO and BRIAN NEWBOLD, individually and on behalf of others similarly situated, | CASE NO. 8:12-CV-00903-CJC (JRPx) |
| | **DEFENDANT SAMSUNG TELECOMMUNICATIONS AMERICA, LLC's NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiffs, | |
| vs. | |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Date:   October 15, 2012 |
| | Time:   1:30 p.m. |
| | Crtrm.: 9B |
| Defendant. | Assigned to Hon. Cormac J. Carney |

2897539.1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

Please take notice that on October 15, 2012 at 1:30 p.m. in Courtroom 9B of the above-entitled court, located at 411 West Fourth Street, Santa Ana, California, Defendant Samsung Telecommunications America, LLC ("STA") will, and hereby does, move to compel arbitration pursuant to 9 U.S.C. §§ 3 and 4.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Michael Pennington and David Hurwitz filed herewith, the entire record herein, and such further briefing and argument as the Court may hear.

This motion is made following the conference of counsel in compliance with Local Rule 7-3 that occurred on July 24, 2012. The parties were not able to agree on a resolution of the matters raised in this motion.

DATED: August 2, 2012

Jeffrey M. Tillotson, P.C.
Alan Dabdoub
John Volney
Gail A. Hayworth
LYNN TILLOTSON PINKER & COX, L.L.P.

Ekwan E. Rhow
David I. Hurwitz
BIRD, MARELLA, BOXER, WOLPERT,
 NESSIM, DROOKS & LINCENBERG, P.C.

By:  /s/David I. Hurwitz
 David I. Hurwitz
 Attorneys for Defendant Samsung
 Telecommunications America, LLC

2897539.1

2

DEFENDANT'S MOTION TO COMPEL ARBITRATION

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ALLEGATIONS OF PLAINTIFFS' COMPLAINT ........................................................ 2

    A. Plaintiffs' Class Action Lawsuit Against STA ....................................................... 2

    B. Plaintiff Taliaferro's Individual Allegations ............................................................ 2

    C. Plaintiff Newbold's Individual Allegations ............................................................. 3

    D. Plaintiff Galitski's Individual Allegations ............................................................... 3

    E. Plaintiffs' Customer Service Agreements with Verizon and Sprint ......................... 4

    F. Allegations Intertwining STA and Verizon/Sprint ................................................... 5

III. ARGUMENT AND AUTHORITIES ................................................................................. 6

    A. A Valid Written Arbitration Agreement Exists ........................................................ 7

    B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Provisions .................... 8

    C. The Court Should Enforce The Arbitration Provisions Against Plaintiffs ............ 10

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arellano v. T-Mobile USA, Inc., et al.,*
  Case No. C 10-05663, 2011 WL 1362165 (N.D. Cal. April 11, 2011) ...............9

*AT&T Mobility LLC v. Concepcion*,
  --- U.S. ---, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) .......................................8

*Bradford v. Samsung Telecommunications America LLC et. al.,* CV 10-01882
  MMM (OPx) (C.D. Cal. July 27, 2011 (slip op.) ..........................................9, 13

*Chalk v. T-Mobile USA, Inc.*,
  560 F.3d 1087 (9th Cir. 2009)................................................................................9

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006)............................................................................. 11

*Coneff v. AT & T Corp.*,
  673 F.3d 1155 (9th Cir. 2012).................................................................................8

*Grigson v. Creative Artists Agency, L.L.C.*,
  201 F.3d 524 (5th Cir. 2000) ..................................................................11, 13, 14

*Hansen v. KPMG, LLP*,
  No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29,
  2005) ....................................................................................................................13

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997)...............................................................................7

*In re Apple & AT & TM Antitrust Litig.*,
  826 F. Supp. 2d 1168 (N.D. Cal. 2011)........................................................ 11, 14

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ................................................................................11

*Laster v. T-Mobile USA, Inc.,*
  06CV675 DMS NLS, 2012 WL 1681762 (S.D. Cal. May 9,
  2012) ...................................................................................................................... 8

*Meyer v. T-Mobile USA Inc.,*
  836 F. Supp. 2d 994 (N.D. Cal. 2011) ...................................................... 7

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ............................................................................. 10

*Ozormoor v. T-Mobile USA, Inc.*,
   No. 08-11717, 2008 WL 2518549 (E.D. Mich. June 19, 2008) ................... 7

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
   259 F. Supp. 2d 531 (N.D. Tex. 2003) ............................................................. 14

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc.*,
   198 F.3d 88 (2d Cir. 1999) ................................................................................. 13

*Taliaferro v. Samsung Telecommunications America, LLC*,
   Civil Action No. 3:11-cv-01119-D, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012) ..................................................................................................................... 13

*Valero Ref., Inc. v. M/T Lauberhorn*,
   813 F.2d 60 (5th Cir. 1987) ................................................................................. 7

**STATE CASES**

*Berman v. Dean Witter & Co., Inc.*,
   44 Cal. App. 3d 999 (1975) ................................................................................. 8

**FEDERAL STATUTES**

9 U.S.C. § 2 ................................................................................................................ 8

9 U.S.C. § 3 ................................................................................................................ 7

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Samsung Telecommunications America, LLC ("STA") has filed three separate motions in response to Plaintiffs' complaint in this matter. First, STA filed a motion to transfer the case back to the Northern District of Texas, where the case was originally filed over a year ago but was voluntarily dismissed by Plaintiffs. Second, STA filed this motion, which seeks to compel arbitration of Plaintiffs' claims per the arbitration clauses contained in the service contracts between Plaintiffs and their wireless carriers Sprint and Verizon. Finally, STA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

In considering these motions, STA respectfully submits that the Court should first determine STA's motion to transfer. If the Court grants that motion, then Judge Fitzwater in the Northern District of Texas can decide STA's remaining motions, which were previously filed in the case when it was pending in Texas.

If this Court denies STA's motion to transfer, however, the Court should nevertheless grant STA's motion to compel arbitration.[1] In fact, with the filing of the complaint in this case, there is now more reason than ever to compel Plaintiffs to arbitration. In their attempt to state claims against STA, Plaintiffs rely heavily on their dealings with and contractual relationships with their wireless carriers Verizon and Sprint. By intertwining the conduct of their wireless carriers Verizon and Sprint with the conduct of STA, Plaintiffs have brought their claims within the scope of the arbitration provisions contained in their service contracts with Sprint and Verizon. Accordingly, Plaintiffs' claims against STA should be arbitrated, and STA respectfully requests that the Court compel Plaintiffs to arbitrate.

---

[1] If the Court denies STA's motion to compel arbitration, the Court should then consider STA's motion to dismiss.

## II. ALLEGATIONS OF PLAINTIFFS' COMPLAINT

The allegations of the complaint, which STA accepts as true solely for purposes of this Motion, are as follows:

### A. Plaintiffs' Class Action Lawsuit Against STA

Plaintiffs are suing STA on a class action basis for multiple state and federal claims arising out of an alleged defect in their Samsung Galaxy S smartphones. Plaintiffs allege that these mobile devices "suffer from a software or hardware defect, which causes the phones to randomly freeze, shut down, and power-off while in standby mode, rendering the phones inoperable and unfit for their intended use and purpose." Compl. at ¶ 2. Plaintiffs allege that: "To operate a phone that experiences the defect, a consumer must remove the battery from the Galaxy S phone, reinsert it, and power the phone back on." *Id.* at ¶ 23. Plaintiffs further allege that "[s]oon after the Samsung Galaxy S phones were released in Summer 2010, consumers lodged complaints about their experiences with the defect." *Id.* at ¶ 21.

### B. Plaintiff Taliaferro's Individual Allegations

For his part, Taliaferro alleges that he purchased a Fascinate™ [Samsung Galaxy S] phone on October 23, 2010 at Fry's Electronics (an authorized Samsung reseller) in Roseville, California. *Id.* at ¶ 42. "Soon thereafter," Taliaferro allegedly experienced the defect. *Id.* In or about March 2011, Taliaferro contacted his phone carrier, Verizon Wireless, "several times" about the alleged defect. *Id.* at ¶ 44. "Eventually his phone carrier replaced his phone with another Samsung Galaxy S Fascinate phone." *Id.* After Taliaferro continued to experience the same defect with his replacement phone, he "again contacted his phone carrier, which recommended that he install a software update intended to fix the defect." *Id.* at ¶ 45. Rather than fix the alleged defect, the new software update allegedly "exacerbated it." *Id.* "After contacting his phone carrier several times, and continuing to experience the Defect with his replacement phone," Taliaferro discontinued using his Fascinate and

purchased a new phone. *Id.* at ¶ 46. Taliaferro experienced problems resulting from the defect in his Fascinate "within all warranty periods." *Id.* at ¶ 43. Taliaferro does not allege that he asked STA (as opposed to his wireless service carrier, Verizon Wireless) to repair or replace his phone, nor does he allege that he was informed by Samsung Customer Care at 1-888-997-4357 to return his phone for warranty repair to Verizon Wireless.

### C.  Plaintiff Newbold's Individual Allegations

Newbold alleges that he purchased a Samsung Galaxy S Epic 4G on or about September 1, 2010 at a Sprint Kiosk (an authorized Samsung reseller) in California. *Id.* at ¶ 49. "Shortly after purchase," Newbold's phone "experienced the defect." *Id.* Plaintiff Newbold attempted to resolve the defect by installing the newest version of Android on his phone, but these changes failed to adequately repair his phone. *Id.* at ¶ 50. In or about February 2011, Newbold "contacted his phone carrier several times about the defect." *Id.* at ¶ 52. "His phone carrier refused to offer a replacement phone and instead attempted to repair the phone by asking him to repeatedly reset the device." *Id.* Newbold continued to experience the defect and after "contacting his phone carrier several times in unsuccessful attempts to repair or replace the device," Newbold discontinued using his Epic 4G and purchased a new phone. *Id.* at ¶ 53. Newbold experienced problems resulting from the defect "within all applicable warranty periods." *Id.* at ¶ 51. Newbold does not allege that he asked STA (as opposed to his wireless service carrier, Sprint) to repair or replace his phone, nor does he allege was informed by Samsung Customer Care at 1-888-997-4357 to return his phone for warranty repair to Sprint.

### D.  Plaintiff Galitski's Individual Allegations

Plaintiff Galitski alleges that he purchased a Samsung Galaxy S Epic 4G phone on or about October 1, 2010 at a Sprint Store in Costa Mesa, California. *Id.* at ¶ 32. Galitski alleges that his phone experienced the defect a "few months after." *Id.* at ¶ 33. In early 2011, Galitski claims that he contacted STA to get assistance

with a headphone jack and also informed STA about the power-off defect. *Id.* Galitski alleges he received no assistance from STA regarding either problem. *Id.* Galitski further alleges that he also informed Sprint of the defect and was not given any assistance, although he alleges that Sprint did send him a replacement Epic 4G phone "due to the headphone jack problem." *Id.* at ¶ 34. Galitski alleges that he experienced the defect more frequently with his replacement phone, and that in October 2011, he contacted Sprint about a "screen burn-in" and he received another replacement phone. *Id.* at ¶ 36. Again, he alleges that he informed Sprint about the defect but received no assistance (apart from the replacement phone). *Id.* Galitski experienced problems resulting from the defect in his Epic 4G phone "within all warranty periods." *Id.* at ¶ 39. Notably, Galitski does not allege that, after his initial call to STA about the headphone jack problem, he asked STA (as opposed to his wireless service carrier, Sprint) to repair or replace his phone, nor does he allege that he was informed by Samsung Customer Care at 1-888-997-4357 to return his phone for warranty repair to Sprint.

**E.    Plaintiffs' Customer Service Agreements with Verizon and Sprint**

Importantly, when each of these Plaintiffs purchased their Galaxy S smartphones, they entered into customer service contracts with their respective wireless carriers. For his part, Plaintiff Taliaferro used Verizon for wireless service for his Galaxy S phone. *Id.* at ¶ 44. By activating Verizon Wireless service for his phone, Taliaferro accepted the terms and conditions of the Verizon Customer Service Agreement. *See* Declaration of Michael Pennington, Exhibit A at 5 ("You accept when you . . . activate your service through your wireless phone.").

For their part, Plaintiffs Galitski and Newbold allege that they purchased their phones from Sprint and that Sprint was their wireless carrier. *Id.* at ¶¶ 32, 50. By activating Sprint wireless service for their Galaxy S phones, Galitski and Newbold each accepted the terms and conditions of the Sprint Customer Service Agreement. (Pennington Decl., Exs. A at 5 and B at 10) ("You accept the Agreement when you

attempt to or in any way use the Services; (c) pay for the Services; or (d) open any package or start any program that says you are accepting the Agreement when doing so.").

The Verizon service contract contains a dispute resolution and mandatory arbitration and class action waiver provision which covers: "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OF SERVICES. . . ." (Pennington Decl., Ex. A at 8.)  The Verizon contract states it is governed by the Federal Arbitration Act ("FAA"). (*Id.*)

The Sprint service contract contains a mandatory arbitration and class action waiver provision governed by the FAA which covers "all Disputes," defined broadly as: "any claims or controversies against each other related in any way to our Services or the Agreement, including, but not limited to, coverage, Devices, privacy, or advertising, even if it arises after Services have terminated – this includes claims you bring against our employees, agents, affiliates or other representatives, or that we bring against you." (Pennington Decl., Ex. B at 16.)

### F. Allegations Intertwining STA and Verizon/Sprint

Plaintiffs' contractual relationship with their wireless carriers is essential to their claims against STA.  In their complaint, Plaintiffs make several allegations that Verizon and Sprint acted in concert with STA or were otherwise agents of STA in their dealings with Plaintiffs.  For example, Plaintiffs broadly allege that "Whenever this complaint refers to any act of Defendant that reference shall mean . . . (3) any persons who were acting as authorized agents and resellers for Defendant's phones." *Id.* at ¶ 13.  Plaintiffs further allege that the "phone carriers" are STA's

"authorized phone service facilit(ies)" and that STA referred customers to their "local phone carriers for service" – i.e., Verizon and Sprint. *Id.* at ¶¶ 59-60.

This merging of STA with Verizon and Sprint is critical to Plaintiffs' contention that they each tried (but failed) to obtain warranty service for their mobile devices because all but one of Plaintiffs' attempts to repair or replace their Galaxy S phones were conducted exclusively through Verizon or Sprint and *not* directly with STA.[2] *Id.* at ¶¶ 31-54. Moreover, after specifically pleading that Plaintiffs tried and failed to receive an adequate remedy from their respective wireless phone carriers, including having the carrier replace allegedly defective phones with other defective phones, Plaintiffs then plead that "*Defendant*'s policy of replacing one defective phone with another phone fails to offer consumers a viable remedy . . . ." *Id.* at ¶ 64 (emphasis added).

In this regard, Plaintiffs' claims against STA are largely based on their dealings with and contractual relationships with Verizon and Sprint. For example, Plaintiffs allege that "[w]hen consumers contacted Samsung and its authorized agents and resellers to complain about the defect, Samsung denied there was any defect . . . ." *Id.* at ¶ 57. Plaintiffs also allege that Verizon "direct[ed] customers who experience a defect with their Galaxy S phones during the warranty period to contact Verizon customer service for repair or a replacement device," *Id.* at ¶ 60, but that Plaintiffs never received compensation or working phones from their carriers or STA. *Id.* at ¶¶ 63-65.

**III. ARGUMENT AND AUTHORITIES**

The main issue presented by this motion is whether STA (a nonsignatory to Plaintiffs' service contracts with their wireless carriers) may seek to compel the

---

[2] Plaintiff Galitski states that he contacted STA to get assistance with a headphone jack problem and also informed STA of the defect. Compl. at ¶ 34. However, when he returned his phone for repair or replacement, he returned it to Sprint, not STA. *Id.* at ¶¶ 34-35.

Plaintiffs to bring their claims against STA in arbitration. As explained in detail below, the Court should compel Plaintiffs to arbitration because Plaintiffs have put their wireless carriers' conduct directly at issue in this lawsuit. Indeed, without relying on their contractual relationship with and dealings with their wireless carriers, Plaintiffs would have no lawsuit against STA. Following principles set out in the controlling Ninth Circuit case law, this case should be sent to arbitration, just as STA requested be done before Plaintiffs voluntarily dismissed the Texas Action and refiled it in this Court.

### A. A Valid Written Arbitration Agreement Exists

At the outset, there is no dispute in this case that Plaintiffs are parties to binding service contracts with their wireless service carriers and that those contracts require arbitration. Pennington Decl. ¶¶ 5-6.

The FAA requires that, for an arbitration provision to be valid, it must be in writing and must be an "agreement" between the parties. 9 U.S.C. §§ 2-3. There is no requirement, however, that an enforceable arbitration agreement actually be signed by the parties; rather, all that is required is that each party has agreed to be bound. *See Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 62 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature.").

Furthermore, a party may be bound by the terms and conditions of an agreement by accepting a good or service, even if the terms and conditions are not made known to the party before purchasing that good or service. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (holding that consumer who purchased computer over the telephone was bound by terms and conditions of contract shipped with computer when he did not return the computer to the seller); *Meyer v. T-Mobile USA Inc.,* 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (plaintiff bound by arbitrations provision in terms and conditions based on her renewal of wireless carrier's service and

contract); *Ozormoor v. T-Mobile USA, Inc.*, No. 08-11717, 2008 WL 2518549, at *3 (E.D. Mich. June 19, 2008) (plaintiff was bound by arbitration agreement contained in wireless carrier's terms and conditions when plaintiff activated phone and did not return it within 14 days). Plaintiffs' own allegations show that each Plaintiff agreed to the respective service contracts with their wireless carriers when they purchased their mobiles devices.[3]

The Ninth Circuit has considered a similar arbitration clause in a wireless carrier's service contract and held that the arbitration clause at issue was not substantively unconscionable. *See Coneff v. AT & T Corp.*, 673 F.3d 1155, 1162 (9th Cir. 2012). Following *Coneff*, a district court held that a similar arbitration clause in a wireless carrier's service contract was not procedurally unconscionable. *Laster v. T-Mobile USA, Inc.,* 06CV675 DMS NLS, 2012 WL 1681762 (S.D. Cal. May 9, 2012) (granting motion to compel arbitration).

Because each service contract contains an enforceable mandatory arbitration provision, under 9 U.S.C. § 2, Plaintiffs are required to arbitrate their claims.

**B.   Plaintiffs' Claims Fall Within the Scope of the Arbitration Provisions**

Likewise, there is no dispute that Plaintiffs' claims against STA are covered by the arbitration clauses contained in their service contracts. Under applicable California law, an arbitration agreement may broadly encompass both contractual and tort claims. *See, e.g., Berman v. Dean Witter &* Co.*, Inc.*, 44 Cal. App. 3d

---

[3]   Furthermore, because each service contract contains a waiver-of-class action provision (*see* Pennington Decl., Exs. A at 8 and B at 16) that provision should be enforced and Plaintiffs should be required to arbitrate their claims separately and not on behalf of a class. *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740, 1753, 179 L. Ed. 2d 742 (2011) (upholding class waiver provision of arbitration clause in consumer contract for wireless service).

999, 1003 (1975) (holding phrase "any controversy … arising out of or related to this contract" broad enough to encompass both contract and tort claims). Federal courts in this Circuit have compelled arbitration of claims asserted against a cellular phone manufacturer where the claims against the manufacturer were asserted in the same proceeding as claims against the phone carriers. *See Arellano v. T-Mobile USA, Inc., et al.,* Case No. C 10-05663, 2011 WL 1362165 (N.D. Cal. April 11, 2011) (finding that T-Mobile's supplier was an intended third-party beneficiary of arbitration agreement between T-Mobile and consumer plaintiff, and compelling arbitration of claims against supplier); *Bradford v. Samsung Telecommunications America LLC et. al.,* CV 10-01882 MMM (OPx) (C.D. Cal. July 27, 2011 (slip op.) (order granting Samsung's motion to compel class action claim asserted against it based on consumer's arbitration agreement with T-Mobile);[4] *see also Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092, n. 2 (9th Cir. 2009) (noting that the District Court had determined that language in T-Mobile's arbitration agreement covering "equipment manufacturers and dealers" covered claims against Sony, T-Mobile's supplier in that case).

Here, the arbitration clauses in the Verizon and Sprint service contracts encompass Plaintiffs' claims against STA. The Verizon contract states that "any controversy or claim arising out of or relating to . . . any product or service provided under or in connection with this agreement, or any advertising for such products or services, will be settled by one or more neutral arbitrators . . . ." (Pennington Decl., Ex. A at 8.) The Sprint contract states: "We each agree to finally settle all disputes (as defined and subject to any specific exceptions below) only by arbitration." (Pennington Decl., Ex. B at 16.) The Sprint contract defines "disputes" broadly as: "any claims or controversies against each other related in

---

[4] A copy of the July 27, 2011 Order Granting Samsung Telecommunications, LLC's Motion to Compel Arbitration in *Bradford* is attached to the Declaration of David Hurwitz as Exhibit A.

any way to our Services or the Agreement, including, but not limited to . . . Devices . . . ." (Pennington Decl., Ex. B at 16.)

Plaintiffs allege various claims based on warranty law and state consumer protection statutes, all arising out of alleged defects in STA's Galaxy S phones. Plaintiffs allege that they experienced these defects while subscribing to wireless service from Verizon and Sprint. Plaintiffs' claims, therefore, depend significantly on Verizon and Sprint's purported status as "authorized agents" and "authorized phone service facilit[ies]" for STA. Compl. at ¶¶ 58-62. As the alleged "agents" of STA,[5] both Verizon and Sprint are alleged to have attempted, but failed, to repair the defect or provide a functioning replacement phone. In the case of Taliaferro, the complaint alleges that Verizon instructed Plaintiff to "update" the phone, making the problem worse. *Id.* at ¶¶ 45, 50.

It is beyond question that any customer claim against Verizon or Sprint that arose from either carrier's conduct in servicing a phone would be subject to arbitration. Finally, there can be no question that Plaintiffs' claims against STA, which explicitly rest on the alleged conduct of Verizon and Sprint as so-called "authorized agents" of STA for phone servicing, fall squarely within the scope of these arbitration agreements. Accordingly, Plaintiffs' claims are within the scope of the arbitration provisions of their service contracts with Verizon and Sprint.

### C. The Court Should Enforce The Arbitration Provisions Against Plaintiffs

STA, although a nonsignatory to the service contracts, may seek to enforce the arbitration provisions against Plaintiffs under controlling Ninth Circuit

---

[5] In its contemporaneously-filed motion to dismiss, STA argues that Plaintiffs have failed to plead sufficient facts to establish an agency relationship between STA and Verizon or Sprint. That being said, Plaintiffs' allegations related to the conduct of Verizon and Sprint – whether or not Plaintiffs have adequately pleaded an agency relationship between STA and the wireless carriers – do bring Plaintiffs' claims within the scope the arbitration clauses cited above.

precedent. *See Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045–46 (9th Cir. 2009) (recognizing that under principles of equitable estoppel a non-signatory may compel a signatory to arbitrate); *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006) (identifying equitable estoppel as grounds for enforcing arbitration clauses as to non-signatories).

Federal courts in California have permitted a nonsignatory to compel arbitration on equitable estoppel grounds in two circumstances. *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176 (N.D. Cal. 2011), motion to certify appeal granted, 2012 WL 293703 (N.D. Cal. Feb. 1, 2012). First, equitable estoppel applies "where the 'signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the [non-signatory].'" *Id.*; *see also Grigson v. Creative Artists Agency, L.L.C.*, 201 F.3d 524, 527 (5th Cir. 2000).

Second, compelling arbitration on equitable estoppel grounds is appropriate where "the issues the [non-signatory] is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *In re Apple*, 826 F. Supp. 2d at 1176; *see also JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004). Either prong may independently support arbitration-by-equitable-estoppel.

Plaintiffs' allegations about the conduct of STA and the wireless carriers show that Plaintiffs' claims are intertwined with and dependent upon Plaintiffs' contractual relationship with their wireless carries. These allegations warrant arbitration-by-estoppel under the second prong identified above. Plaintiffs' allegations include:

- "In or around October 2011, plaintiff Galitski's replacement phone suffered from a significant screen burn-in which resulting in him obtaining another replacement phone from Sprint. While contacting Sprint regarding this problem, plaintiff Galitski once again informed Sprint about the defect, and again received no assistance." Compl. at

¶ 36.

- "Plaintiff Taliaferro contacted his phone carrier, Verizon Wireless, several times about the defect. Eventually his phone carrier (an authorized Samsung agent and reseller) replaced his phone with another Samsung Galaxy S Fascinate phone. Plaintiff Taliaferro continued to experience the same Defect with his replacement Samsung Galaxy S Fascinate phone." *Id.* at ¶ 44.

- "Plaintiff Taliaferro again contacted his phone carrier, which recommended he install a software update intended to fix the defect. Rather than fix the defect, the new software update exacerbated it." *Id.* at ¶ 45.

- "Beginning in or about February 2011, Plaintiff Newbold contacted Sprint customer service several times about the defect. His phone carrier refused to offer a replacement phone and instead attempted on multiple occasions to repair the phone by asking him repeatedly to reset the device." *Id*. at ¶ 52.

- "When consumers contacted Samsung and its authorized agents and resellers to complain about the defect, Samsung denied there was any Defect with their Galaxy S phones." *Id.* at ¶ 57.

- "The Verizon Wireless 'Samsung Fascinate a Galaxy S phones Support' webpage directs customers who experience a defect with their Galaxy S phones during the warranty period to contact Verizon customer service for repair or a replacement device." *Id.* at ¶ 60.

In light of these allegations, Plaintiffs should be estopped from denying arbitration of their claims. Indeed, without wireless service provided by Sprint or Verizon, without agreeing to be bound by the terms of their service contracts with their wireless carriers, and without allegations of Sprint and Verizon's conduct, Plaintiffs would have no factual basis for this lawsuit.

In addition to the above, one other factor courts have looked to in evaluating a motion to compel arbitration on equitable estoppel grounds is whether the complaint unifies signatory and nonsignatory parties such that the allegations against one cannot be separated from the other. *See generally Bradford*, Slip. Op. at 11-13 (where a plaintiff asserts claims against both a signatory and non-signatory, courts allow the nonsignatory to invoke equitable estoppel to compel arbitration if "(1) the complaint raises allegations of substantially interdependent and concerted misconduct by both a signatory and one or more non-signatories; and (2) this misconduct is founded in and intertwined with the underlying contractual obligations", citing *Hansen v. KPMG, LLP*, No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)). In *Bradford,* the plaintiffs attempted to circumvent the arbitration agreement by dismissing their claims against the carrier and attempting to litigate their remaining claims against STA only. The *Bradford* court rejected this gambit, citing the Fifth Circuit's opinion in *Grigson,* and granted STA's motion to compel arbitration. *Id.*

Here, Plaintiffs' allegations expressly unify STA and Verizon/Sprint as "Defendants," rendering it impossible to know which entity is discretely responsible for which allegations, in whole or part.[6] *See* Compl. at ¶ 13. By alleging that STA and Verizon/Sprint are unified as principal and agent, Plaintiffs seek to hold STA responsible for the wireless carriers' conduct. Courts have enforced arbitration-by-estoppel against a signatory plaintiff based on similar failures to distinguish between signatory and nonsignatory parties' conduct. *See Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern.,*

---

[6] This is a conscious pleading decision by Plaintiffs as a strategy to cure pleading deficiencies that led the Texas court to dismiss their prior complaint, specifically that Plaintiffs had not pleaded that they had attempted to service the phones with an "authorized phone service facility" before filing suit. *Taliaferro v. Samsung Telecommunications America, LLC,* Civil Action No. 3:11-cv-01119-D, 2012 WL 169704, at *2, *6 (N.D. Tex. Jan. 19, 2012).

*Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999) (upholding arbitration-by-estoppel, in part, because plaintiff's complaint treated both signatory and nonsignatory entities as the same entity); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (enforcing arbitration-by-estoppel in part because complaint lumped signatory and nonsignatory parties together as "Defendants").

Finally, even when a complaint does not unify the signatory and nonsignatory parties as is the case here, courts have enforced arbitration clauses when the nonsignatory's liability cannot be considered without evaluating the signatory's conduct. *See Grigson*, 201 F.3d at 527. The allegations of the complaint show that Plaintiffs' claims are only actionable by virtue of Verizon's and Sprint's conduct and the contractual relationship between Plaintiffs and the wireless carriers.

First, based on the allegations in the complaint, it is impossible for Plaintiffs to bring their warranty actions against STA without considering the conduct of Verizon and Sprint. Indeed, Plaintiffs do not allege they have ever interacted with STA when attempting to repair or replace phones, only Verizon or Sprint. As pleaded, the alleged defect in the Galaxy S phone is only actionable because of Verizon and Sprint's failure to correct the defect. Because it is impossible to consider claims against STA without considering Verizon and Sprint's conduct, arbitration-by-estoppel is warranted.

Second, each Plaintiff only sought repair and replacement from his or her wireless carrier by virtue of the fact that each Plaintiff had contracted for wireless service with Verizon or Sprint. The natural inference from the complaint is that, because each Plaintiff received wireless service for his phone through Verizon or Sprint, the customer was justified in going to the carrier for service. In other words, it is the contractual relationship between Verizon and Sprint and Plaintiffs – as memorialized in the service contract – that gives rise to the allegations underlying Plaintiffs' claims. *In re Apple*, 826 F. Supp. 2d at 1176 (holding that Apple could

enforce an arbitration clause in a wireless service contract under equitable estoppel theory).

Had Plaintiffs filed suit against Verizon and Sprint for failures to repair or replace their phones, those claims would unquestionably have to be arbitrated. Had Plaintiffs joined their potential claims against the wireless carriers in a suit against STA, the claims against STA would also unquestionably have to be arbitrated. By suing only STA, and not the carriers, Plaintiffs are clearly attempting to avoid arbitration despite the fact that Plaintiffs' claims fall squarely within the scope of their wireless service contracts. Plaintiffs should not be allowed so easily to escape their agreement to arbitrate.

**IV.   CONCLUSION**

For the foregoing reasons, and in the alternative to the contemporaneously filed motion to dismiss, Defendant respectfully moves this Court to compel Plaintiffs to arbitrate their claims separately and as individuals in accordance with the terms of the Verizon and Sprint customer agreements.

DATED: August 2, 2012

Jeffrey M. Tillotson, P.C.
Alan Dabdoub
John Volney
Gail A. Hayworth
LYNN TILLOTSON PINKER & COX, L.L.P.

Ekwan E. Rhow
David I. Hurwitz
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.

By:   /s/David I. Hurwitz
           David I. Hurwitz
    Attorneys for Defendant Samsung
    Telecommunications America, LLC