IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHANE GALITSKI, et al.,                    §
                                           §
                        Plaintiffs,        §
                                           §   Civil Action No. 3:12-CV-4782-D
VS.                                        §
                                           §
SAMSUNG TELECOMMUNICATIONS §
AMERICA, LLC,                              §
                                           §
                        Defendant.         §

MEMORANDUM OPINION
AND ORDER

In this putative class action arising from allegedly defective Galaxy S mobile phones manufactured by defendant Samsung Telecommunications America, LLC ("Samsung") and sold to plaintiffs by non-parties Sprint and Verizon Wireless ("Verizon"), Samsung moves under the doctrine of arbitration by estoppel as a third-party nonsignatory to plaintiffs' contracts with Sprint and Verizon to compel plaintiffs to arbitrate their claims. Alternatively, Samsung moves for partial dismissal of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court denies the motion to compel arbitration and grants in part and denies in part the motion for partial dismissal.

I

Plaintiffs Shane Galitski ("Galitski"), Richard Taliaferro ("Taliaferro"), and Brian Newbold ("Newbold") bring this putative class action against Samsung on behalf of a class of California residents who purchased allegedly defective Galaxy S mobile phones. Plaintiffs allege that Galaxy S phones—smartphones using the Google Android operating system that

are marketed, distributed, and warranted by Samsung—frequently freeze, shutdown, and power-off randomly while in standby mode, rendering the phones inoperable.[1]  The complaint refers to these problems collectively as "[t]he defect."  *E.g.,* Compl. ¶ 17.[2] Plaintiffs allege that, although Galaxy S phones are sold under different names by various wireless carriers, they are essentially the same phones with different names and experience the defect regardless which carrier distributes the phone.

The complaint alleges that Galitski and Newbold purchased their Galaxy S phones

---

[1]As explained in more detail below, *see infra* § III, in deciding Samsung's Rule 12(b)(6) motion, the court accepts as true all of the well-pleaded facts of plaintiffs' complaint and views them in the light most favorable to plaintiffs.

In deciding Samsung's motion to compel arbitration, the court applies a preponderance of the evidence standard.  *See, e.g., Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) (per curiam) ("The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence.") (applying Federal Arbitration Act ("FAA")).  The standard for deciding whether the movant's evidence is admissible is akin to the one applied when deciding a summary judgment motion, including the requirement that evidence in a declaration be admissible and based on personal knowledge.  *See id.* (holding that declaration was sufficient evidence on motion to compel to establish assignment of rights by a preponderance of the evidence considering strong presumption under FAA in favor of arbitration, summary nature of motion to compel arbitration, and Fifth Circuit's prior decision in *Doddy v. Oxy USA, Inc.*, 101 F.3d 448 (5th Cir. 1996)).

Plaintiffs object to the declaration of Michael Pennington ("Pennington"), on which Samsung relies in support of its motion to compel. They contend that most of Pennington's declaration is inadmissible because it is not based on personal knowledge, and that the exhibits to his declaration—the Verizon Wireless Customer Agreement and the Sprint Service Agreement—constitute inadmissible hearsay and lack of authentication.  Without suggesting that the court agrees in whole or in part with plaintiffs' objections, the court overrules them as moot given its decision to deny the motion to compel.

[2]Other or more specific allegations concerning the defect are found elsewhere in the complaint. *See, e.g.,* ¶¶ 22-26, and 28.

from Sprint, their wireless carrier.  When making the purchase, each entered into a Sprint

Service Agreement that contains a clause requiring binding arbitration.[3]  According to the

complaint, Galitski began experiencing the defect within a few months of purchasing a

Galaxy S phone from Sprint; and after he experienced a problem with the headphone jack

as well, he contacted Samsung for assistance with the headphone jack problem and also

informed Samsung of the defect, but he was not given any assistance regarding the defect.

Although Sprint provided Galitski a replacement Galaxy S phone due to the headphone jack

problem, that phone experienced the defect more frequently than did his original phone.

Galitski's replacement phone later suffered from a significant screen burn-in, resulting in his

obtaining a second replacement Galaxy S phone from Sprint.  When contacting Sprint

regarding this problem, he informed Sprint about the defect, but again received no assistance.

Galitski continues to use the second replacement phone, but plaintiffs allege that it, too,

experiences the defect.  Galitski has attempted unsuccessfully to resolve the defect by

changing the operating system.

---

[3]The Sprint Service Agreement provides, in relevant part: "[w]e each agree to finally
settle all disputes (as defined and subject to any specific exceptions below) only by
arbitration."  D. App. 15.  The agreement defines "disputes" as

> any claims or controversies against each other related in any
> way to our Services or the Agreement, including, but not limited
> to, coverage, Devices, privacy, or advertising, even if it arises
> after Services have been terminated—this includes claims you
> bring against our employees, agents, affiliates or other
> representatives, or that we bring against you.

*Id.*

Newbold also purchased his Galaxy S phone from Sprint. Shortly after the purchase, his phone experienced the defect. Newbold attempted to resolve the problem by changing the operating system and installing the newest version of Android. When these changes failed to repair his phone, Newbold returned it to the factory settings and installed a software update that Samsung provided. After the update was installed, his phone experienced the defect more frequently. Although Newbold contacted Sprint customer service several times about the defect, Sprint refused to offer a replacement; instead, it attempted on multiple occasions to repair the phone by asking Newbold to reset the device. Although Newbold followed this direction, he continued to experience the same defect. After contacting Sprint several times in unsuccessful attempts to repair or replace his phone, he finally purchased a new phone, receiving no credit for his initial purchase of Galaxy S.

Taliaferro purchased his Galaxy S phone at an electronics store that is an authorized Samsung agent and reseller, and his wireless carrier is Verizon. When making the purchase, he entered into a Verizon Wireless Customer Agreement ("Verizon Customer Agreement") that provided for binding arbitration of claims arising out of or relating to the agreement.[4]

---

[4]The Verizon Customer Agreement provides, in relevant part:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR
> RELATING TO THIS AGREEMENT, OR ANY PRIOR
> AGREEMENT FOR WIRELESS SERVICE WITH US OR
> ANY OF OUR AFFILIATES OR PREDECESSORS IN
> INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED
> UNDER OR IN CONNECTION WITH THIS AGREEMENT
> OR SUCH A PRIOR AGREEMENT, OR ANY
> ADVERTISING FOR SUCH PRODUCTS OR SERVICES,

Shortly after Taliaferro purchased his Galaxy S phone, he began experiencing the defect. After he contacted Verizon several times, Verizon replaced his phone with another Samsung Galaxy S, but he continued to experience the same defect with the replacement phone. When Taliaferro contacted Verizon again, it recommended that he install a software update intended to fix the defect. But the new software update instead exacerbated the problem, causing the phone to experience the defect more often. After contacting Verizon several more times and continuing to experience the defect with his replacement phone, Taliaferro finally discontinued using the phone and purchased a new phone, receiving no credit for the purchase of his Samsung phone.

In 2011 Taliaferro and Barbara McKinney ("McKinney"), a Georgia resident, filed in this court a putative nationwide class action against Samsung asserting claims arising from their purchases of allegedly defective Galaxy S phones. *See Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012) (Fitzwater, C.J.).[5] They alleged claims under federal, California, and Georgia law for breach of express warranty, breach of implied warranty, money had and received, and violations of the Magnuson-Moss

---

WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

D. App. 7.

[5]The complaint also included claims by Iowa citizen Chris Sodey, but Sodey was omitted from the amended complaint.

Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq. Taliaferro*, 2012 WL 169704, at *1. Samsung filed a motion to dismiss under Rule 12(b)(6), which the court granted as to all but one of plaintiffs' claims (Taliaferro's claim for breach of implied warranty under the Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1792 (West 2009)). *Taliaferro*, 2012 WL 169704, at *12. In dismissing the breach of express warranty claims, the court held that, because plaintiffs did not allege that they returned their phones to a Samsung "authorized phone service facility," as required by the Samsung warranty, they did not satisfy a contractual precondition to recovery under the express warranty. *Id.* at *3, *6. The court granted Taliaferro and McKinney leave to replead. *Id.* at *12.

Taliaferro and McKinney filed a second amended class action complaint in which they re-pleaded their dismissed claims, added Newbold as a plaintiff, and asserted two new claims under California law. Samsung filed a motion to compel arbitration, but plaintiffs voluntarily dismissed the suit without prejudice before the court ruled on the motion.

In June 2012 Taliaferro and Newbold, joined by Galitski, sued Samsung in the Central District of California alleging claims under federal and California law for breach of express warranty, breach of implied warranty, violations of the SBA, violations of the MMWA, violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (West 2009), violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (West 2008), and common law claims for assumpsit and quasi-contract. Samsung filed a motion to transfer to this court, which the Central District of California granted. Samsung now moves as a third-party nonsignatory to compel arbitration

pursuant to the arbitration agreements signed between plaintiffs and their wireless carriers.[6]

If the court denies the motion to compel arbitration, Samsung moves in the alternative to

dismiss all of plaintiffs' claims other than the SBA implied warranty claims of plaintiffs

Taliaferro and McKinney.

## II

The court turns first to Samsung's motion to compel arbitration.

## A

Samsung is not a signatory either to the Sprint Service Agreement or the Verizon

Customer Agreement.  It argues, however, that it is entitled as a third-party nonsignatory

under principles of equitable estoppel to compel arbitration pursuant to the arbitration

provisions contained in these agreements because plaintiffs' complaint raises allegations of

substantially interdependent and concerted misconduct by Samsung, Sprint, and Verizon.

Samsung maintains that, although plaintiffs are suing Samsung, they are complaining

of the failure of Sprint and Verizon to repair or replace their Samsung phones; that is, they

are seeking to hold Samsung responsible for the conduct of Sprint and Verizon, and it is

impossible to consider their claims against Samsung without considering the alleged failures

of Sprint and Verizon to repair their phones.  Samsung contends that, after the court

dismissed plaintiffs' warranty claims in *Taliaferro* (in part based on their failure to plead that

---

[6]Samsung has filed a September 18, 2013 motion for leave to file supplemental
appendix in support of its motion to compel arbitration, which plaintiffs oppose.  Because
the supplemental appendix does not affect the court's decision, the motion is granted.

they had satisfied the condition precedent of the Samsung warranty that they attempt to service their phones at an authorized phone service facility), plaintiffs revised their claims to allege that they attempted to service their phones through Sprint and Verizon, Samsung's authorized agents. Citing various allegations of the complaint, including some that group Samsung, Verizon, and Sprint as "Defendants," Samsung posits that plaintiffs' claims are wholly dependent on the conduct of Sprint and Verizon, acting as Samsung's alleged agents, in failing to perform Samsung's contractual duties. Samsung reasons that plaintiffs' claims involve substantially interdependent and concerted misconduct among Sprint, Verizon, and Samsung because the claims not only implicate the alleged conduct of these entities, they wholly depend on allegations that Verizon and Sprint acted as Samsung's agents when they breached the Samsung warranty by failing to repair plaintiffs' phones. According to Samsung, plaintiffs' claims are founded in the contractual relationship between Verizon and Sprint and plaintiffs because plaintiffs attempted to service their phones at their wireless carriers based on their contractual relationships with the carriers. Samsung argues that it is especially inequitable not to compel arbitration in this case, because plaintiffs are seeking to avoid the binding arbitration provisions in their agreements with Verizon and Sprint by suing Samsung alone, despite the fact that their claims fall squarely within the scope of their wireless service contracts.

B

Although Samsung relies on federal law, the court will apply California law, which plaintiffs contend controls,[7] and which Samsung acknowledges does not conflict with California law.[8]  Under the California law of equitable estoppel, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations."  *Jones v. Jacobson*, 125 Cal.Rptr.3d 522, 538 (Cal. Ct. App. 2011) (citations and internal quotation marks omitted).

> This requirement comports with, and indeed derives from, the
> very purposes of the doctrine: to prevent a party from using the
> terms or obligations of an agreement as the basis for his claims
> against a nonsignatory, while at the same time refusing to

---

[7]*See* Ps. Br. 4 ("California law controls whether Samsung can invoke any provisions in the Sprint and Verizon agreements.")

[8]In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), "the Supreme Court made clear that state law controls whether an arbitration clause can apply to nonsignatories." *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda)*, 601 F.3d 329, 336 (5th Cir. 2010) (citing *Carlisle*, 556 U.S. at 330-31); *see also Carlisle*, 556 U.S. at 630 (while the FAA "creates substantive federal law regarding the enforceability of arbitration agreements, . . . background principles of state contract law" control the interpretation of the scope of such agreements, "including the question of who is bound by them.").  Accordingly, this court looks to California law to determine whether Samsung, as a third-party nonsignatory to the Sprint and Verizon agreements, can compel arbitration under the agreements.

In moving to compel arbitration, Samsung cites primarily federal law and maintains that the doctrine of arbitration by equitable estoppel is part of the "body of federal substantive law of arbitrability." D. Br. 13 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).  Samsung does not appear to object, however, to the application of California law, noting in a footnote in its brief that "there is no conflict between federal and California law" on this issue.  *Id.* at 13 n.7.

> arbitrate with the nonsignatory under another clause of that same
> agreement.

*Id.* (quoting *Goldman v. KPMG LLP*, 92 Cal.Rptr.3d 534, 543-44 (Cal. Ct. App. 2009)).

When a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel

applies in two circumstances: (1) "when the signatory to a written agreement containing an

arbitration clause must rely on the terms of the written agreement in asserting [its] claims

against the nonsignatory," and (2) when the signatory alleges interdependent and concerted

misconduct by the nonsignatory and another signatory and "the allegations of interdependent

misconduct [are] founded in or intimately connected with the obligations of the underlying

agreement."   *Goldman*, 92 Cal.Rptr.3d at 541 (citations and internal quotation marks

omitted).   "[E]quitable estoppel applies only if the plaintiffs' claims against the nonsignatory

are dependent upon, or inextricably bound up with, the obligations imposed by the contract

plaintiff has signed with the signatory defendant."   *Id.* at 550.   "[M]erely 'mak[ing] reference

to' an agreement with an arbitration clause is not enough.   Equitable estoppel applies 'when

the signatory to a written agreement containing an arbitration clause "must rely on the terms

of the written agreement in asserting [its] claims" against the nonsignatory.'"   *Id.* at 541

(quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

- 10 -

C

The court holds that Samsung cannot rely on the doctrine of equitable estoppel to compel plaintiffs to arbitrate their claims.[9]  It is not necessary for plaintiffs to rely on the terms of their service agreements with Sprint and Verizon to assert their claims against Samsung, and plaintiffs' claims are not intimately founded in and intertwined with these contracts.  Further, assuming that plaintiffs allege substantially interdependent and concerted misconduct by Samsung, Sprint, and Verizon, the allegations of interdependent misconduct are not founded in or intimately connected with the obligations of the service agreements.

The complaint does not rely on any of the terms of the Verizon and Sprint agreements as a foundation for any claim.  As in *Goldman*, 92 Cal.Rptr.3d at 540-41, the complaint does not even mention these agreements.  By their terms, the Verizon and Sprint agreements govern the wireless carriers' relationships with plaintiffs.  Plaintiffs do not rely on these agreements to establish Samsung's liability under any alleged cause of action.  To the extent the complaint contains allegations about the conduct of Sprint and Verizon, the assertions do not function as predicates for alleging claims against them (neither is a party to this lawsuit).  Instead, it is apparent that these allegations are included so that plaintiffs can satisfy their obligation to plead plausible claims against Samsung, such as by showing that they complied

---

[9]Plaintiffs maintain that their claims do not fall within the scope of the arbitration provisions in the Sprint and Verizon service agreements.  The court will assume in deciding Samsung's motion that plaintiffs' claims are covered by the arbitration clauses at issue.  The court will also assume that plaintiffs' other grounds for opposing Samsung's motion, e.g., waiver, lack force.

with the precondition of the Samsung warranty that they return their phones to an "authorized phone service facility." *Taliaferro*, 2012 WL 169704, at *2. "In California, equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the' [agreement containing the arbitration provision]." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (quoting *Goldman*, 92 Cal.Rptr.3d at 551). Plaintiffs' complaint contains no such allegation.

And even if the court assumes that plaintiffs allege substantially interdependent and concerted misconduct by Samsung, Sprint, and Verizon, these allegations are not founded in or intimately connected with the obligations of the service agreements. Samsung maintains that plaintiffs' claims depend on allegations that Verizon and Sprint acted as Samsung's agents when plaintiffs contacted them about repairing or replacing their phones, that the defect in their phones is only actionable because Verizon and Sprint failed to correct the defect, and that plaintiffs cannot bring an action against Samsung without considering the actions of Verizon and Sprint. Samsung also argues that, by alleging that Samsung and Verizon and Sprint are unified as principal and agent, plaintiffs implicitly seek to hold Samsung responsible for the conduct of Verizon and Sprint.[10] But plaintiffs' allegations are

---

[10]As noted, Samsung argues that, according to the allegations of plaintiffs' complaint, Verizon and Sprint acted as Samsung's agent. Although this argument may bear upon whether plaintiffs allege substantially interdependent and concerted misconduct by Samsung, Sprint, and Verizon, it does not establish that plaintiffs' allegations are founded in or intimately connected with the obligations of the service agreements. In other words, even if the court assumes that plaintiffs rely on the conduct of Verizon and Sprint, as Samsung's agent, in failing to repair or replace their phones to establish that Samsung is liable, such liability is based on Samsung's warranty, not on the Verizon and Sprint service agreements.

- 12 -

not founded in or intimately connected with the obligations of the underlying agreements. This is illustrated by the allegations of the complaint that Samsung cites in its brief. *See* D. Br. 17-18. None relies on an obligation that arose *under the Sprint or Verizon service agreement*. Instead, it is clear from the complaint that plaintiffs rely on these allegations to establish that they fulfilled a condition precedent of the Samsung warranty. *See* Compl. ¶¶ 58-62 (cited, in part, at D. Br. 17-18).[11]

Stated simply, even assuming that plaintiffs are relying on the conduct of Sprint and Verizon to establish Samsung's liability, they are doing so to establish Samsung's liability by contract, by statute, or under common law; they are *not* relying on the Sprint and Verizon agreements to establish that liability. As in *Goldman*, plaintiffs "are *not* relying in any way on the [Sprint and Verizon agreements] to make their claims against [Samsung], while at the same [time] avoiding the arbitration clauses of those agreements—and, at bottom, that is the only basis upon which they may be equitably stopped from refusing to arbitrate when they have not agreed to do so." *Goldman*, 92 Cal.Rptr.3d at 553.

Accordingly, Samsung's motion to compel arbitration is denied.

---

[11]In its reply brief, Samsung contends that plaintiffs' allegations of interdependent conduct between Samsung and Verizon and Samsung and Sprint are founded on plaintiffs' underlying contractual relationships with the wireless carriers because their warranty claims depend on allegations that they returned their defective phones to a Samsung-authorized repair facility. Samsung maintains that plaintiffs are relying on their service agreements with Verizon and Sprint to satisfy this precondition. This assertion is misplaced. Plaintiffs are relying on these allegations to establish that they satisfied a precondition of *the Samsung warranty*, not to address an obligation founded in or intimately connected with *the Verizon and Sprint agreements*.

III

The court now turns to Samsung's motion for partial dismissal under Rule 12(b)(6).[12] Samsung maintains that plaintiffs' refusal to grant Samsung, as opposed to Sprint and Verizon, an opportunity to repair or replace their phones precludes all of their warranty claims except their SBA implied warranty claim.   Samsung therefore maintains that plaintiffs' claims for breach of express and implied warranties under the Uniform Commercial Code ("UCC"), breach of express warranty under the SBA, violations of the MMWA, violations of the CLRA, violation of the UCL, and claim for common counts must all be dismissed.   Samsung also contends that Galitsky's SBA implied warranty claim must be dismissed based on his failure to plead facts plausibly showing that his phone is not fit for its ordinary purpose.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"   *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration

[12]Despite denying the motion to compel arbitration, the court has jurisdiction to decide the motion for partial dismissal because the scope of Samsung's appeal, if any, from the denial of the motion is limited to whether plaintiffs' actions must be arbitrated.   *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 908-09 (5th Cir. 2011) (holding that "because answering the question of arbitrability does not determine the merits of the case, the merits are not an aspect of the case that is involved in the appeal on arbitrability," and the district court therefore had jurisdiction to proceed with litigation despite appeal of ruling on motion to compel arbitration).

omitted)).  To survive Samsung's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

IV

Samsung moves to dismiss plaintiffs' express warranty claims, contending that they have failed to plead satisfaction of the contractual precondition that they returned their phones to a Samsung-authorized phone service facility for repair or replacement.

A

As the court explained in *Taliaferro*:

> Under California law, to plead a claim for breach of express
> warranty, the buyer must allege that the seller (1) made an
> affirmation of fact or promise or provided a description of its

- 15 -

> goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.  A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.  Therefore, a plaintiff cannot state a claim for breach of express warranty unless he meets the conditions precedent prescribed by the express warranty.

*Taliaferro*, 2012 WL 169704, at *2 (alteration, citations, and internal quotation marks omitted).  The Samsung warranty provides, in relevant part:

> To obtain service under this Limited Warranty, Purchaser must return Product to an authorized phone service facility in an adequate container for shipping, accompanied by Purchaser's sales receipt or comparable substitute proof of sale showing the original date of purchase, the serial number of Product and the sellers' name and address.  To obtain assistance on where to deliver the Product, call Samsung Customer Care at [telephone number].  Upon receipt, SAMSUNG will promptly repair or replace the defective Product.

D. App. 3 (bracketed material added; other alterations omitted).[13]  The parties dispute whether the complaint adequately alleges that plaintiffs satisfied this precondition by returning their phones to an "authorized phone service facility."  *Id.*

To demonstrate that they have satisfied this precondition, plaintiffs allege that they each informed their wireless carriers of the defect, that Galitski's and Taliaferro's wireless carriers replaced their defective phones with another Galaxy S phone, and that Galitski's and

---

[13]Samsung has attached the warranty to its motion to dismiss.  The court may consider documents attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Neither side disputes the existence or terms of the warranty, nor its centrality to plaintiffs' claims.

Taliaferro's replacement phones also experienced the defect.[14]  Plaintiffs also assert that Samsung does not have a direct repair facility in California and does not provide a list of such facilities on its website or to its retail sellers.  They also aver that the Samsung warranty does not specify what constitutes an "authorized phone service facility," and that it was Samsung's custom to inform customers to take their phones to their local phone carriers for service.  The complaint alleges that an AT&T service bulletin directed AT&T retail segments to exchange the device if a customer experienced the defect, and that the Verizon website directed customers who experienced a defect during the warranty period to contact Verizon customer service for repair or a replacement.  The complaint then alleges that

> [a]s Samsung fails to provide service and repair facilities in this state, and because its written warranty does not specify what constitutes an "authorized phone service facility," Samsung's and the retail seller's actions show[] that under all applicable laws and as a reasonable construction of such warranties, these phone carrier entities are phone service facilities authorized by Samsung for purposes of compliance with any express warranty obligations.  By contacting or sending their phones to their respective phone carriers for service or repair of the defect, plaintiffs complied with any warranty's preconditions based on how the term "authorized phone service facility" has been applied and used by Samsung.

Compl. at ¶ 61.

Samsung argues that, according to the warranty, consumers can find "authorized phone service facilities" by calling Samsung's customer care number, and that because none

---

[14]Plaintiffs also allege that Galitski "also informed Samsung of the defect."  Compl. ¶ 33.

of the plaintiffs alleges that he called this number and that his wireless carrier was thereby identified as an authorized phone service facility for repair under the warranty, plaintiffs have failed to allege sufficient facts showing that they satisfied the condition precedent. Moreover, to the extent plaintiffs allege that Verizon and Sprint constituted "authorized phone service facilities" based on an internal AT&T bulletin and a statement on Verizon's website, the warranty provides that dealers of Samsung devices are not authorized to make modifications to the warranty and that any additional statements made by the dealers should not be relied upon. *See* D. App. 4-5 ("The agents, employees, distributers, and dealers of SAMSUNG are not authorized to make modifications to this Limited Warranty, or make additional warranties binding on SAMSUNG.  Accordingly, additional statements such as dealer advertising or presentation, whether oral or written, do not constitute warranties by SAMSUNG and should not be relied upon.").  Thus Samsung argues that, even if the allegations regarding the representations by AT&T and Verizon could be construed as assertions that these entities are "authorized phone service facilities " under the warranty, the warranty expressly provides that such representations cannot alter its terms.

B

The court held in *Taliaferro* that the Samsung express warranty requires as a precondition that a phone purchaser return his phone to an "authorized phone service facility."  *Taliaferro*, 2012 WL 169704, at *3.  The warranty does not list the specific locations of Samsung's "authorized phone service facilities," but it provides that customers can obtain assistance on where to deliver defective products by calling the Samsung customer

care telephone number.  The warranty does not state that Samsung customers' wireless carriers are "authorized phone service facilities."

The complaint alleges that "it was Samsung's custom to inform customers to take their phones to their local phone carriers for service."  Compl. ¶ 59.  But plaintiffs neither plead the basis for asserting such a custom nor do they allege that they contacted the Samsung customer care telephone number and were ever told that they could obtain warranty repair or replacement by returning their phones to their wireless carriers.  Nor can they rely on statements in an internal AT&T bulletin and on Verizon's website to support their allegation that their wireless carriers constituted "authorized phone service facilities" because the Samsung warranty explicitly prohibits dealers of its products from modifying the terms of its warranty.

Because plaintiffs have failed to plausibly allege that Sprint and Verizon constituted "authorized phone service facilities" under the terms of the Samsung warranty, the court grants Samsung's motion to dismiss plaintiffs' breach of express warranty claim.

V

Samsung moves to dismiss plaintiffs' breach of implied warranty claim under the UCC, contending that, under the UCC and the terms of Samsung's warranty, plaintiffs' sole remedy for breach of implied warranty is repair or replacement of the defective phones, and plaintiffs have failed to plead that Samsung failed to repair or replace their phones.

A

Under the California UCC, if a remedy "is expressly agreed to be exclusive . . . it is the sole remedy." Cal. Com. Code § 2719(1)(b) (West 2002). The warranty provides that Samsung is obligated, "[d]uring the applicable warranty period" to "repair or replace . . . any defective component part of Product." D. App. 3. Samsung therefore argues that plaintiffs' implied warranty claim under the UCC must be dismissed because they have not alleged that Samsung failed to repair or replace their phones after being provided an opportunity to do so, and have not alleged sufficient facts to show that Sprint and Verizon acted as agents for Samsung such that Samsung can be held vicariously liable for their conduct.

Plaintiffs respond that Samsung has not limited its warranty to "repair and replacement" because, under California law, for a limitation of remedies to be effective, it must have been "bargained for" or made known to the consumers before their purchase; that Samsung's default was total and fundamental, and that Samsung cannot limit its warranty remedy if the available remedy fails of its essential purpose or is unconscionable; and that, even if Samsung effectively limited its warranty to replacement and repair, plaintiffs gave Samsung ample opportunity to cure its breach: in the case of Galitski, by informing Samsung about the defect, and, in the cases of Newbold and Taliaferro, by informing their wireless carriers of the defect in their Galaxy S phones. Plaintiffs maintain, as they did in response to Samsung's arguments relating to their breach of express warranty claim, that Sprint and Verizon were "authorized phone service facilities" under Samsung's warranty because Samsung's custom was to inform customers to take their phones to their local phone carriers

- 20 -

for service and because an internal AT&T bulletin directed AT&T retailers to exchange defective devices.

B

The court first addresses plaintiffs' argument that the warranty is not confined to "repair and replacement" because this limitation was not bargained for.  Plaintiffs cite *Dorman v. International Harvester Co.*, 46 Cal.App.3d 11, 20 (1975), in support of this proposition, but their reliance is misplaced.  The court in *Dorman* held that a manufacturer's disclaimer of implied warranties was not effective because it was not included in the contract the parties signed but was instead printed on the reverse side of a purchase order sent to the plaintiff at a later date.  *Id.* at 20.  In the instant case, the complaint does not contain similar allegations that plead a plausible claim that the limitation of remedies in the Samsung warranty was not bargained for.[15]

Plaintiffs also argue that they gave Samsung an opportunity to cure its breach.  Yet the allegations of the complaint permit the court to draw only the reasonable inference that plaintiffs gave their wireless carriers, not Samsung, the opportunity to "cure" the alleged defect in their phones.  Plaintiffs allege that when Galitski contacted Samsung to complain

---

[15]Additionally, unlike in *Dorman*, Samsung is not attempting to disclaim an implied warranty; rather, it is seeking to limit the available warranty remedies to repair or replacement, which it is entitled to do under California law.  *See* Cal. Com. Code § 2719(1)(a) ("The agreement may . . . limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to . . . repair and replacement of nonconforming goods or parts"); *id.* at § 2719(1)(b) (if a remedy "is expressly agreed to be exclusive . . . it is the sole remedy").

- 21 -

about a headphone jack issue, he "also informed Samsung of the defect" and that he "got no assistance from Samsung regarding either problem with his phone." Compl. ¶ 33. Yet they do not assert that Galitski requested that Samsung repair or replace his phone due to the defect. Instead, they allege that Galitski received a replacement phone from Sprint "due to the headphone jack problem." *Id.* at ¶ 34. And concerning Newbold and Taliaferro, plaintiffs do not allege that either informed Samsung that he was experiencing the defect, much less that either one gave Samsung an opportunity to replace or repair his defective phone. The court has already held above that neither Samsung's alleged "custom" of informing other customers to return their defective phones to their wireless carriers nor the statements of wireless carriers regarding repair of the defective Galaxy S phones are sufficient to plausibly allege that the wireless carriers were "authorized phone service facilities" under Samsung's warranty or that the wireless carriers were acting as Samsung's agents for purposes of warranty claims.

Accordingly, because plaintiffs do not plausibly allege that, upon being given the opportunity, Samsung failed to repair or replace their defective phones—the only remedies available under the terms of Samsung's warranty—plaintiffs' UCC implied warranty claim is dismissed. *See Taliaferro*, 2012 WL 169704, at *5 (dismissing plaintiff Taliaferro's "breach of implied warranty claim under the UCC because Taliaferro does not allege that Samsung failed to repair or replace his phone").

VI

Samsung moves to dismiss plaintiffs' SBA express warranty claim, arguing that they have failed to allege that they delivered their phones to Samsung or a Samsung-authorized service facility for repair.

The SBA " is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." *Martinez v. Kia Motors Am., Inc.*, 122 Cal.Rptr.3d 497, 498 (Cal. Ct. App. 2011).

> A plaintiff pursuing an action under the [SBA] has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts.

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 50 Cal.Rptr.3d 731, 741 (Cal. Ct. App. 2006) (citing *Oregel v. Am. Isuzu Motors, Inc.*, 109 Cal.Rptr.2d 583, 588 (Cal. Ct. App. 2001)).

Plaintiffs allege that Samsung "maintains no direct repair facilities in [California], or in any state other than Texas." Compl. ¶ 58. Under the SBA, if a manufacturer does not maintain its own service and repair facilities in California, it must "designate and authorize" independent repair or service facilities located in that state. Cal. Civ. Code § 1793.2(a) ("Every manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty shall . . . [m]aintain in this state sufficient service and repair facilities reasonably close to all areas where its consumer goods are sold to carry out the

terms of those warranties or designate and authorize in this state as service and repair facilities independent repair or service facilities . . . to carry out the terms of the warranties."). Plaintiffs argue that they have satisfied the requirements of the SBA by alleging that their wireless carriers are "authorized phone service facilities," and that they presented their defective phones to their wireless carriers for repair. But plaintiffs' conclusory allegations that Sprint and Verizon are "authorized phone service facilit[ies]" do not support the reasonable inference that Samsung "designate[d] and authorize[d]" either Sprint or Verizon to act as an independent service facility in California. Nor do plaintiffs' allegations that it was Samsung's "custom to inform customers to take their phones to their local phone carriers for service" or that Verizon and AT&T represented that they would repair or replace defective Galaxy S phones permit such an inference. Compl. ¶ 59.

Plaintiffs argue that, if Samsung is allowed to "evade all responsibility under its express warranties so long as it fails, in violation of California law, to 'maintain service and repair facilities within the state,' [this] would turn [the SBA] on its head." Ps. Br. 11-12 (citation omitted). They maintain that Samsung's interpretation of the SBA "would leave consumers with no remedy for breaches of warranty so long as the manufacturer could shift blame to the retailer for not repairing or replacing the defective product." *Id.* at 12. The court disagrees.

First, a manufacturer such as Samsung is not required to maintain a service and repair facility within California. It can instead designate and authorize independent repair or service facilities in California to carry out the terms of its warranties. Samsung's contention

that retail sellers are not "authorized phone service facilities" is not a concession that it did not designate and authorize independent repair or service facilities in California to carry out the terms of its warranties

Second, Samsung does not evade liability by failing to maintain service and repair facilities within California. Rather, a manufacturer who fails to provide service and repair facilities within California "shall be liable . . . to every retail seller of such manufacturer's goods who incurs obligations in giving effect to the express warranties that accompany such manufacturer's consumer goods." Cal. Civ. Code § 1793.5.

Third, even assuming that Samsung failed to maintain service and repair facilities in California, consumers are permitted under Cal. Civ. Code § 1793.3 to return nonconforming goods to the retail seller or to any retail seller of like goods of the same manufacturer for repair or replacement. *Id.*

Because plaintiffs have failed to plausibly allege that they presented their defective Galaxy S phones to Samsung or an "authorized representative" of Samsung for repair, their express warranty claim under the SBA is dismissed.

VII

Samsung moves to dismiss Galitski's implied warranty claim under both the UCC and the SBA, contending that the complaint fails to plead that his phone is not merchantable.

Under the SBA, [t]o be merchantable, consumer goods must "(1) [p]ass without objection in the trade under the contract description[,] (2) [be] fit for the ordinary purposes for which such goods are used[,] (3) [be] adequately contained, packaged, and labeled[, and]

(4) [c]onform to the promises or affirmations of fact made on the container or label." Cal.

Civ. Code § 1791.1(a).[16] The implied warranty of merchantability "provides for a minimum

level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal.Rptr.2d 526, 529 (Cal.

Ct. App. 1995) (citations and internal quotation marks omitted). "The core test of

merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia*

*v. Rinker Boat Co.*, 95 Cal.Rptr.3d 285, 289 (Cal. Ct. App. 2009) (quoting *Isip v. Mercedes-*

*Benz USA, LLC*, 65 Cal.Rptr.3d 695, 700 (Cal. Ct. App. 2007)). "Such fitness is shown if

the product is in safe condition and substantially free of defects[.]" *Id.* (internal quotation

marks and citations omitted).

    Samsung posits that the complaint fails to plausibly allege that Galitski's phone was

unfit for its ordinary purpose. According to the complaint, although Galitski twice received

replacement phones to rectify other problems (the headphone jack problem and screen burn-

in problem), "Galitski continues to use his replacement phone." Compl. ¶ 37. Samsung

therefore maintains that it cannot be plausibly inferred that Galitski is unable to use his phone

for its ordinary purpose due to the defect.

    Plaintiffs respond that the defect "forces Galitski 'to remove and replace his battery

. . . causing him to drop calls and lose data.'" Ps. Br. 16-17 (quoting Compl. ¶ 35). They

maintain that "[a] defect that causes Galitski's phone to randomly freeze, shut down, and

power-off while in standby mode, thereby making it impossible to receive or deliver calls,

---

[16]Similarly, under the UCC, to be "merchantable," goods must "at least" be "fit for the
ordinary purposes for which such goods are used." Cal. Com. Code § 2314.

messages or data and requiring him to remove the battery, reinsert it, and re-power the phone just for it to work again renders his Galaxy phone inoperable and unfit for its intended use and purpose." *Id.*

The court agrees with plaintiffs that they have plausibly pleaded that Galitski's phone is unmerchantable for purposes of his implied warranty claims under the UCC[17] and the SBA. This ground of Samsung's motion to dismiss is denied.

VIII

Defendants move to dismiss plaintiffs' MMWA claim, arguing that plaintiffs have failed to plead that they gave Samsung an opportunity to cure the alleged defect. Plaintiffs respond, *inter alia*, that, under the MMWA, before the defendant is afforded an opportunity to cure, plaintiffs bringing an MMWA class action can file suit for the limited purpose of establishing the representative capacity of the named plaintiffs.[18] The court agrees.

"[T]he MMWA creates a statutory cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed

---

[17]This conclusion does not alter the court's holding that plaintiffs have failed to adequately plead a claim for breach of implied warranty under the UCC.

[18]Plaintiffs also contend that they made "numerous requests" to Samsung or to Samsung's "authorized phone service facilities," seeking a cure for their defective phones. Ps. Br. 17. But plaintiffs' allegation that Galitski "also informed Samsung of the defect," Compl. ¶ 33, does not plausibly allege that Galitski gave *Samsung* an opportunity to cure, because plaintiffs allege that Galitski also informed Sprint of the problem and received a replacement phone from Sprint "due to the headphone jack problem." *Id.* at ¶ 34. And, for the reasons discussed above, plaintiffs have failed to plausibly allege that their wireless carriers constituted agents of Samsung or "authorized phone service facilities," as provided under the Samsung warranty.

by the Act] or [established by] a written warranty, implied warranty, or service contract."

*Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 474 (5th Cir. 2002) (citing 15 U.S.C. §

2310(d)(1)) (internal quotation marks omitted).  Before a plaintiff can bring a claim under

the MMWA for breach of warranty, he "must give persons obligated under the warranty a

reasonable opportunity to 'cure' their failure to comply with the obligations at issue."

*Walton*, 298 F.3d at 474 (quoting 15 U.S.C. § 2310(e)).  Under the MMWA,

> [n]o action (other than a class action . . . ) may be brought under
> subsection (d) of this section for failure to comply with any
> obligation under any written or implied warranty or service
> contract, and a class of consumers may not proceed in a class
> action under such subsection with respect to such a failure
> except to the extent the court determines necessary to establish
> the representative capacity of the named plaintiffs, unless the
> person obligated under the warranty or service contract is
> afforded a reasonable opportunity to cure such failure to
> comply.  In the case of such a class action . . . , such reasonable
> opportunity will be afforded by the named plaintiffs and they
> shall at that time notify the defendant that they are acting on
> behalf of the class.

15 U.S.C. § 2310(e).

"The plain language of the statute imposes different requirements on individual

plaintiffs and class action plaintiffs regarding the time at which they must satisfy the

opportunity to cure requirement."  *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes*

*Prods. Liab. Litig.*, 880 F.Supp.2d 801, 824 (S.D. Ohio 2012); *see also In re Shop-Vac*

*Marketing & Sales Practices Litig.*, ___ F.Supp.2d ___, 2013 WL 4049728, at *4 (M.D. Pa.

Aug. 9, 2013) ("While Section 2310(e) requires that sellers be afforded an opportunity to

cure before an individual consumer may bring an action under the MMWA, classes of

consumers are prohibited only from *proceeding* in a class action unless the seller is afforded

a reasonable opportunity to cure the defect." (emphasis in original; bold font omitted)).   In

the present case, plaintiffs are bringing their MMWA claim on behalf of a class of California

consumers.   Accordingly, they are not required at this juncture to plead that they have given

Samsung an opportunity to cure the defect.   If this court certifies a class, the plaintiffs must

give Samsung notice and an opportunity to cure under the MMWA.   *See In re Porsche*, 880

F.Supp.2d at 824 ("Once a court [certifies a class under Rule 23], but before the class action

can proceed, the defendant must be afforded an opportunity to cure the alleged breach of

warranty and the named plaintiffs must at that point inform the defendant that they are acting

on behalf of a class.").[19]

Accordingly, the court denies Samsung's motion to dismiss plaintiffs' claim under the

MMWA.

_____

[19]Samsung argues that § 2310(e) does not relieve plaintiffs of MMWA's requirement of providing Samsung with a reasonable opportunity to cure prior to filing their *individual* claims; rather, § 2310(e) merely excuses a "class" from providing the seller notice and an opportunity to cure before the court determines the representative capacity of the named plaintiffs.   Samsung has not cited, and the court not found on its own, any case that reaches this conclusion.   Cases interpreting the statute have instead held that "plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs."   *In re Porsche*, 880 F.Supp.2d at 824; *see also In re Shop-Vac*, 2013 WL 4049728, at *4 (dismissing MMWA claim for failure to properly plead such a claim, but also rejecting, in dicta, argument that named plaintiffs' MMWA claim should be dismissed under § 2310(e) for failure to afford notice and opportunity to cure).   If the case law develops favorably to Samsung's position, the court will reconsider this holding in future cases.

IX

Samsung moves to dismiss plaintiffs' CLRA claim on the ground that plaintiffs have failed to satisfy the CLRA notice requirements.

A

Samsung maintains that plaintiffs sent written notice of the claim on February 10, 2012 and filed their second amended complaint in *Taliaferro* on March 1, 2012, fewer than 30 days after sending the notice to Samsung.  It posits that plaintiffs' voluntary dismissal of the *Taliaferro* lawsuit and subsequent filing of the instant case does not change the fact that they filed their CLRA damages claim against Samsung without providing adequate pre-filing notice.  Samsung posits that, because plaintiffs cannot cure the failure to provide the statutorily-mandated notice by amending their complaint, they likewise cannot cure their failure by dismissing their lawsuit and filing the same CLRA claim in another suit.

Plaintiffs respond that the court should not consider materials outside the complaint, but should accept as true the allegation that plaintiffs provided Samsung the required notice. They argue that, even if the court considers documents outside the complaint, the documents demonstrate that plaintiffs sent letters to Samsung that satisfy the CLRA's "purpose and effect" more than one year before filing this case.  Ps. Br. 20 n.8.  Plaintiffs also contend that the February 10, 2012 notice, which Samsung acknowledges receiving, is sufficient to meet the notice requirements, especially for plaintiff Galitski, because notice in one case satisfies

the CLRA notice requirement in a separate litigation.[20]

B

The CLRA makes unlawful various unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer. Cal. Civ. Code § 1770. It provides that any consumer who suffers damages as a result of an act or practice declared unlawful in the CLRA may seek to recover actual damages, punitive damages, or injunctive relief. *Id.* The CLRA includes a pre-filing notice requirement on actions seeking damages. At least 30 days before filing a claim for damages under the CLRA, the consumer must notify the prospective defendant of the "particular alleged violations of Section 1770" and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" thereof. *Id.* § 1782. The notice must be in writing and sent by certified or registered mail. *Id.* "If, within this 30-day period, the prospective defendant corrects the alleged wrongs, or indicates that it will make such corrections within a reasonable time, no cause of action for damages will lie." *Kagan v. Gibraltar Sav. & Loan Assn.*, 676 P.2d 1060, 1063 (Cal. 1984), *disapproved on other grounds in Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 301 n.3 (Cal. 2009). California courts have held that the

---

[20]Plaintiffs also argue that, under the court's decision in *Morgan v. AT&T Wireless Services, Inc.*, 99 Cal.Rptr.3d 768, 789 (Cal. Ct. App. 2009), even if they have failed to satisfy the CLRA notice requirement, the proper procedure is to permit them 30 days to provide notice and then order Samsung to answer the complaint. Because the court holds that the plaintiffs have satisfied the CLRA notice requirement, it need not address this argument.

- 31 -

purpose of the notice provision is "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished," and that this purpose "may only be accomplished by a *literal* application of the notice provisions." *Outboard Marine Corp. v. Superior Court*, 124 Cal.Rptr. 852, 859 (Cal. Ct. App. 1975) (emphasis added). "Substantial compliance" is insufficient. *Id.* at 858.

C

Plaintiffs allege that Samsung violated the CLRA by misrepresenting or not disclosing to plaintiffs and the class the known defects in the Galaxy S phones, in violation of Cal. Civ. Code § 1770 (a)(5), (7), (14), & (16). On May 5, 2011 plaintiffs' attorney sent Samsung a letter informing it of the defect and stating that plaintiffs believed Samsung was "already aware of the defective condition from the myriad of customer complaints over approximately the last year," and that Samsung's practices constituted violations of federal and state laws, and requesting that Samsung "immediately correct and rectify the violations."[21] D. App. 6. In a May 13, 2011 letter, plaintiffs' attorney again requested a "true remedy" for the

---

[21]Plaintiffs allege that, "[u]nder California Civil Code § 1782, plaintiffs' counsel sent Samsung a CLRA demand letter via certified mail." Compl. ¶ 142. They also allege that "beginning on May 5, 2011, prior to filing this lawsuit, plaintiffs, through their counsel and for themselves and all class members, sent several letters by certified mail to Samsung's Chief Executive Officer . . . and to Samsung's counsel." *Id.* at ¶ 67. Accordingly, the court is permitted to consider the May 5, 2011 letter because it is referenced in the complaint. *See, e.g., Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 829 n. 2 (N.D. Tex. 2011) (Fitzwater, C.J.) ("'[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim.'" (quoting *Kane Enters. v. MacGregor (USA) Inc*., 322 F.3d 371, 374 (5th Cir. 2003))).

defective phones. *Id.* at 10-11. Plaintiffs argue that these letters "provided [Samsung] with the facts that form the basis of the CLRA claims and requested Samsung offer appropriate relief to Plaintiffs and the class." *Id.* at 19. Samsung replies that strict adherence to the CLRA notice provisions is required and that the court should reject plaintiffs' "substantial compliance" argument.

Although substantial compliance with the CLRA notice requirement is legally insufficient, Samsung does not identify anything technically noncompliant about the May 2011 letters. While these letters do not specifically reference the CLRA, they clearly apprise Samsung of the alleged violations (knowingly selling defective Galaxy S phones) and give Samsung an opportunity to rectify the violations. They therefore fulfill the purpose of the § 1782 notice requirement by giving Samsung the opportunity to cure the alleged violations before being held liable for damages. *See Outboard Marine Corp.*, 124 Cal.Rptr. at 859. These letters, sent more than 30 days before the plaintiffs in *Taliaferro* asserted the CLRA claim in their second amended complaint, satisfy the notice provision of § 1782. *See Lafferty v. Wells Fargo Bank*, 153 Cal.Rptr.3d 240, 255 (Cal. Ct. App. 2013) (holding sufficient to satisfy CLRA notice requirement letter informing manufacturer that plaintiffs told seller about problems with their recreational vehicle and explaining that mechanical and electrical failures were never remedied even though seller repeatedly assured them the problems would be fixed); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1023 (9th Cir. 2011) (noting that "it is pellucid that [plaintiff] gave [defendants] a thirty-day notice under the CLRA . . . [by] expressly set[ting] forth the nature of the dispute and declar[ing] that

damages would be sought if the appropriate corrections were not made.").

Even assuming that the May 2011 letters do not constitute sufficient notice under § 1782, Samsung does not appear to dispute that the February 10, 2012 notice meets the technical requirements of the statute and that the February 10, 2012 notice was mailed to Samsung more than 30 days before plaintiffs filed their June 7, 2012 complaint in this suit. Samsung argues that plaintiffs cannot "cure" their failure to provide the mandated notice and settlement period by voluntarily dismissing their suit and filing their CLRA claim in another action 30 days after providing notice.  The court disagrees.  As explained in *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012), under very similar facts:

> The first case only matters to the second . . . if it has some sort of preclusive effect.  Here, it does not, whether one looks to federal preclusion law or to the preclusion rules of the California state court where the instant case was initially filed. Accordingly, the Court gives no preclusive effect to the first, voluntarily dismissed lawsuit.  The CLRA notice letter was sent eight months before commencement of the case now before this Court and thus was not untimely for purposes of section 1782(a).

*Id.* at *9.

Because plaintiffs provided Samsung with the statutorily-required pre-suit notice four months before they filed the complaint in this suit and Samsung does not argue any other basis for dismissing plaintiffs' CLRA claim, the court denies Samsung's motion to dismiss

this claim.[22]

## X

Samsung moves to dismiss plaintiffs' UCL claim, contending that it must be dismissed because plaintiffs base their UCL allegations on the acts of their phone carriers, and, even if plaintiffs had adequately pleaded an agency relationship between the phone carriers and Samsung, a UCL claim cannot be predicated on vicarious liability. Samsung also maintains that plaintiffs' UCL claim relies entirely on their other statutory claims, and because plaintiffs fail to state a claim under the UCC for breach of implied and express warranties, the SBA for breach of express warranty, the MMWA, and the CLRA, plaintiffs' UCL claim based on these "unlawful" acts should also be dismissed. Finally, Samsung contends that plaintiffs have not pleaded that Samsung acted "unfairly" because they have

_____

[22]In its motion, Samsung seeks to dismiss plaintiffs' CLRA claim only on the basis that their pre-suit notice under the CLRA was untimely. Samsung does not argue that its May 11, 2011 offer to repair or replace plaintiffs' allegedly defective headsets defeats plaintiffs' CLRA claim under Cal. Civ. Code § 1782(b) ("no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice). *See Kagan,* 676 P.2d at 1063 ("If, within this 30-day period, the prospective defendant corrects the alleged wrongs, *or indicates that it will make such corrections within a reasonable time*, no cause of action for damages will lie." (emphasis added)). Accordingly, the court does not consider the effect of Samsung's offer to repair or replace plaintiffs' defective phones in deciding Samsung's motion to dismiss.

Additionally, the court's rejection above of certain of plaintiffs' arguments for why they gave adequate notice under the MMWA, *see supra* note 18, is not inconsistent with this ruling. In moving to dismiss plaintiffs' MMWA claim, Samsung argued that plaintiffs failed to give it an opportunity to cure under the terms of the warranty; in connection with the CLRA claim, Samsung focuses on the timing of plaintiffs' notice, as required under the CLRA.

failed to plead facts showing that *Samsung*, as opposed to the wireless carriers, refused to repair or replace their defective phones and because plaintiffs have failed to show that their injuries could not reasonably have been avoided.

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203 (West 2008). "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice." *Id.* § 17200. The Supreme Court of California has held that the UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) (citation and internal quotation marks omitted). The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* at 539-40 (citation and internal quotation marks omitted). Further, the UCL creates "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Id.* at 540. Accordingly, one unlawful act or practice suffices to state a claim under the UCL.

Plaintiffs allege that defendants engaged in "unlawful" business acts and practices by violating the MMWA, violating the SBA, breaching implied and express warranties, and violating the CLRA. Because some of plaintiffs' claims, and Galitski's SBA claim, survive Samsung's motion to dismiss, the court holds that plaintiffs have stated a claim under the "unlawful" prong of the UCL. Having concluded that plaintiffs have stated a UCL claim,

the court need not consider plaintiffs' allegations or Samsung's arguments related to the "unfair" prong. *See, e.g.*, *EMC Corp. v. Sha*, 2013 WL 4399025, at * 5 (N.D. Cal. Aug. 13, 2013) (denying motion to dismiss UCL claim and declining to address "unfair" or "fraudulent" prongs of UCL where plaintiff successfully stated UCL claim under "unlawful" prong).

XI

Finally, Samsung moves to dismiss plaintiffs' common counts for assumpsit and quasi-contract. It argues that, under California law, an action in quasi-contract (such as unjust enrichment, money had and received, or assumpsit) does not lie when an enforceable, binding agreement exists, and because neither plaintiffs nor Samsung disputes the existence of the warranty that governs their relationship, plaintiffs cannot state an alternative quasi-contract claim under California law.

Under California law,

> [a] common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract.

*Kawasho Int'l (U.S.A.), Inc. v. Lakewood Pipe Serv., Inc.*, 201 Cal.Rptr. 640, 644 (Cal. Ct. App. 1983). "The only essential allegations of a common count are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exch. v. Zerin*, 61 Cal.Rptr.2d 707, 715 (Cal. Ct. App. 1997)

- 37 -

(citations and internal quotation marks omitted).  A common count is not a specific cause of action, however.  *McBride v. Boughton*, 20 Cal.Rptr.3d 115, 127 (Cal. Ct. App. 2004).

> [R]ather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . .  When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action and is based on the same facts . . . [the] common count must stand or fall with [the specific] cause of action.

*Id.*[23]

In their common count, plaintiffs seek restitution "through an action derived from the common-law claim of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract."  Compl. ¶ 157.  Under California law, "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."  *Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 51 Cal.Rptr.2d 622, 628 (Cal. Ct. App. 1996).  And "although certain situations permit plaintiffs to pursue an unjust enrichment claim as an alternative to a breach of contract claim, this alternative pleading theory is not available where a plaintiff expressly pleads, and relies on, the existence of an express agreement between the parties relating to the same issues."  *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *6 (C.D. Cal. May 12, 2011) (citing cases); *see also Lance Camper Mfg.*, 51 Cal.Rptr.2d at 628 (noting that plaintiff "must allege the express contract is void or was

---

[23]Samsung attached the warranty to its motion to dismiss.  The court may consider this document.  *See supra* note 13.

- 38 -

rescinded in order to proceed with its quasi-contract claim"). Because neither plaintiffs nor Samsung disputes that Samsung's warranty governs the parties' relationship, plaintiffs cannot recover under an alternative quasi-contract claim under California law. And because plaintiffs' common count is predicated on a quasi-contract theory, plaintiffs' common count must also be dismissed.

\* \* \*

For the foregoing reasons, the court grants Samsung's motion for leave to file supplemental appendix in support of its motion to compel arbitration, denies Samsung's motion to compel arbitration, and grants in part and denies in part Samsung's alternative motion for partial dismissal.

**SO ORDERED.**

December 5, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 39 -