IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHANE GALITSKI, et al.,                   §
                                          §
                    Plaintiffs,           §
                                          §   Civil Action No. 3:12-CV-4782-D
VS.                                       §
                                          §
SAMSUNG TELECOMMUNICATIONS §
AMERICA, LLC,                             §
                                          §
                    Defendant.            §

MEMORANDUM OPINION
AND ORDER

       In this putative class action arising from allegedly defective Galaxy S mobile phones

manufactured by defendant Samsung Telecommunications America, LLC ("Samsung") and

sold to plaintiffs by non-parties Sprint and Verizon, Samsung moves to dismiss plaintiff

Brian Newbold's ("Newbold's") express warranty claims and UCC implied warranty claim

under Fed. R. Civ. P. 12(b)(6).  Samsung also moves to compel the non-destructive testing

of plaintiffs' Galaxy S phones.  For the reasons that follow, the court denies the motion to

dismiss and grants the motion to compel non-destructive testing, with two additional

provisos.

I

       Plaintiffs Shane Galitski ("Galitski"), Richard Taliaferro ("Taliaferro"), and Newbold

bring this putative class action against Samsung on behalf of a class of California residents

who purchased allegedly defective Galaxy S mobile phones.  Plaintiffs allege that Galaxy S

phones—smartphones using the Google Android operating system that are marketed,

distributed, and warranted by Samsung—frequently freeze, shutdown, and power-off randomly while in standby mode, rendering the phones inoperable.[1]  The amended complaint refers to these problems collectively as the "defect."  *E.g.*, Am. Compl. ¶ 16.[2]

The amended complaint alleges that Newbold purchased his Galaxy S phone from Sprint (his wireless carrier) on August 31, 2010.  Shortly after the purchase, his phone experienced the defect.  Allegedly working with Sprint, Newbold attempted to resolve the problem by changing the operating system and installing software updates.  When these changes failed to repair his phone, Newbold returned it to the factory settings and installed a software update that Samsung provided.  After the update was installed, his phone experienced the defect more frequently.  Although Newbold contacted Sprint customer service several times about the defect, Sprint refused to offer a replacement; instead, it attempted on multiple occasions to repair the phone by asking Newbold to reset the device.  Newbold alleges that he called Samsung at least twice regarding the defect but that Samsung never asked him to send his defective phone to Samsung or offered to replace or repair the defective phone.  Instead, Samsung told Newbold to contact Sprint technical service to resolve the problems with his phone.  After contacting Sprint several times in unsuccessful attempts to repair or replace his phone, Newbold finally purchased a new phone, receiving

---

[1]In deciding Samsung's Rule 12(b)(6) motion, the court accepts as true all of the well-pleaded facts of plaintiffs' amended complaint and views them in the light most favorable to plaintiffs.

[2]Other or more specific allegations concerning the defect are found elsewhere in the amended complaint.  *See, e.g.,* ¶¶ 45, 46, 47, 48, 49, and 51.

no credit for his initial purchase of the Galaxy S phone.

In June 2012 Galitski, Taliaferro, and Newbold sued Samsung in the Central District of California, alleging claims under federal and California law for breach of express warranty, breach of implied warranty, violations of the Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1790 *et seq.* (West 2009), violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (West 2009), violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (West 2008), and common law claims for assumpsit and quasi-contract.  Samsung filed a motion to transfer to this court, which the Central District of California granted.  Samsung then moved to compel arbitration, and it moved in the alternative to dismiss all of plaintiffs' claims other than the SBA implied warranty claims of plaintiffs Taliaferro and Newbold. The court denied Samsung's motion to compel arbitration.  The court granted in part and denied in part Samsung's alternative motion for partial dismissal, dismissing plaintiffs' claims for breach of express warranty, breach of implied warranty under the UCC, breach of express warranty under the SBA, and common law counts for assumpsit and quasi-contract. *Galitski v. Samsung Telecomms. Am., LLC*, 2013 WL 6330645, at *8, 9, 11, & 16 (N.D. Tex. Dec. 5, 2013) (Fitzwater, C.J.) ("*Galitski I*").

The court later permitted plaintiffs to file an amended complaint "to conform to [the court's opinion in *Galitski I*] and facts recently obtained through discovery."  Jan. 27, 2014 Order at 1.  Samsung now moves to dismiss Newbold's express warranty claims and his UCC

implied warranty claim.  It also seeks an order compelling the non-destructive testing of plaintiffs' mobile devices.  Plaintiffs oppose the motions.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (alteration and internal quotation marks omitted)).  To survive Samsung's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678

(citation omitted).

## III

The court turns first to Samsung's motion to dismiss Newbold's express warranty claims.

## A

The Samsung warranty provides, in relevant part:

> To obtain service under this Limited Warranty, Purchaser must return Product to an authorized phone service facility in an adequate container for shipping, accompanied by Purchaser's sales receipt or comparable substitute proof of sale showing the original date of purchase, the serial number of Product and the sellers' name and address. To obtain assistance on where to deliver the Product, call Samsung Customer Care at [telephone number]. Upon receipt, SAMSUNG will promptly repair or replace the defective Product.

*Galitski I*, 2013 WL 6330645, at *6-7 (citation omitted). In *Galitski I* the court held that the Samsung express warranty requires as a precondition that a phone purchaser return his phone to an "authorized phone service facility," the location of which a customer can obtain by calling the Samsung customer care telephone number. Because plaintiffs failed to plausibly allege that Sprint and Verizon constituted "authorized phone service facilities" under the terms of the Samsung warranty, the court held that plaintiffs' breach of express warranty claim was subject to dismissal. *Id.* at *7-8. In the amended complaint, plaintiffs add the following allegation in an attempt to remedy the pleading defect identified in *Galitski I* :

> Plaintiff Newbold called Samsung at least twice regarding the defect with his Samsung Galaxy S Epic 4G phone. Samsung never asked plaintiff to send his defective phone to Samsung or

> offered to replace or repair the defective phone. Instead Samsung told plaintiff Newbold to contact Sprint and redirected plaintiff to Sprint technical service to resolve his phone's problems.

Am. Compl. ¶ 84.

Samsung argues that, even with these new allegations, plaintiffs have failed to plead that Newbold complied with the terms of the express warranty, because they still have not alleged that he returned his phone to a Samsung-authorized phone service facility for repair or replacement under the warranty; they have not alleged that Samsung told Newbold that Sprint was an "authorized phone service facility" under the warranty; and they have not alleged that Newbold returned his mobile device to Sprint to obtain service under the warranty.

Plaintiffs respond that Newbold conformed to Samsung's warranty precondition by contacting Samsung and "afford[ing] Samsung and its designated place for repair, Sprint, multiple opportunities to fix or replace his Galaxy S phone." Ps. Br. 4. They argue that it is immaterial that Samsung did not identify Sprint as an authorized phone service facility for warranty claims because Samsung told Newbold to contact Sprint, and it redirected him to Sprint technical service to resolve his phone problems, thereby making Sprint an authorized service center. Plaintiffs contend that the allegation of direct communications between Newbold and Samsung, and Samsung's specific instruction to Newbold that he seek repair assistance from Sprint, differentiate the express warranty claims in the amended complaint from those the court dismissed in *Galitski I*, and, at a minimum, Samsung's specific

instruction to Newbold means that Samsung either waived or is estopped from asserting that Newbold never satisfied a precondition of the warranty.

B

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Galitski I*, 2013 WL 6330645, at *6 (quoting *Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 WL 169704, at *2 (N.D. Tex. Jan. 19, 2012) (Fitzwater, C.J)). "Therefore, a plaintiff cannot state a claim for breach of express warranty unless he meets the conditions precedent prescribed by the express warranty." *Id.* (quoting *Taliaferro*, 2012 WL 169704, at *2). The court explained in *Galitski I* "that the Samsung express warranty requires as a precondition that a phone purchaser return his phone to an 'authorized phone service facility.'" *Id.* at *8 (citing *Taliaferro*, 2012 WL 169704, at *3).

Samsung's Limited Warranty does not define "authorized phone service facility" or list the names or addresses of any such facilities located in the United States or elsewhere. It does, however, direct purchasers to contact Samsung's customer care telephone number "to obtain assistance on where to deliver [a defective] [p]roduct." *Id.* at *6 (citation omitted). Plaintiffs allege that Newbold telephoned Samsung regarding his defective phone, and that Samsung told him to contact Sprint to resolve his phone's problems. They also allege that Newbold "repeatedly returned his defective Samsung Galaxy S phone" to Sprint. Am. Compl. ¶ 121. These allegations are sufficient to plausibly allege that, for Newbold, Samsung designated Sprint as an "authorized phone service facility," and that Newbold

satisfied the precondition contained in Samsung's express warranty by returning his phone to Sprint.  The allegations in the amended complaint admittedly lack factual detail: for example, plaintiffs do not allege when Newbold telephoned Samsung, what number he called, with whom he spoke, or precisely what he was told regarding Samsung's warranty. But they are sufficient at the pleading stage, when all allegations are taken as true and all reasonable inferences are drawn in Newbold's favor, to plausibly allege, at least as to Newbold,[3] that Sprint constituted an "authorized phone service facility" and that Newbold complied with the warranty's precondition by returning his defective phone to Sprint.

C

Alternatively,[4] the amended complaint plausibly alleges sufficient facts to support Newbold's breach of express warranty claim based on the doctrine of waiver.

It is "generally accepted that the parties to a contract who are to benefit from its terms and conditions may, by their mutual agreement, waive those conditions and terms." *Rainshine Res., Inc. v. Superior Court*, 2003 WL 190763, at *9 (Cal. Ct. App. Jan. 29, 2003) (quoting 13 Williston on Contracts § 39:23 (4th ed. 2000)); *see also id.* ("[T]he vast majority of courts maintain that a party may, by words or conduct, waive a provision in a contract that

---

[3]Plaintiffs only allege that Newbold contacted Samsung and was told by Samsung to contact Sprint.  They do not assert that any other named plaintiff or member of the putative class similarly contacted Samsung.

[4]Although the court includes this alternative holding, it does not read the amended complaint as alleging alternative theories of recovery.  The court nonetheless concludes that plaintiffs have plausibly alleged both that Newbold complied with the warranty's precondition and that Samsung waived the warranty's precondition.

was inserted for [its] benefit, and that no consideration is necessary for such a waiver to be effective." (brackets, emphasis, citation, and internal quotation marks omitted)).  Under California law, "[a]n agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it."  *Daugherty Co. v. Kimberly-Clark Corp.*, 92 Cal. Rptr. 120, 124 (Cal. Ct. App. 1971) (citing *Garrison v. Edward Brown & Sons*, 154 P.2d 377, 380 (Cal. 1945) (en banc)).  Conditions precedent contained in a warranty may thus be waived or modified by the words or actions of the party whom the condition precedent was meant to benefit.  *E.g., Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *9 (N.D. Cal. Dec. 4, 2009) (holding that manufacturer "may be considered to have waived the purported condition precedent [(requiring original purchaser to deliver defective product to manufacturer's service center prior to warranty's expiration)] when it provided full refunds or replacement parts upon the receipt of Plaintiffs' complaints." (citing U.C.C. § 2-719 cmt. 1 ("parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.")))  "Whether there has been a waiver is a question of fact."  *Nixon v. Lafler*, 2014 WL 234110, at *4 (Cal. Ct. App. Jan. 22, 2014) (citations omitted).

Plaintiffs allege that Newbold contacted Samsung regarding his defective phone, and that, rather than instruct Newbold to send his defective phone to Samsung, Samsung told Newbold to contact Sprint to resolve the problems he was experiencing.  These allegations are sufficient to plausibly allege that Samsung waived, as to Newbold, the warranty

precondition that required that he return his defective phone to an "authorized phone service facility." In other words, it is at least plausible that, by redirecting Newbold to Sprint technical service when Newbold called Samsung regarding his defective phone (as he was instructed to do in Samsung's Limited Warranty),[5] Samsung waived the Limited Warranty's precondition that purchasers must return defective products to an "authorized phone service facility." If Samsung in fact waived the warranty's precondition, it cannot defeat Newbold's express warranty claim by arguing that Newbold failed to return his defective phone to an "authorized phone service facility."[6]

---

[5]Because plaintiffs provide scant detail regarding Newbold's telephone calls with "Samsung," the court does not suggest that Newbold will be able to prevail at the summary judgment stage or at trial on his express warranty claim under a waiver theory. The court nonetheless denies Samsung's motion to dismiss because it concludes, based on the facts that Newbold has alleged, that plaintiffs have plausibly alleged waiver as a basis for circumventing the precondition to Newbold's breach of express warranty claims.

[6]Similarly, if Newbold proves at trial that he telephoned Samsung to obtain warranty assistance and Samsung told him to contact Sprint technical service to resolve his phone's problems, Samsung may be estopped from arguing that Newbold was required, as a precondition to his express warranty claim, to return his defective phone to Samsung or some other Samsung-authorized service facility.

> The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*City of Goleta v. Superior Court*, 147 P.3d 1037, 1042 (Cal. 2006) (citations omitted).

Accordingly, the court denies Samsung's motion to dismiss Newbold's express warranty claims.

IV

Samsung moves to dismiss Newbold's breach of implied warranty claim under the UCC. It contends, as it did in *Galitski I*, that Newbold's sole remedy for breach of implied warranty is repair or replacement of his defective phone, and that plaintiffs have not pleaded that Samsung failed to repair or replace Newbold's phone after being provided an opportunity to do so. Samsung maintains that plaintiffs' new allegation that Newbold called Samsung twice does not change the court's holding in *Galitski I*, because plaintiffs have still failed to plausibly allege that Newbold gave Samsung an opportunity to repair or replace his defective phone—the only remedy available under Samsung's Limited Warranty.

Plaintiffs respond that they have adequately pleaded that Newbold gave Samsung an opportunity to repair or replace his defective phone by alleging that, on two separate occasions, Newbold called Samsung about the defect but Samsung never offered to repair or replace the defective phone.[7]

———————————

Because the court holds that Newbold has plausibly pleaded both that he complied with the warranty's precondition by returning his defective phone to Sprint (at Samsung's direction), and that, by directing Newbold to contact Sprint regarding his defective phone, Samsung waived the warranty's precondition, the court need not resolve whether Newbold has pleaded a plausible breach of express warranty claim based on an estoppel theory.

[7]Plaintiffs also contend that, because Newbold purchased his phone from Sprint, not directly from Samsung, he was not required to provide notice of the phone defect to Samsung as a precondition to suit. Samsung does not move to dismiss Newbold's implied warranty claim, however, on the basis of pre-suit notice. Rather, it moves to dismiss based on

This court held in *Galitski I* that plaintiffs' sole remedy for breach of implied warranty is repair or replacement of their defective phones. *Galitski I*, 2013 WL 6330645, at *9. In the amended complaint, plaintiffs allege that "Newbold called Samsung at least twice regarding the defect with his Samsung Galaxy S Epic 4G phone." Am. Compl. ¶ 84. They do not allege that Newbold ever requested that Samsung repair or replace his defective phone or otherwise gave Samsung the opportunity to repair or replace the phone. They do, however, allege that Samsung referred Newbold to Sprint to "resolve his phone's problems," *id.*, and that Newbold, presumably as a result of Samsung's instructions, returned his defective phone to Sprint for repair or replacement. Just as Samsung may be subject to the doctrines of waiver or equitable estoppel with regard to Newbold's express warranty claim, *see supra* § III(C) and note 6, it may also be estopped or precluded under the doctrine of waiver from arguing that Newbold did not give it the opportunity to repair or replace his defective phone. Because plaintiffs have plausibly alleged that Samsung referred Newbold to Sprint when he called Samsung regarding his defective phone, and that Newbold thus attempted "several times" to have Sprint repair or replace the device, it is at least plausible that the doctrine of waiver or equitable estoppel prevents Samsung from defeating Newbold's implied warranty claim based on his failure to give *Samsung* an opportunity to repair or replace his phone. Accordingly, the court denies Samsung's motion to dismiss Newbold's

---

plaintiffs' failure to give Samsung the opportunity to repair or replace the defective phone, which, as this court held in *Galitski I*, is the only remedy available under Samsung's Limited Warranty.

UCC implied warranty claim.[8]

V

Samsung moves to dismiss Newbold's claim for breach of express warranty under the SBA on the ground that plaintiffs have not pleaded that Newbold gave Samsung a reasonable opportunity to repair his defective phone.

A

To state a claim for breach of express warranty under the SBA, a plaintiff must allege the following elements: "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Robertson v. Fleetwood Travel Trailers of Cal., Inc*., 50 Cal. Rptr.3d 731, 741 (Cal. Ct. App. 2006) (citing *Oregel v. Am. Isuzu Motors, Inc.*, 109 Cal.Rptr.2d 583, 588 (Cal. Ct. App. 2001)).  Samsung challenges the second and third elements of Newbold's SBA express warranty claim, arguing that the amended complaint does not plead that Samsung identified Sprint as its designated representative for repairs or that Newbold gave Samsung a reasonable opportunity to repair

---

[8]Plaintiffs also argue that, under California's UCC, because Samsung refused to act on its opportunity to repair or replace Newbold's phone and instead chose to commit a "total and fundamental" default, Samsung cannot limit Newbold's warranty remedy. Ps. Br. 9. Cal. Com. Code § 2719 (2) (West 2002) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code."  Because the court is denying Samsung's motion to dismiss Newbold's implied warranty claim based on waiver or equitable estoppel, it does not address plaintiffs' argument that Samsung's limited remedy failed of its essential purpose.

his device.  Plaintiffs argue that they have satisfied the requirements of the SBA by alleging that Newbold twice called Samsung regarding his defective phone and by alleging that Newbold took his defective phone to Sprint, Samsung's designated representative.

Accepting as true the allegations in the amended complaint, and viewing them in the light most favorable to plaintiffs, the court holds that it is at least plausible that, as to Newbold, Samsung designated Sprint as its authorized representative for repair by directing him to Sprint technical service when he contacted Samsung regarding his defective phone. As to the third element, plaintiffs allege that Newbold "repeatedly returned" his defective phone to Sprint and that he called Samsung at least twice regarding the defect, "to no avail." Am. Compl. ¶ 121.  They also allege that Newbold contacted Sprint "several times" in unsuccessful attempts to repair or replace his phone.  *Id.* ¶ 85.  These allegations are sufficient to plausibly allege that the manufacturer (Samsung) or its representative (Sprint) did not repair the defect after a reasonable number of repair attempts.  Accordingly, the court denies Samsung's motion to dismiss Newbold's express warranty claim under the SBA.

VI

The court now turns to Samsung's motion to compel non-destructive testing of plaintiffs' mobile devices.

A

In May 2013 Samsung requested that each plaintiff produce his Samsung Galaxy S phone(s) that experienced the alleged defects made the basis of this lawsuit.  Plaintiffs responded by agreeing to meet and confer with Samsung's counsel to discuss testing their

mobile devices.  Samsung suggested to plaintiffs' counsel that plaintiffs agree to the same testing protocol used in *Rothbaum v. Samsung Telecommunications America, LLC*, No. 11-CV-10509-MLW (D. Mass.) ("*Rothbaum*").[9]  Under this testing protocol, Samsung would be able to engage in non-destructive testing of the phones over a 72-hour period at Samsung's headquarters in Texas.  Although plaintiffs initially indicated a willingness to follow a protocol similar to the one in *Rothbaum*, they later expressed concerns about preserving the integrity of their phones during testing.  Over the ensuing months, Samsung and plaintiffs attempted to negotiate a mutually-acceptable protocol.  But in March 2014, plaintiffs' counsel advised Samsung that, although plaintiffs would not be opposed to the proposed testing, it would be necessary for an independent laboratory to perform the testing to preserve the integrity of the phones.

Samsung now seeks an order compelling plaintiffs to provide their mobile devices to Samsung for non-destructive testing in line with the last proposed testing protocol.  Plaintiffs oppose the motion, arguing that, although they do not oppose Samsung's testing their phones, any testing should be performed by an independent laboratory or testing facility in Southern California to ensure that all evidence from the phones is preserved and that the phones are not in any way altered.

---

[9]*Rothbaum* is a class action lawsuit that involves a device from the same generation of Samsung's early Galaxy S devices and is currently pending in the District of Massachusetts.

B

Rule 34(a)(1)(B) authorizes a party to "serve on any other party a request within the scope of Rule 26(b): . . . to produce and permit the requesting party . . . to inspect, copy, test, or sample . . . any designated tangible things." In turn, Rule 26(b)(1) permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any . . . claim or defense." "If the parties differ as to whether an inspection or test is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013) (quoting *Hunley v. Glencore Ltd.*, 2013 WL 1681836, at *3 (E.D. Tenn. Apr. 17, 2013)) (internal quotation marks omitted). "However, the decision whether to allow testing, destructive and non-destructive testing alike, 'rests within the sound discretion of the court.'" *Id.* (quoting *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988)).

C

To determine whether to compel the non-destructive testing proposed by Samsung, the court weighs "the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Id.* (quoting *Huntley*, 2013 WL 1681836, at *3).

1

Samsung argues that the non-destructive testing it has proposed will clearly aid in the search for truth. It maintains that, because plaintiffs allege a common hardware defect in

their Galaxy S mobile devices, it is entitled to examine the mobile devices

> to determine if the issues complained of by the Plaintiffs can be
> replicated, to determine if the devices have been modified or
> damaged in any way, to determine if and when the devices were
> rooted so as to void the warranty coverage, and to determine (if
> possible) if there is any hardware or software defect that causes
> the problems identified by Plaintiffs.

D. Br. 8.  The court finds that non-destructive testing will aid in the search for truth about

matters that are relevant to the merits of plaintiffs' claims and of Samsung's defenses, and

plaintiffs do not argue otherwise.  Accordingly the court finds that the testing is both relevant

and valuable "in the search for truth." *Ramos*, 292 F.R.D. at 409.

2

Samsung contends that the non-destructive testing that it proposes presents little

danger for, or burden on, plaintiffs because there are significant safeguards built into the

testing protocol to preserve the integrity of plaintiffs' devices.  Samsung states that these

safeguards include backing up the devices, allowing only non-destructive tests, videotaping

the tests, and permitting plaintiffs' representative to attend the testing.  Plaintiffs respond

that, although Samsung insists that its proposed testing is "non-destructive," Samsung

presents no supporting evidence.  Plaintiffs contend, for example, that merely turning on and

using the phones may allow the devices to connect to the network and install an "over the

air" or similar update, and Samsung offers no evidence to show how it will address this issue.

In addition, Samsung's proposed testing contemplates inspecting the phones' interior,

including circuitry, which plaintiffs maintain necessitates opening the phones, increasing the

risk of damage, destruction, or even tampering.  Finally, Samsung's proposed testing

protocol requires the transportation of the phones to an offsite facility in Texas, thus

increasing the risk of loss or damage of evidence.  Plaintiffs maintain that Samsung provides

no reason why its experts cannot perform the testing locally in Southern California, where

the phones are located.  Plaintiffs contend that any phone damage would prejudice them

because they would not be able to conduct their own testing in response to Samsung's test

results, as part of merits discovery, and in preparation for trial.[10]  Samsung replies that

plaintiffs do not explain how or why there is any more assurance that an independent

laboratory will not damage, alter, or destroy plaintiffs' mobile devices, and that they ignore

the substantial and significant safeguards that Samsung has built into the testing protocol to

preserve the integrity of plaintiffs' mobile devices, including backing up the devices,

allowing only non-destructive testing, videotaping the tests, and permitting plaintiffs'

representative to attend the testing.

3

The court find and concludes that Samsung's motion should be granted, with two

additional provisos stated below.  First, there are reliable private companies that transport

valuable property worldwide, including from one state to another.  Plaintiffs have not

persuaded the court that such transportation cannot be arranged for their mobile devices.

---

[10]Plaintiffs also argue that Samsung's proposed testing is premature and goes to the
merits of plaintiffs' case, not class certification.  The court disagrees.  For example, Samsung
is entitled to the discovery it seeks in order to defend itself against plaintiffs' allegation that
the defect the named plaintiffs experienced is common to the proposed class.

Second, the test protocol can include the use of something akin to a Faraday cage or screen room to ensure that, when the phones are turned on for the first time, they cannot connect to the network and receive an update.  And before testing begins, all participants can be required to remove personal devices (e.g., cell phones and personal hot spots) that could convey signals to the devices being tested.  Third, each mobile device will be backed up before testing begins, only non-destructive tests will be conducted, the tests will be videotaped, and plaintiffs' representative will be able to attend the testing.  Each of these steps is calculated to ensure the integrity of the testing process and plaintiffs' ability to perform their own testing.

The court grants Samsung's motion with the following two additional provisos.  First, at least 48 hours before the first test begins, Samsung must provide plaintiffs' counsel a reasonably specific description of the tests to be performed and the procedures to be followed.  The purpose of this requirement is to enable plaintiffs' representatives attending the testing to exercise the following right to object.  Second, before or during the testing process, a representative of plaintiffs can object to a specific test or procedure on the basis that there is a reasonable likelihood that a proposed test or procedure will damage, materially alter, or destroy a plaintiff's mobile device.  If such an objection is made, the test must not be conducted and the procedure must not be implemented.[11]

---

[11]If the court later determines that the objection was improper under the standard prescribed, plaintiffs may be required to pay the costs that Samsung incurred in, and will incur from, the aborted testing and the subsequent testing.

\*      \*      \*

For the foregoing reasons, the court denies Samsung's motion to dismiss and grants

Samsung's motion to compel non-destructive testing, with the two additional provisos set out

in this memorandum opinion and order.

**SO ORDERED.**

July 22, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE