# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SHANE GALITSKI, RICHARD TALIAFERRO and BRIAN NEWBOLD, Individually and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:12-cv-4782-D |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | § § § | |
| Defendant. | § § | |

---

### PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### [REDACTED VERSION]

---

# TABLE OF CONTENTS

I.   Introduction.................................................................................................1

II.   Relevant Procedural Summary..................................................................4

III.   Common Class-wide Facts Support Certification....................................5

   A.   Samsung conceals the Galaxy S power-off defect before release in the U.S.

   market and fabricates pre-launch test results..........................................5

      1.   Panic and deception permeate Samsung ........................................5

      2.   Samsung releases a knowingly defective Galaxy S into the U.S. market...8

      3.   Samsung Galaxy S: a ██████████████ ...................................8

   B.   ████████████████████████████████████████████

   ████████████████████████████████████ ...............9

      1.   Samsung's ████████████████ ..........................................10

      2.   Samsung's ████████████ caused the Galaxy S power-off problem ..13

   C.   Samsung confirms the defect's existence, but restricts distribution of its

   analyses.....................................................................................................14

   D.   Samsung uses inexpensive half-measures to fix its defective Galaxy S......16

      1.   Samsung fails to revise the phone's ████████████ .........................16

      2.   Samsung instruction to retailers: sell all existing defective Captivate

      phones........................................................................................17

E.   Power-off defect was a top Galaxy S complaint; Samsung's internal analysis shows the problem persists ........................................................................18

   1.   Samsung continues to ship defective Galaxy S phones ...........................18

   2.   Samsung concedes it has ██████████ to ascertain an improvement in the Galaxy S ...................................................................................19

F.   Samsung's ██████████ is present in all Class Phones ...............20

G.   Samsung's  Galaxy  S  Fascinate,  Epic  and  Vibrant  suffered  problems attributed to the defect.......................................................................21

   1.   Samsung and Verizon investigate problems with the Galaxy S Fascinate, and Samsung jockeys to have problems classified as out-of-warranty ...........22

   2.   ████████████████████████████████████ ██████

   3.   Galaxy S Epic's confirmed failures: freezing, locking up ........................23

   4.   Galaxy S Vibrant suffers pre-launch power up problems and ██████ ██████████ .......................................................................23

H.   Samsung's Limited Warranty expressly covers the alleged defect..............25

IV.   Class Certification Is Proper .......................................................................27

A.   Plaintiffs satisfy Rule 23's requirements .....................................................27

   1.   Numerosity: the class is numerous...........................................................27

   2.   Commonality: common questions of law and fact exist............................28

3.   Typicality: plaintiffs' claims are typical of the class ..................................33

4.   Adequacy: plaintiffs and their counsel will fairly and adequately protect the class's interests ...................................................................................35

B.   Plaintiffs satisfy Rule 23(b)(3)'s and (c)(4)'s requirements ........................37

1.   Common questions predominate over individual inquiries ....................37

2.   A class action is a superior adjudication method.....................................48

V.   Conclusion.................................................................................................................50

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................3, 38

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
    133 S. Ct. 1184 (2013) ...................................................27, 37, 38, 39

*Anthony v. General Motors Corp.,*
    33 Cal. App. 3d 699 (1973).................................................................41

*Arnold v. United Artists Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994) ....................................................28

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254 (1992)......................................................................45

*Benavides v. Chicago Title Ins. Co.,*
    636 F.3d 699 (5th Cir. 2011).............................................................37

*Bertulli v. Independent Ass'n of Cont'l Pilots,*
    242 F.3d 290 (5th Cir. 2001) .......................................................33, 35

*Boos v. AT&T,*
    252 F.R.D. 319 (W.D. Tex. 2008).....................................................49

*Brakke v. Economic Concepts, Inc.,*
    213 Cal. App. 4th 761 (2013)............................................................39

*Forbrush v. J.C. Penney Co.,*
    994 F.2d 1101 (5th Cir. 1993)...........................................................33

*Frey v. First Nat'l Bank Southwest,*
    2013 U.S. Dist. LEXIS 37153 (N.D. Tex. Feb. 20, 2013) ................33, 35, 36, 41

*Galitski v. Samsung Telecomms. America, LLC,*
    2013 U.S. Dist. LEXIS 171908 (N.D. Tex. Dec. 5, 2013)......................... passim

*Galitski v. Samsung Telecomms. America, LLC,*
    2014 U.S. Dist. LEXIS 99199 (N.D. Tex. July 22, 2014)............................30, 45

*Hamilton v. First Am. Title Ins. Co.,*
    266 F.R.D. 153 (N.D. Tex. 2010)..................................................................49

*Hancock v. Chicago Title Ins. Co.,*
    263 F.R.D. 383 (N.D. Tex. 2009).........................................................37, 40, 44

*Ibarra v. Texas Employment Comm'n,*
    598 F. Supp. 104 (E.D. Tex. 1984) ..................................................................28

*In re Deepwater Horizon,*
    739 F.3d 790, 817 (5th Cir. 2014) ........................................................... passim

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009)...................................................................................40

*In re Whirlpool Corp. Washer Litig.,*
    722 F.3d 838 (6th Cir. 2013) ..........................................................................44

*Isip v. Mercedes-Benz USA, LLC,*
    155 Cal. App. 4th 19, (2007)...........................................................................30

*Lonergan v. A.J.'s Wrecker Serv. of Dallas,*
    1999 U.S. Dist. LEXIS 11190 (N.D. Tex. July 8, 1999)...................................49

*Massachusetts Mut. Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002)..........................................................................39

*McAdams v. Monier,*
    182 Cal.App.4th 174 (2010) ............................................................................31

*Meyer v. Sprint Spectrum,*
    45 Cal. 4th 634 (Cal. 2009) ............................................................................46

*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir. 1999) ..........................................................................28

*O'Sullivan v. Countrywide Home Loans, Inc.*,
 319 F.3d 732 (5th Cir. 2003) ...............................................................48, 49

*Outboard Marine v. Superior Court*,
 52 Cal.App.3d 30 (1975) ...............................................................................31

*People v. Casa Blanca Convalescent Homes, Inc.*,
 159 Cal. App. 3d 509 (1984) .........................................................................32

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*,
 637 F.2d 1014 (5th Cir. 1981) .......................................................................33

*Romo v. FFG Ins. Co.*,
 397 F. Supp. 2d 1237 (C.D. Cal. 2005) ........................................................45

*Stanwood v. Mary Kay*,
 941 F.Supp.2d 1212 (C.D. Cal. 2012) ..........................................................31

*State Farm Fire & Cas. Co. v. Superior Court*,
 45 Cal. App. 4th 1093 (1996) .......................................................................32

*Stearns v. Ticketmaster Corp.*,
 655 F.3d 1013 (9th Cir. 2011) ................................................................ passim

*Steroid Hormone Prod. Cases*,
 181 Cal. App. 4th 145 (2010) .......................................................................40

*Tait v. BSH Home Appliances Corp.*,
 289 F.R.D. 466 (C.D. Cal. 2012) ............................................................38, 44

*Taliaferro v. Samsung Telecomms. Am., LLC*,
 2012 U.S. Dist. LEXIS 6221 (N.D. Tex. Jan. 19, 2012) .............................44

*Zeidman v. J. Ray McDermott & Co.*,
 651 F.2d 1030 (5th Cir. 1981) ......................................................................27

## Statutes

California Civil Code § 1794(b)(2) ........................................................................45
California Civil Code § 1780 ................................................................................46
Fed. R. Civ. P. 23(a)(1) ........................................................................................27
Fed. R. Civ. P. 23(a)(3) ........................................................................................33
Fed. R. Civ. P. 23(a)(4) ........................................................................................35
Fed. R. Civ. P. 23(b)(3) ...................................................................................37, 48
Fed. R. Civ. P. 23(b)(3) (A)-(D)......................................................................48, 50
U.C.C. § 2714(1) ..................................................................................................45

## Other Authorities

3 A. Conte & Newberg, Newberg on Class Actions, § 9:53 at 429-30 (4th ed.

2002).................................................................................................................47

7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, Fed. Pract. & Proc.

§1781 (2d ed. 1986)........................................................................................47

Pursuant to Federal Rule of Civil Procedure 23, plaintiffs Shane Galitski, Richard Taliaferro, and Brian Newbold, by and through their counsel, respectfully move for certification of a class defined below. Plaintiffs also move to be appointed class representatives, and for Doyle Lowther LLP and Stanley Law Group to be appointed as class counsel pursuant to Rule 23(g).

## I.     Introduction

In 2010 Samsung Telecommunications America, LLC ("Samsung") released its flagship mobile phone known as the Galaxy S into the United States market, under the brand names of AT&T Captivate, T-Mobile Vibrant, Sprint Epic 4G, and Verizon Fascinate (collectively, the "Class Phones").[1] The Class Phones sold to Plaintiffs and hundreds of thousands of California consumers suffered from a common hardware defect. The defect causes the Class Phones to randomly freeze, shut down, reboot, miss calls, miss texts, and power-off while in standby or sleep mode, rendering the phones unfit for their intended use and purpose. To restore a phone, a user must remove the phone's battery, reinsert the battery, and power the

---

[1] The Galaxy S Captivate launched July 18, 2010; Samsung internally refers to the phone as "Vegas" and i897. The Galaxy S Vibrant launched July 21, 2010; Samsung internally refers to the phone as T959. The Epic 4G launched August 20, 2010; Samsung internally refers to the phone as D700. The Fascinate launched on September 9, 2010; Samsung internally refers to the phone as i500. Amended Class Action Complaint for Damages and Equitable Relief ¶ 17 (ECF No. 97) (hereinafter "Complaint"). Plaintiffs reserve their right to amend the Class Phone definition.

phone back on, sometimes multiple times per day. These problems are referred to as the power-off defect.

Before releasing the Galaxy S into the United States market, Samsung knew the Class Phones had a power-off problem. Due to stiff market competition in the smartphone business, and due to financial pressure, Samsung concealed these known Galaxy S defects from the wireless carriers and from unsuspecting consumers, in large part because taking cell phone market share via the Galaxy S was crucial to Samsung's success in the competitive phone business. Rather than fix known defects, Samsung instead fabricated prelaunch test results to avoid delaying the Galaxy S's launch, and to ramp up sales of its flagship smartphone product.

Soon after Samsung released the Galaxy S, consumers were forced to seek repairs for problems with their Class Phones randomly freezing, shutting down, rebooting and powering off while in standby or sleep mode. This was both predictable and preventable, since damning internal Samsung documents confirm the company knew the Galaxy S suffered from a power-off defect prior to release.

Consumers and the wireless carriers were outraged. Responding to consumer complaints and immense pressure from AT&T, Samsung "investigated" what it already knew. ████████████████████████████████

████████████████████████████████████████████



Samsung provided a uniform written warranty with each Class Phone, warranting against defects in material or workmanship. This defect was present when customers took delivery of their phones. *See* APP. 1167-1170; APP. 1172-1175; APP. 1177-1180; APP. 1182-1185. Although Samsung had identified the defect, it failed to disclose its existence to consumers, and failed to repair the defect while the Class Phones were under warranty.

Plaintiffs seek to certify a class, defined as:

> All California residents who purchased a Samsung Galaxy S Class Phone (AT&T Captivate, T-Mobile Vibrant, Sprint Epic 4G, and Verizon Fascinate) from June 1, 2010 through the present. Excluded from the Class are defendant, its officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendant had a controlling interest or was controlled by.

Class certification is proper because plaintiffs' claims and supporting evidence meet Rule 23(a)'s and Rule 23(b)(3)'s threshold requirements. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). This class action will

"achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014). As plaintiffs and class members all purchased defective Class Phones, this action is suitable for class-wide adjudication.

## II.    Relevant Procedural Summary

On February 21, 2014, plaintiffs filed an Amended Class Action Complaint for Damages and Equitable Relief, alleging individual and class claims for violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.* (CLRA), the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (UCL), Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, Song-Beverly Warranty Act, California Civil Code §§ 1792 *et seq.*, and breach of express and implied warranties against defendant Samsung. (ECF No. 97). Samsung filed a motion to dismiss plaintiff Newbold's express warranty and implied warranty claims (ECF No. 99) and answered the Complaint (ECF No. 100) on March 14, 2014. On July 22, 2014, the Court issued an Order denying Samsung's motion to dismiss. (ECF No. 132).

During the course of the litigation, plaintiffs served substantive class discovery, including document requests and interrogatories, and took depositions of Samsung and non-party witnesses. Plaintiffs reviewed tens of thousands of

4

pages of documents and consulted with experts to understand the common nature of the defect with the Class Phones.

## III.   Common Class-wide Facts Support Certification

Uniform evidence proves the existence of a common defect in the Class Phones that causes them to randomly and intermittently power-off while in standby or sleep mode. Both Samsung and ████████████████████████ ████████████-in the Class Phones, confirmed the defect. ████████████

████████████████████████████████████████████

████████████████████

### A.   Samsung conceals the Galaxy S power-off defect before release in the U.S. market and fabricates pre-launch test results

Samsung knew the Class Phones suffered from a power-off defect before the July 2010 launch of AT&T's Captivate, the first of several Galaxy S phones to be released in the U.S. market. ████████████████████████████

████████████████████████████████████████

### 1.   Panic and deception permeate Samsung

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████







### 2.   Samsung releases a knowingly defective Galaxy S into the U.S. market

After concealing the power-off issues, ███████████████████████

████████████   Samsung released the Captivate to the U.S. market on July 18, 2010 without fixing the defect or publicly disclosing its existence. Predictably, soon after this launch, U.S. consumers complained about the power-off issue. Customer service and technician records produced by Samsung, containing tens of thousands of user comments seeking assistance and repairs for problems with the Galaxy S, confirm users suffered from the Captivate powering off by itself and intermittently shutting down, including when in sleep mode. APP. 671, Nos. 54, 62, 64, 70; APP. 675, Nos. 3, 5, 12, 13; APP. 735, Lines 38, 157, 360, 474, 665, 777, 869, 1099, 1127, 1131, 1226, 1273, 1275, 1294, 1324, 1408, 1587, 1647.

### 3.   Samsung Galaxy S: a "Severity 1 Defect"

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Particularly relevant to proving the implied warranty claim on a class-wide

basis, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ Samsung still did not fix this defect even as consumer complaints accelerated.

████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Samsung undertook an internal

investigation to find the power issue's root cause. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████







2. **Samsung's** ▮▮▮▮▮▮▮▮▮ **caused the Galaxy S power-off problem**

W. Ross Stone, an expert retained by plaintiffs with more than 45 years experience in cellular and wireless communications, agrees with ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

**C.     Samsung confirms the defect's existence, but restricts distribution of its analyses**

Following ██████████████████████, Samsung confirmed the existence

of this common, class-wide defect. ███████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ Consistent with

Samsung's actions to conceal defects during the Galaxy S launch, Samsung

permitted distribution of this power-off information █████████████████

██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████



### D.  Samsung uses inexpensive half-measures to fix its defective Galaxy S

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

### 1.  Samsung fails to ████████████████████████

To correct the problem, Samsung did not █████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

2. **Samsung instruction to retailers: sell all existing defective Captivate phones**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

**E.**   **Power-off defect was a top Galaxy S complaint; Samsung's internal analysis shows the problem persists**

[redacted]

**1.**   **Samsung continues to ship defective Galaxy S phones**

Customers continued to return Class Phones [redacted] for power issues. [redacted]

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. Yet Samsung was still not

willing to resolve this issue for consumers.

    **2.**    **Samsung concedes it has** ███████████ **to ascertain an improvement in the Galaxy S**

It is no surprise the corrective action implemented by Samsung failed to resolve the defect. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████. Samsung failed to correct the ██████████████ in

any of the Class Phones.

The truth is Samsung had no idea whether its inexpensive corrective action had any meaningful impact. ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████





### G.   Samsung's Galaxy S Fascinate, Epic and Vibrant suffered problems attributed to the defect

The Fascinate, Epic and Vibrant similarly suffered problems attributed to the common defect detailed above, including freezing, powering off and resetting while in standby mode. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

————————————————

1.      **Samsung and Verizon investigate problems with the Galaxy S Fascinate, and Samsung jockeys to have problems classified as out-of-warranty**



**Samsung Admits The Galaxy S Fascinate**

Meanwhile, the defect continued to be a confirmed failure in returned Galaxy S phones. Users continued to report problems and seek repairs for problems associated with the defect. APP. 522, Lines 83, 86, 88, 92, 96, 106, 116, 125, 129.



### 3.     Galaxy S Epic's confirmed failures: freezing, locking up

The Galaxy S Epic had the same reported power-off issues as the Captivate and the Fascinate. Weeks after launch, users began seeking repairs for power-off issues, including the phone unable to wake from sleep mode. APP. 755, "EPIC Comments LTD" Tab at Lines 5014, 6636, 8508, 14730, 15110, 18156, 22537, 24030; APP. 962, Lines 4761, 14241.

### 4.     Galaxy S Vibrant suffers pre-launch power up problems and "very poor customer experience"

The Vibrant had the same reported power-off issues as the Captivate, Fascinate and Epic. ████████████████████████████████



Soon after launch Galaxy S Vibrant purchasers began seeking repairs for issues associated with the same power-off defect as described above. APP. 756, "Customer Comments" Tab at Lines 506, 564, 715, 723, 847, 917, 1001, 1011, 1039, 1040, 1102, 1133, 1236, 1320, 1378, 1477, 1613, 1629, 1771, 1792, 1817, 1940, 2016, 2140, 2158, 2427, 2529-31, 2533.





**H.    Samsung's Limited Warranty expressly covers the alleged defect**

Samsung provided a written warranty with each Class Phone. Samsung warranted against defects in material or workmanship for one year from the original date of purchase. *See* Complaint Exhibit A, ECF No. 97. The warranty provides:

> SAMSUNG   TELECOMMUNICATIONS   AMERICA,   LLC ("SAMSUNG") warrants to the original purchaser ("Purchaser") that SAMSUNG's phones and accessories ("Products") are free from defects in material and workmanship under normal use and service for the period commencing upon the date of purchase and continuing for the following specified period of time after that date:
>
> Phone 1 Year

* * *

**What are SAMSUNG's Obligations?** During the applicable warranty period, SAMSUNG will repair or replace, at SAMSUNG's sole option, without charge to Purchaser, any defective component part of Product.



The problem with the Class Phone's ████████ ████████ is a common defect in material and workmanship based on the above information. Under the warranty, if a Class Phone contains a defective component part, and as the above analysis shows all Class Phones contain a defective and unfixed component ████████ Samsung is obligated to repair or replace the defective component. If it cannot do so, Samsung must replace the entire phone.

This case presents straightforward common issues: (1) is the Class Phone █ ████████ defective across all Class Phone lines; (2) was that defect ever fully repaired prior or subsequent to release of the phones; (3) does the presence of this defect constitute a defect covered by either express or implied warranty and was it a non-disclosed material fact; and (4) what is the reasonable remedy for distributing a Class Phone with a known, but undisclosed, material defect? Answers to these questions will resolve the claims of each Class

Member in one common trial of these issues and produce one unified conclusion. Thus, this action should be certified to proceed on a class-wide basis.

## IV.   Class Certification Is Proper

### A.   Plaintiffs satisfy Rule 23's requirements

To obtain certification of a class, plaintiffs must satisfy Rule 23(a)'s four elements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Plaintiffs also must establish "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Rule 23, however, is not a "dress rehearsal" for the merits. *Deepwater*, 739 F.3d 790, 811 (5th Cir. 2014). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S. Ct. at 1195.

### 1.   Numerosity: the class is numerous

Rule 23(a)(1) requires the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Plaintiffs need not establish the precise number of proposed class members, and the Court may draw reasonable inferences of numerosity from the available evidence. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038-39 (5th Cir. 1981).

The proposed class compromises all persons in California who purchased one or more of the following models in the Samsung Galaxy S phone series: Captivate (i897), Fascinate (i500), Vibrant (T959), and Epic (D700). ████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████ Based on proportional sales estimates (*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994)) the proposed California class would conservatively include over ██████ class members, making joinder of each person who purchased a Class Phone impracticable. APP. 1202-1212 (2010 U.S. census reporting California as twelve percent of population); *see Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Class members, moreover, reside throughout California (APP. 1190 at 6:18-19; APP. 1142 at 6:16-22; APP. 1158 at 6:20-23), underscoring joinder's impracticability. *Ibarra v. Texas Emp't Comm'n*, 598 F. Supp. 104, 108 (E.D. Tex. 1984).

### 2.    Commonality: common questions of law and fact exist

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater*, 739 F.3d 790, 810 (5th Cir. 2014). A "contention" about the cause of class members' injuries, the Fifth Circuit

explained, suffices "to satisfy Rule 23, so long as the party seeking certification can show that this contention is 'common' to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution." *Id.* at 811. The contention need not concern the damages component of class members' claims, but may "relate to the defendant's injurious conduct." *Id.* at 810-11.

Numerous common questions of law and fact satisfy the commonality requirement. For example:

(a) whether a defect exists in the Class Phones that caused the phones to randomly freeze, shut down, reboot, miss calls, miss texts, and power-off while in standby mode █████████



(c) ████████████████████████████████████

(d) whether express or implied warranties required replacement of the ██████████ or the entire phone due to each Class Phone having a defect; and

(e) whether the defect was a material fact Samsung failed to disclose to consumers.

As Dr. Stone finds, the ████████–defect causing the power-off issues was *common* to the Captivate, Fascinate, Epic, and Vibrant models of the Galaxy S phone." APP. 1223 (emphasis added). ████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████ Each of these factual contentions

is "common to all class members" and "capable of classwide resolution."

*Deepwater*, 739 F.3d at 811.

Plaintiffs' common legal contentions also are "central to the validity" of the claims at issue. *Deepwater*, 739 F.3d at 811. For plaintiffs' implied warranty claims, the "core test of merchantability is fitness for the ordinary purpose for which such goods are used," and such "fitness is shown if the product is in safe condition and substantially free of defects." *Galitski v. Samsung Telecomms. Am., LLC*, 2013 U.S. Dist. LEXIS 171908, at *39 (N.D. Tex. Dec. 5, 2013); *see also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007). Proof of a common defect in the Class Phone components also can establish breach of express warranty. *Galitski v. Samsung Telecomms. Am., LLC*, 2014 U.S. Dist. LEXIS 99199, at *20 (N.D. Tex. July 22, 2014). Common questions about the hardware defect in the Galaxy S phones, which are so important "even a single common question will do," demonstrate class members "have suffered the 'same injury.'" *Deepwater*, 739 F.3d at 811-12.

30

A CLRA claim may be based on misrepresentations and also on omission of material facts if (1) the omission was contrary to a representation actually made by the defendant, or (2) the omission was of a fact the defendant was obliged to disclose. *McAdams v. Monier*, 182 Cal. App. 4th 174, 185-87 (2010) (upholding CLRA claim for failure to disclose material product limitations). Under the CLRA claim, plaintiffs must show a misrepresentation or omission of a material fact caused them harm. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Causation, even on a class-wide basis, "may be established by materiality." *Id.* A fact is "material" for CLRA purposes if a plaintiff would deem it important in determining how to act in the transaction at issue. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011); *Outboard Marine v. Superior Court*, 52 Cal. App. 3d 30, 36-37 (1975) (CLRA claims can properly be tried based on the omission of material facts defendants were bound to disclose but did not if "calculated to induce a false belief"); *Stanwood v. Mary Kay*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012) (CLRA claim properly based on claims defendants hid material facts to increase sales).

Questions of materiality are subject to class-wide proof. *Stearn*, 655 F.3d at 1022. A plaintiff can seek damages on class members' behalf so long as they comply with the "pre-filing notice requirement on actions seeking damages." *Galitski*, 2013 U.S. Dist. LEXIS 171908, at *47. The effectiveness of a CLRA

notice can be determined on behalf of the entire class as can the materiality of the omitted fact. *Stearns*, 655 F.3d at 1023; *Galitski*, 2013 U.S. Dist. LEXIS 171908, at *50. Plaintiffs' common factual and legal questions are thus "central to the validity" of the CLRA claims. *Deepwater*, 739 F.3d at 811.

These factual and legal contentions also are relevant for the UCL claim. "The UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Galitski*, 2013 U.S. Dist. LEXIS 171908, at *55. Any "one unlawful act or practice suffices to state a claim under the UCL" (*id.*), and thus whether Samsung is liable under the UCL is "common" to the entire class. Plaintiffs' independent "unfair" claims under the UCL may be established by weighing "the utility of [Samsung's] conduct against the gravity of the harm" to the class, *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996) or showing Samsung's business practices were immoral, unethical oppressive, unscrupulous or substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984). Class-wide questions include whether the defect was common to the Class Phones, Samsung's knowledge of the defect, Samsung concealing the defect, and Samsung's willingness to sell knowingly defective phones to generate market share.-These common elements are "central"

to the claims' validity and are "capable of classwide resolution." *Deepwater*, 739 F.3d at 811.

### 3.   Typicality: plaintiffs' claims are typical of the class

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality test is "not demanding" and is met where the representative plaintiffs' claims "arise out of the same event or course of conduct as the other proposed class members,' or are based on the same legal theory." *Frey v. First Nat'l Bank Southwest*, 2013 U.S. Dist. LEXIS 37153, at *12 (N.D. Tex. Feb. 20, 2013). Typicality does not require all claims be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). So long as class representatives and absent class members share the same liability theories, as is the case here, any difference in the extent of injury or damage theory will not defeat typicality. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 (5th Cir. 2001). This "test for typicality is easily met." *Forbrush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

Plaintiffs' claims are typical because their claims, like the class's claims, "arise out of" the same ████████████ in the Galaxy S phones. *Frey*, 2013 U.S. Dist. LEXIS 37153, at *12; APP. 1222. "The ██████ defect causing the power-off issues," explained Dr. Stone, "was common to the Captivate, Fascinate,

Epic and Vibrant models of the Galaxy S phone" (APP. 1223), which include devices plaintiffs bought. APP. 1192 at 19:5-9; APP. 1143 at 14:19-20; APP. 1162 at 35:2-11. Further, plaintiffs all suffered similar problems with their Galaxy S devices, including the phones randomly locking up, freezing, rebooting and resetting, including when the Galaxy S was in sleep mode, and in many instances a battery pull was required to reboot the phone. APP. 1192 at 18:6-13, 19:5-11; APP. 1263 at ¶¶ 4-5; APP. 1143 at 16:17-19, APP. 1146-47 at 31:23-34:1; APP. 1266 at ¶¶ 4, 6; APP. 1164 at 46:4-47:21; APP. 1269 at ¶¶ 4, 6. Plaintiff Newbold contacted Samsung about the defect and requested repair or replacement while his Galaxy S was under warranty, to no avail. APP. 1141-1155 at 23:12-24:2; 30:19-31:4; 60:20-61:1; 77:7-78:4; 78:8-10; 81:15-19; 84:24-85:12; 90:5-15; 91:7-20.

Samsung's detailed voluminous customer service call logs and records show class members experienced the same problems with their phones, as did the plaintiffs across all four product lines. *See, e.g.,* APP. 512-513; APP. 516-519; APP. 522; APP. 755-756; APP. 956; APP. 959-961. Just as the core ████ defect issues satisfy the commonality requirement, they also establish typicality. *See Deepwater*, 739 F.3d at 812, n.92 ("the commonality and typicality requirements of Rule 23(a) tend to merge"). Further, Dr. Stone finds the ████ defect causing the power-off issues was common to the Captivate, Fascinate, Epic, and Vibrant models." APP. 1218, 1221, 1223. Typicality is thus satisfied because

plaintiffs' and the class's claims "are based on the same legal theory," *Frey*, 2013 U.S. Dist. LEXIS 37153, at *12, and "share the same theories of liability" for breach of warranty and violation of consumer protection statutes. *Bertulli*, 242 F.3d at 297.

### 4.   Adequacy: plaintiffs and their counsel will fairly and adequately protect the class's interests

Representative plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy of representation, plaintiffs must show (1) the absence of conflict between plaintiffs' and the class's interests; (2) their willingness and ability to take an active role in controlling the litigation; and (3) their counsel have the zeal and competence to represent the class. *Frey*, 2013 U.S. Dist. LEXIS 37153, at *13.

Plaintiffs and absent class members have the same interest in proving the Galaxy S phone is defective. Moreover, plaintiffs and absent class members have the same interest in maximizing monetary relief. *See* APP. 1264-1265 at ¶ 12; APP. 1191 at 17:15-18; APP. 1149 at 52:11-13; APP. 1267-1268 at ¶ 12; APP. 1161 at 18:1-7; APP. 1271 at ¶ 13.

Plaintiffs have demonstrated their willingness to actively participate in this litigation. *See Frey*, 2013 U.S. Dist. LEXIS 37153, at *13. Taliaferro "stay[s] in contact with [counsel] about once a month by phone," including providing input into the complaint. APP. 1158-1160 at 9:16-10:3, 17:3-5. Galitski communicates

with his lawyers monthly or every other month regarding the status of the case. APP. 1191 at 17:10-12. Newbold discuss his "issues and problems with … counsel, and just keep[s] up to date with where the suit is and … where it's been filed, and pretty much the status of it as it goes along." APP. 1149 at 51:1-8. Each plaintiff understands the factual allegations about the Class Phones and his duties as a class representative. APP. 1191-1192 at 15:3-18, 18:11-3; APP. 1146 at 32:14-18, APP. 1148-1150 at 49:18-50:25; APP. 1161-1162 at 20:1-24, 35:2-11, 37:3-25. Plaintiffs have answered numerous discovery requests, provided their phones for testing, and traveled to San Diego for deposition. APP. 1264 at ¶ 11; APP. 1270 at ¶ 12; APP. 1267 at ¶ 11.

Plaintiffs have retained qualified counsel to represent the class. *See Frey*, 2013 U.S. Dist. LEXIS 37153, at *13. As demonstrated by their firm resumes, plaintiffs' counsel are experienced consumer class action litigators (APP. 1272-1291). They possess, and are committed to expending, the skill, time, and resources needed to pursue this case to resolution. *See, e.g.,* ECF Nos. 1, 91, 97, 132. Counsel have acted vigorously in prosecuting this action on the class's behalf, including devoting substantial time and resources to reviewing hundreds of

thousands of pages of discovery, deposing witnesses, and retaining expert assistance.[3] APP. 1292.

## B. Plaintiffs satisfy Rule 23(b)(3)'s and (c)(4)'s requirements

This action is maintainable under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Common questions predominate over individual inquiries

The "focus of Rule 23(b)(3) is on the predominance of common *questions*." *Amgen*, 133 S. Ct. at 1195 (emphasis added). For a common question to predominate, "it must be definitively answered for all class members using a generalized set of facts and producing one unified conclusion." *Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 390 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011). Yet a plaintiff seeking class certification is not required "to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196. Rule 23 instead requires only "common questions '*predominate* over any questions affecting only

---

[3] Pursuant to Local Rule 23.2(c) for the Northern District of Texas, plaintiffs' counsel has assumed financial responsibility for funding this action. Pursuant to Local Rule 23.2(g) for the Northern District of Texas, plaintiffs retained counsel under contingent fee agreements and plaintiffs' counsel anticipates seeking an award of attorneys' fees under the claims alleged.

individual [class] members.'" *Id.* (emphasis added). Here, common questions of fact and law predominate over any individual issues.

### a)   Common questions predominate regarding plaintiffs' consumer protection claims

"Predominance is a test readily met" for consumer fraud claims like plaintiffs' CLRA and UCL claims. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA ... and UCL."). First, the "CLRA makes unlawful various unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." *Galitski*, 2013 U.S. Dist. LEXIS 171908, at *46. Plaintiffs must show the omitted facts were both deceptive and material, and these are class-wide issues. *Stearns*, 655 F.3d at 1022.

Under the CLRA, "causation, on a class-wide basis, may be established by *materiality*. If the trial court finds that material misrepresentations [or omissions] have been made to the entire class, an inference of reliance arises as to the class." *Stearns*, 655 F.3d at 1022. Materiality is judged by a reasonable person standard involving the importance of an omission or misrepresentation, *Stearns*, 655 F.3d at 1022; *Collins*, 202 Cal. App. 4th at 255. Thus, materiality is an objective standard

38

subject to common proof and "suitable for treatment in a class action." *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002); *accord Stearns*, 655 F.3d at 1022.

At trial on the merits, plaintiffs can present evidence of the "common" ▓▓▓▓▓▓ defect in the Captivate, Fascinate, Epic, and Vibrant (APP. 1223), and based on evidence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ The jury can then determine whether this information was material to the entire class. *Stearns*, 655 F.3d at 1022; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (finding predominance over whether failure to disclosure defect in alignment was material, finding such "allegations are susceptible to proof by generalized evidence."). Thus, "there is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating." *Amgen*, 133 S. Ct. at 1196 .

Common issues similarly predominate with plaintiffs' UCL claims. "[R]elief under the UCL is available without individualized proof of deception, reliance, and injury." *Stearns*, 655 F.3d at 1020; *accord Brakke v. Economic Concepts, Inc.*, 213 Cal. App. 4th 761, 772 (2013). The UCL focuses "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Stearns*,

655 F.3d at 1020 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009)). Once a representative plaintiff shows he lost money and was injured in fact as a result of Samsung's business practices, which only the plaintiff must show, not other class members, "no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010).

At trial, plaintiffs will show they lost money and were injured in fact by purchasing defective Class Phones. APP. 1263-1264 at ¶¶ 4-6; APP. 1266-1267 at ¶¶ 4-7; APP. 1269-1270 at ¶¶ 4-7. The focus then shifts to Samsung to justify its business conduct (*Stearns*, 655 F.3d at 1020; *Tobacco II*, 46 Cal. 4th at 311). Samsung's liability thus can "be definitively answered for all class members using a generalized set of facts and producing one unified conclusion." *Hancock*, 263 F.R.D. at 390.

> **b) Common questions predominate regarding Plaintiffs' warranty claims**

Samsung provides the same written warranty for each Class Phone sold. *See* APP. 1167-1170; APP. 1172-1175; APP. 1177-1180; APP. 1182-1185. Samsung warrants its Galaxy S phones "are free from defects in material and workmanship." Rather than being "free from defects," as Samsung represents, the Captivate, Fascinate, Epic, and Vibrant suffer from a "common" ▮▮▮▮ defect. APP. 1223.

40

Thus for the express warranty claims, "[c]ommon proof can be used to establish liability, or lack thereof." *Frey*, 2013 U.S. Dist. LEXIS 37153, at *18.

An express warranty claim requires common proof of the defect's existence, *not* its cause, and common proof whether Samsung violated its written warranty by failing to repair the defect. *Wolin*, 617 F.3d at 1174. California express warranty law "focuses on *the seller's* behavior and obligations—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller 'in essence' agreed to sell." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1229 (2010) (reversing order decertifying class as to breach of express warranty claims). Product malfunction is not an element of plaintiffs' warranty claim. *Anthony v. General Motors Corp.*, 33 Cal. App. 3d 699, 704-06 (1973) (not requiring individual evidence of wheel failure or personal injury or property damage from wheel failure and finding allegations of common "inherent defect" is "exactly the sort of common issue for which class actions are designed."). Once made, any affirmation "is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." *Weinstat*, 180 Cal. App. 4th at 1229.

At trial, plaintiffs will offer Samsung's written warranties as common proof, which are the same for all models, thereby allowing this element to be proven with common facts. *See* APP. 1167-1170; APP. 1172-1175; APP. 1177-1180; APP.

41

1182-1185. Breach will be established through evidence of the "common"

█████████ defect. APP. 1223. ████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Common issues therefore predominate. *See Wolin*, 617 F.3d

at 1174. Once express representations are shown to have been made, Samsung

must prove by "clear affirmative proof" its guarantee against "defects in

manufacture and workmanship" has somehow "been taken out" of the class's sales

transactions. *Weinstat*, 180 Cal. App. 4th at 1229-30.

To establish an express warranty claim under Song-Beverly, a plaintiff must

show (i) the product had a defect or nonconformity covered by the express

warranty; (ii) the product was presented to an authorized representative of the

manufacturer for repair; and (iii) the manufacturer or its representative did not

repair the defect or nonconformity after a reasonable number of repair attempts.

*Galitski*, 2013 U.S. Dist. LEXIS 171908, at *34-35. As shown above, the Class

Phones have the same power-off defect, ████████████████████████████

██████████████████████████████ *see* Section III. A. 3, *supra*. It is a

common question whether this is a covered defect under Samsung's warranty.

---

4 ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████

Samsung and its authorized representatives were presented opportunities to repair, *see* Section IV. A. 3., *supra*, yet as explained below, the defect was never fixed. *See also* APP. 1156; APP. 1141-1155 at 23:12-24:2; 30:19-31:4; 60:20-61:1; 77:7-78:4; 78:8-10; 81:15-19; 84:24-85:12; 90:5-15; 91:7-20.

For their implied warranty claims, plaintiffs must show the Class Phones were unmerchantable. *See Galitski*, 2013 U.S. Dist. LEXIS 171908, at *38-39 at n.16. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Galitski*, 2013 U.S. Dist. LEXIS 171908, at *39.

In terms of such a showing, at trial, Dr. Stone will explain the defect common to the phones. APP. 1222-23



The problems with the Captivate and Fascinate arise from the same ███ ███████████████████████ found in the two other phones. ████████

████ Questions for plaintiffs' implied warranty claims thus can "be definitively answered for all class members" at once, based on the same "generalized set of

facts." *Hancock*, 263 F.R.D. at 390; *Tait*, 289 F.R.D. at 485 ("Because an implied warranty claim requires an objective standard and because plaintiffs' theory here is grounded in a defective design common to all Washers, the 'breach of implied warranty claim is therefore susceptible of common proof.'").

For the same reason, certifying plaintiffs' Magnuson-Moss Act claim is appropriate. The Magnuson-Moss Act "provides a federal cause of action for state law express and implied warranty claims." *Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 U.S. Dist. LEXIS 6221, at *34 (N.D. Tex. Jan. 19, 2012). By establishing the class's express warranty and implied warranty claims through common proof, plaintiffs also establish a violation of Magnuson-Moss. *See id.* Therefore, common legal issues predominate regarding the Magnuson-Moss claims.

### c)   Common questions predominate regarding calculation of monetary relief

Based on the above common set of facts, the Court can certify a class to determine liability under Rule 23(c). *Deepwater*, 739 F.3d at 815-16. However, where, as here, "damages [can] be measured on a classwide basis," the predominance requirement for determining damages is also satisfied. *See In re Whirlpool Corp. Washer Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Samsung's express warranty obligates the company to "repair or replace ... any defective component part" of the phones." *See* APP. 1167-1170; APP. 1172-1175; APP.

1177-1180; APP. 1182-1185. The Court has found the "sole remedy for breach of implied warranty [under the UCC] is repair or replacement of [the] defective phones." *Galitski*, 2014 U.S. Dist. LEXIS 99199, at *18. If plaintiffs can demonstrate breach of warranty, Samsung is obligated to fix the defective phones.

Song-Beverly allows plaintiffs to recover the "cost of repairs necessary to make the [phones] conform," Cal. Civ. Code. § 1794(b)(2), or damages calculated in "any manner which is reasonable." Cal. Civ. Code. § 1794(b)(2); U.C.C. § 2714(1). Dr. Stone has opined on the repair costs for the Class Phones, which are uniform. APP. 1223 ███████████████████████████████████████ ███████████████████████████████████ The jury can calculate a single, "reasonable" damage amount for the "common" ████████ defect (APP. 1223), which could be based on repair or replacement cost, the cost of the phone itself or its value, or the monies Samsung made from sales of these knowingly defective phones. These theories of recovery, which would all produce the same relief across the class, are available under Magnuson-Moss as well. *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1241 (C.D. Cal. 2005).

Restitution and disgorgement are the two primary remedies available under the UCL (*see, e.g., Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992)), and are based on Samsung's revenues and profits from selling defective Class Phones. This can be established on a class-wide basis without resort to

individualized proof. Samsung maintains information on the revenues and profits from its sale of the Class Phones. APP. 463. Samsung profits from its sale of Galaxy S phones were already litigated in its highly publicized patent trials with Apple, Inc. Evidence produced during trial showed Samsung made up to 35.5% profit margin off its Class Phones, which were sold at retail on average for $550. APP. 1153 at 60:3-15; *Apple, Inc. v. Samsung Elec. Co. Ltd.*, 11-cv-01846 (N.D. Cal. Aug. 19, 2012), ECF No. 1839. At trial, plaintiffs would present similar evidence.

The CLRA permits recovery of both actual and punitive damages. Cal. Civ. Code § 1780(a)(1), (4). Such damages include both the direct transactional costs such as the cost of the phone, and any associated costs incurred in attempting to redress the issue. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (Cal. 2009) ("transaction costs … falls within the broad meaning of suffering 'any damage as a result of the use or employment' of an unlawful practice."). Further, plaintiffs anticipate offering expert testimony at trial about the actual value, or lack thereof, for defective Class Phones received at the time of purchase. Plaintiffs also may recover restitution, calculated under equitable theories similar to the UCL. Cal. Civ. Code § 1780(a)(3), (5).[5]

---

[5] The Fifth Circuit's recent *Deepwater* opinion instructs that even where damage calculations give rise to individual questions not capable of class-wide resolution, predominance can still be

### d) The proposed class is adequately defined and ascertainable

Although there is no explicit requirement concerning a Rule 23 class definition, courts hold the class must be adequately defined and ascertainable. *Deepwater*, 739 F.3d 821. However, "[t]he possibility that some [claimants] may fail to prevail on their individual claims will not defeat class membership on the basis of the ascertainability requirement." *Id.*

Whether one purchased a Class Phone during a specific time period is an objective inquiry readily ascertainable from Samsung's or carrier records. For example, ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████ Additionally, class members can determine whether they have a Class Phone simply by checking the model and serial number, or International Mobile Equipment Identity ("IMEI") number, for each phone. ██████████████████████████████

---

met. 739 F.3d at 815-17. Courts routinely hold follow-on proceedings regarding damages allocation, even if they involve individualized damages. 3 A. Conte & Newberg, *Newberg on Class Actions*, § 9:53 at 429-30 (4th ed. 2002).

████████████████████████████████ Pursuant to Rule 23.2(e) of the Local Rules for the Northern District of Texas, plaintiffs anticipate providing individual notice to class members via registration and wireless provider records and the cost of notice shall be paid pursuant to Court order. Thus, plaintiffs' proposed class is readily ascertainable.

### 2.    A class action is a superior adjudication method

Rule 23(b)(3) requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The following factors are relevant in determining superiority: (1) class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation and claims in this forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

A class action is the superior method of resolving a claim if class certification would be an efficient means of adjudicating the claim as compared to other group-wide methods of adjudication. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737 (5th Cir. 2003). Since an individual class member's claim likely would not rationalize the time and expense commitment required for

trial, a class action is the superior adjudication method here. *Boos v. AT&T*, 252 F.R.D. 319, 326 (W.D. Tex. 2008).

Trying each class member's claim separately would be inefficient, since each case would allege identical misconduct and offer identical proof of Samsung's liability. Forcing each class member to proceed in separate suits where the phone cost approximately $550 would waste judicial resources. Separate suits do not further Rule 23's efficiency and economy goals.

Finally, for the reasons detailed above, certification presents no manageability difficulties. "[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 171 (N.D. Tex. 2010). A copycat class action filed after this case is pending uncertified in the Central District of California. *Anderson v. Samsung*, Case No. 8:13-cv-01028-CJC-JPR (C.D. Cal.). Another putative class action is pending against Samsung on behalf of Galaxy S purchasers in Massachusetts, also uncertified, but only on behalf of Massachusetts residents. *Rothbaum v. Samsung*, Case No. 1:11-cv-10509-MLW (D. Mass. 2011).

Class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing this class action do not outweigh the benefits of concentrating this matter into one litigation.

*See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D). The proposed class is thus properly certifiable under Rule 23(b)(3) and (c).

## V.   Conclusion

Plaintiffs satisfy Federal Rule of Civil Procedure 23's requirements. Plaintiffs respectfully request the Court enter an order: (1) certifying a California class of Class Phone purchasers; (2) appointing plaintiffs Shane Galitski, Richard Taliaferro, and Brian Newbold as class representatives; and (3) appointing Doyle Lowther LLP and Stanley Law Group as class counsel.

Date: September 24, 2014           Respectfully submitted,

DOYLE LOWTHER LLP

       */s/ James R. Hail*
James R. Hail (TX SBN 24002207)
jim@doylelowther.com
William J. Doyle, II (CA SBN 188069)
bill@doylelowther.com
John A. Lowther (CA SBN 207000)
john@doylelowther.com
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax

STANLEY LAW GROUP
Marc R. Stanley
marcstanley@mac.com
Martin Woodward
Scott Kitner
3110 Monticello Avenue, Suite 770
Dallas, TX 75205
(214) 443-4300 phone

(214) 443-0358 fax

GLYNN LAW GROUP
Thomas E. Glynn
tom@glynnwgroup.com
10200 Willow Creek Road, Suite 170
San Diego, CA 92131
(858) 271-1100 phone
(858) 876-1530 fax

THE CONSUMER LAW GROUP
Alan M. Mansfield
alan@clgca.com
10200 Willow Creek Road, Suite 160
San Diego, CA 92131
(619) 308-5034 phone
(888) 341-5048 fax

*counsel for plaintiffs and proposed class*