**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHANE GALITSKI, RICHARD TALIAFERRO and BRIAN NEWBOLD, Individually and on behalf of All Others Similarly Situated,** | § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| **v.** | § § | **3:12-CV-4782-D** |
| **SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,** | § § § § | |
| **Defendant.** | § | |

# CONFIDENTIAL INFORMATION REDACTED

## SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Jeffrey M. Tillotson, P.C.
Texas State Bar No. 20039200
John Volney
Texas State Bar No. 24003118
Alan Dabdoub
Texas State Bar No. 24056836
**LYNN TILLOTSON PINKER & COX, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANT
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC**

November 12, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHANE GALITSKI, RICHARD** | § | |
| **TALIAFERRO, and BRIAN NEWBOLD,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 3:12-CV-4782-D** |
| | § | |
| **SAMSUNG TELECOMMUNICATIONS** | § | |
| **AMERICA, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

_____

**SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
_____

Jeffrey M. Tillotson, P.C.
Texas State Bar No. 20039200
John Volney
Texas State Bar No. 24003118
Alan Dabdoub
Texas State Bar No. 24056836
**LYNN TILLOTSON PINKER & COX, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANT
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC**

November 12, 2014

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iii

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................ 3

    A.  No Plaintiff Purchased the Captivate Device Sold By AT&T ............................... 3

        1.  Brian Newbold purchased and used the Sprint Epic 4G. ........................... 3

        2.  Shane Galitski also purchased the Sprint Epic 4G. ................................... 5

        3.  Richard Taliaferro purchased the Verizon Fascinate. ............................... 6

        4.  Each Plaintiff's device came with a one-year limited warranty. ............... 7

        5.  Samsung's engineers tested Plaintiffs' phones and found that Taliaferro's phone had significant liquid damage. ..................................... 8

    B.  Samsung and AT&T Tested the Captivate Device Extensively Before The Device Was Released Into the U.S. Market. ................................................... 9

        1.  AT&T's lab tested the Captivate before certifying it for release ............... 9

        2.  After AT&T granted the Captivate technical acceptance, AT&T and Samsung continued to test the device before release. ........................ 11

        3.  After release, AT&T used its Early Warning Process to identify early return issues for the Captivate. ............................................................ 12

        4.  AT&T identified failure to wake from sleep mode as an early return issue for a small number of the Captivates sold. ...................................... 12

        5.  Samsung worked with its part supplier Maxim to resolve the failure to wake from sleep mode issue exhibited by the Captivate. ...................... 13

        6.  Based on Maxim's recommendations, Samsung resolved the sleep mode issue on the Captivate by making capacitor changes on the device and by repairing returned devices. ....................................... 14

    C.  Samsung Did Not Conceal a "Severity 1 Defect" from AT&T. ........................... 15

    D.  Maxim Did Not Identify A Common Hardware Defect in All Galaxy S Models. ................................................................................................ 15

        1.  Stone is not qualified to offer his "common hardware defect" opinions. .................................................................... 16

        2.  Stone's opinions are not based on reliable data or any scientific investigation. .......................................................................... 17

        3.  Stone's common hardware defect opinions are unreliable. ...................... 18

    E.  Samsung's Expert Joe McAlexander Explains the Multiple Flaws in Stone's Analysis. ........................................................................................... 19

F.  Samsung Did Not Confirm the Existence of Any Common Class-Wide Defect or Refuse to Repair the Captivate. ........................................... 21

G.  Plaintiffs Misrepresent Return Rate Statistics and Other Data for the Various Models of the Galaxy S. ....................................................... 22

    1.  Captivate (AT&T). ................................................................... 22

    2.  Fascinate (Verizon). ............................................................... 23

    3.  Epic 4G (Sprint). ................................................................... 24

    4.  Vibrant (T-Mobile). ............................................................... 24

III.  ARGUMENT AND AUTHORITIES ........................................................... 25

A.  Legal Standard. ............................................................................. 25

B.  The Court Should Deny Class Certification. ....................................... 26

    1.  Plaintiffs fail to satisfy the commonality requirement. ............................ 27

    2.  Plaintiffs fail to satisfy the typicality and adequacy requirements. .......... 29

    3.  Plaintiffs fail to satisfy the predominance requirement. .......................... 33

        a.  Because each class claim pleaded by Plaintiffs requires individualized proof of actual injury, common issues do not predominate. .................................................................. 33

        b.  Plaintiffs' CLRA and UCL claims require multiple individualized inquiries. ............................................................. 35

        c.  Plaintiffs' class warranty claims require multiple individualized inquiries. ............................................................. 39

        d.  Proving damages requires an individualized inquiry. ............................... 43

        e.  Plaintiffs have not shown that they can ascertain class membership. ........ 46

    4.  Plaintiffs fail to satisfy the superiority requirement. ............................... 46

IV.  CONCLUSION ..................................................................................... 48

CERTIFICATE OF SERVICE ............................................................................. 49

# TABLE OF AUTHORITIES

## Cases

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012) ......................................................... 27

*Ala. v. Blue Bird Body Co.*,
  573 F.2d 309 (5th Cir.1978) .......................................................... 33

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ......................................................... 44

*Am. Honda Motor Co., Inc. v. Superior Court*,
  199 Cal. App. 4th 1367 (2011) ...................................................... 41

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ........................................................ 41

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................... 26, 33

*Amira Anderson v. Samsung Telecommunications America, LLC*,
  Case No. SACV-13-01028-CJC ..................................................... 48

*Amy Rothbaum v. Samsung Telecommunications America, LLC*,
  C.A. No. 11-10509-MLW...................................................... 22, 47, 48

*Anthony v. Gen. Motors Corp.*,
  33 Cal. App. 3d 699 (1973) ........................................................... 42

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)....................................................... 30, 31

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ..................................................... 26, 33

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) ......................................................... 30

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ....................................................... 37

*Birdsong v. Apple, Inc.*,
  590 F.3d 955, 960 (9th Cir. 2009) .................................................. 34

*Campion v. Old Republic Home Prot. Co., Inc.*,
 272 F.R.D. 517 (S.D. Cal. 2011) .................................................................. 35, 37, 38, 44

*Caro v. Procter & Gamble Co.*,
 18 Cal. App. 4th 644 (1993) ........................................................................ 37

*Castano v. Am. Tobacco Co.*,
 84 F.3d 734 (5th Cir. 1996) ........................................................................ 44

*Chamberlan v. Ford Motor Co.*,
 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ...................................................... 34

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) .................................................................... 39

*Cole v. Gen. Motors Corp.*,
 484 F.3d 717 (5th Cir. 2007) ...................................................................... 26

*Cole v. General Motors Corp.*,
 484 F.3d 717 (5th Cir. 2007) ...................................................................... 44

*Colgan v. Leatherman Tool Group, Inc.*,
 135 Cal. App. 4th 663 (2006) ...................................................................... 45

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993).................................................................................... 27

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
 431 U.S. 395 (1977).................................................................................... 29

*Feitelberg v. Credit Suisse First Boston, LLC*,
 134 Cal. App. 4th 997 (2004) .................................................................. 45, 46

*Galitski v. Samsung Telecomms. Am., LLC*,
 Civ. Action No. 3:12-CV-4782-D,
 2013 WL 6330645 (N.D. Tex. Dec. 5, 2013) ........................................... 39, 42

*Galitski v. Samsung Telecomms. Am., LLC*,
 Civ. Action No. 3:12-CV-4782-D,
 2014 WL 3610789 (N.D. Tex. July 22, 2014) ............................................ 39

*Gartin v. S & M NuTec, LLC*,
 245 F.R.D. 429 (C.D. Cal. 2007).............................................................. 36, 37

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 903 F.2d 176 (2d Cir. 1990)........................................................................ 30

*Gen. Tele. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982).............................................................................. 25, 30

*Gonzalez v. Proctor & Gamble Co.,*
    247 F.R.D. 616 (S.D. Cal. 2007) ....................................................... 37

*Hamilton v. First American Title Ins. Co.,*
    266 F.R.D. 153 (N.D. Tex. 2010) ...................................................... 47

*Hancock v. Chicago Title Ins. Co.,*
    263 F.R.D. 383 (N.D. Tex. 2009) ...................................................... 33

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ............................................................. 31

*Hodes v. Van's Int'l Foods,*
    No. CV 09-01530 RGK (FFMx),
    2009 WL 2424214 (C.D. Cal. July 23, 2009) .................................... 38

*Hoey v. Sony Elecs. Inc.,*
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ...................................... 36, 42

*In re BP P.L.C. Sec. Litig.,*
    Civil Action No. 4:10-md-2185,
    2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .................................... 30

*In re Deepwater Horizon,*
    739 F.3d 790 (5th Cir. 2014) ............................................................. 27

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ....................................................................... 38

*In re Toyota Motor Corp. Hybrid Marketing,*
    *Sales Practices and Prods. Liab. Litig.,*
    288 F.R.D. 445 (C.D. Cal. 2010) ......................................... 34, 39, 40, 44

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
    *Sales Practices, & Prods. Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................ 39

*In re Vioxx Class Cases,*
    180 Cal. App. 4th 116 (2009) ............................................................ 46

*J.H. Cohn & Co. v. Am. Appraisal Assocs.,*
    628 F.2d 994 (7th Cir. 1980) ............................................................. 31

*Johnson v. Kansas City S. Ry. Co.*,
   208 F. App'x 292 (5th Cir. 2006) ................................................................. 32

*Kaldenback v. Mut. of Omaha Life Ins. Co.*,
   178 Cal. App. 4th 830 (2009) ............................................................... 35, 38

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................... 45

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) .................................................................... 38

*Madison v. Chalmette Ref., LLC*,
   637 F.3d 551 (5th Cir. 2011) ................................................................... 44

*Martin v. Home Depot U.S.A., Inc.*,
   225 F.R.D. 198 (W.D. Tex. 2004) ............................................................. 32

*McManus v. Fleetwood Enters., Inc.*,
   320 F.3d 545 (5th 2003) ............................................................... 25, 26, 32

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) ................................................................... 42

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ................................................................... 30

*Ordonez Orosco v. Napolitano*,
   598 F.3d 222 (5th Cir. 2010) ................................................................... 32

*Pineda v. Bank of Am.*,
   50 Cal. 4th 1389 (2010) ........................................................................... 44

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ................................................................... 36

*Robertson v. Fleetwood Travel Trailers, Inc.*,
   144 Cal. App. 4th 785 (2006) ................................................................... 32

*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*,
   319 F.3d 205 (5th Cir. 2003) ................................................................... 33

*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965) ................................................................................. 36

*Spence v. Glock,*
   227 F.3d 308 (5th Cir. 2000) ...................................................... 26

*Sprague v. Gen. Motors Corp.,*
   133 F.3d 388 (6th Cir. 1998) ...................................................... 29

*Stirman v. Exxon Corp.,*
   280 F.3d 554 (5th Cir. 2002) ...................................................... 29

*Tait v. BSH Home Appliances Corp.,*
   289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 42

*Taliaferro v. Samsung Telecomms. Am., LLC,*
   Civil Action No. 3:11-CV-1119-D, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012) .......... 34

*Thomas v. Costco Wholesale Corp.,*
   Case No. 5:12-CV-02908-EJD, 2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) ............. 35

*Tietsworth v. Sears,*
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................ 43

*Unger v. Amedisys Inc.,*
   401 F.3d 316 (5th Cir. 2005) ...................................................... 26

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S.Ct. 2541 (2011) ..................................................... 25, 27, 29, 30

*Wilson v. Hewlett-Packard Co.,*
   688 F.3d 1136 (9th Cir. 2012) ................................................... 36

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) ................................................... 41

*Zachery v. Texaco Exploration & Prod., Inc.,*
   185 F.R.D. 230 (W.D. Tex. 1999) .............................................. 31

## **Other Authorities**

Fed. R. Civ. P. 23.......................................................... 29, 30, 33, 46, 47

Cal. Bus. & Prof. Code § 17200 ................................................ 38

Cal. Bus. & Prof. Code § 17204 ................................................ 34

Cal. Civ. Code § 1780.......................................................... 34

Cal. Civ. Code § 1791 ................................................................................................................. 43

Cal. Civ. Code § 1792 ................................................................................................................. 42

# I.      <u>INTRODUCTION</u>

Plaintiffs' brief presents a highly misleading description of Samsung's release of its Galaxy S smartphones and Samsung's effort to address a specific power-related issue that arose in a small number of the AT&T Captivate model of that device. As explained in detail below, after the Captivate was released by AT&T in July 2010, a small number were returned to AT&T because they would power-off when they went into sleep mode, requiring users to remove and reinsert the battery to restart the device. After being notified of this issue by AT&T, Samsung, with the help of one its parts suppliers, Maxim, quickly identified a hardware-related issue that had the potential to cause the Captivate to power off when in sleep mode. Samsung corrected the hardware issue on its assembly line and repaired all Captivates that were returned, regardless of whether the device had ever manifested the sleep mode problem. As a result, as confirmed by AT&T, the already low overall return rate for the Captivate fell dramatically.

Plaintiffs – despite never having owned the Captivate – nevertheless try to capitalize on the Captivate's minor issue by arguing that all models of the Galaxy S smartphone suffered from a "common defect" purportedly identified by Maxim when it helped Samsung resolve the sleep mode issue on the Captivate. Plaintiffs go on to argue that all possible power-related failure modes for all four models of the Galaxy S – not just the Captivate's sleep mode issue – were caused by this "common defect." But Plaintiffs' proof for this contention is woefully inadequate. Plaintiffs' expert report was written by an electrical engineer and radio scientist, W. Ross Stone, who, until his involvement in this case, had never before performed a failure analysis of any type of smartphone. As explained below, and in Samsung's contemporaneously-filed motion to exclude Stone's expert opinions, Stone is not qualified to offer opinions about the design and operation of smartphones; Stone performed no independent testing of any model of the Galaxy S to support his conclusions; and Stone's broad conclusions, which are based entirely on his

review of Maxim's work on the Captivate and a few schematics for the Galaxy S, are patently irrelevant and unreliable.

There are several reasons why the Court should deny class certification:

- **No commonality under Rule 23(a)(2).** Stone's opinion that all Galaxy S devices suffered from a "common defect" is inadmissible under Federal Rule of Evidence 702 and *Daubert*, and therefore provides no support for a commonality finding. Further, because each model of the Galaxy S device has significant differences in design and layout and because there are multiple possible reasons why a Galaxy S device may have experienced a power-related issue, the reason for any particular device's power-related failure is inherently an individualized inquiry, not a common issue.

- **No typicality or adequacy under Rule 23(a)(3)-(4).** No Plaintiff purchased the Captivate sold by AT&T, so no Plaintiff has any claim related to the specific device that is the focus of Plaintiffs' brief. Moreover, Samsung has several unique factual and legal defenses to each Plaintiff's claims which render Plaintiffs' claims atypical of the class and Plaintiffs inadequate class representatives.

- **No predominance under Rule 23(b)(3).** Common issues do not predominate because each class claim pleaded by Plaintiffs requires individualized proof of actual injury. Plaintiffs' UCL and CLRA claims are not capable of class treatment because those claims require individualized proof of causation and actual reliance. Similarly, Plaintiffs' warranty-based claims are not capable of class treatment because those claims require individualized proof of compliance with the Samsung limited warranty's contractual precondition, breach, and causation. Finally, common issues do not predominate because the determination of class members' damages would require an individual inquiry.

- **No superiority under Rule 23(b)(3).** In their brief, Plaintiffs have provided no plan for trying this case as a class action nor for dealing with the many individual inquiries required by the law and the facts. Accordingly, Plaintiffs have not shown that this case is manageable as a class action.

For these reasons, and for the additional reasons set out below, certification should be denied.

## II.     FACTUAL BACKGROUND[1]

Plaintiffs' brief makes no effort to detail the facts surrounding each class representative's specific experience with his Galaxy S device. Because these facts are relevant to the class action inquiries required by Rule 23, Samsung will start there.

### A.     No Plaintiff Purchased the Captivate Device Sold By AT&T.

#### 1.     *Brian Newbold purchased and used the Sprint Epic 4G.*

Newbold purchased two different models of the Galaxy S from two different wireless carriers. He first purchased the T-Mobile version called the Vibrant. App. 25 (Newbold Dep. at 14:23-15:13).  While Newbold said the T-Mobile Vibrant was a good device, he replaced it with Sprint's model of the Galaxy S device, the Epic 4G, in August 2010 from a Radio Shack. App. 25; 50-51 (*id*. at 14:23-16:19; Newbold Dep. Ex. 9). Newbold purchased the Epic 4G because he liked its slide out keyboard. App. 25 (*id*. at 14:7-16:9).

Newbold used his Epic 4G for approximately a year and a half. App. 25 (*id*. at 17:10-15). Newbold freely admitted at his deposition that his Epic 4G was fully operational the vast majority of the time he owned it. App. 47 (*id*. at 104:6-105:2). Newbold rooted his Epic 4G during the time period he owned it.[2] App. 27 (*id*. at 22:18-23:11).

Newbold nevertheless claimed that he had intermittent problems with his Epic 4G, including GPS crashes, delayed availability of software updates, slowdowns, freezing, rebooting, malfunctioning speakers, among other complaints. App. 52-61; 30-31 (Newbold Dep. Exs. 10-11; Newbold Dep. at 20:19-21:21, 33:6-34:13). In his mind, Newbold's main complaint was that

---

[1]      Citations in this brief are to Samsung's Appendix in Support of Its Opposition to Plaintiffs' Motion for Class Certification ("App."). Samsung also cites Plaintiffs' Appendix ("Ps. App.") and Plaintiffs' Brief ("Ps.' Brief").

[2]      Rooting is the process where a consumer replaces the standard software on the device with unauthorized software developed by a third party. App. 222-223 (Sheppard Dep. at 145:15-146:21). Because the unauthorized software has not been tested, it can lead to performance issues with the device. *Id.* Rooting voids Samsung's limited warranty. App. 1-2 (Samsung Limited Warranty) (excluding warranty coverage for software problems introduced into the device and other acts not the fault of Samsung).

his device would occasionally reboot itself while it was in sleep mode, as if he had turned the phone off and on when, in fact, he had not done so. App. 29-31 (*id.* at 32:11-24, 33:6-34:13, 36:1-38:16). He testified that the phone would reboot itself from once a day to as many as one or two times an hour while he owned it.[3] App. 31 (*id.* at 38:17-39:10). Newbold also testified that his Epic 4G would crash and/or freeze occasionally while he was using the phone. App. 32-33 (*id.* at 43:13-44:10, 45:17-46:12). Newbold stated it occurred "at least once a week" but the problem was not consistent in frequency. *Id.* Newbold testified that the freezing problem was not why he was suing Samsung, but that the freezing of his phone was a "contributing factor" for his lawsuit. App. 33 (*id.* at 46:17-47:17). In his view, the "actionable item" was his phone's random rebooting while in sleep mode.[4] *Id.*

Newbold was not shy about complaining to Sprint, which he did on numerous occasions. App. 36-39, 52-61 (*id.* at 61:7-73:1; Newbold Dep. Exs. 10-11). Although he has now sued Samsung (not Sprint) for breach of warranty, Newbold admitted that he never read the Samsung limited warranty; he never had any written communications with Samsung about his device's issues; and he never sent the phone to Samsung for repair or replacement pursuant to the warranty. App. 39; 42 (*id.* at 73:12-23; 82:3-85:16).

Newbold does recall that he made a phone call to Samsung about his Epic 4G, but Newbold could not recall any details of his conversation with Samsung, including when he made the call, what number he dialed, or even which problems he raised with Samsung on the call. App. 40-45 (*id.* at 75:19-78:24). While Newbold claims that Samsung's representative told him to seek help from Sprint, Newbold admits that he never gave either Samsung or Sprint the opportunity to repair or replace the phone. App. 42-43 (*id.* at 82:3-85:16, 88:14-19). Instead,

---

[3]     Newbold admitted that the phone would return to normal after the one minute reboot process completed itself. App. 30-31 (Newbold Dep. at 37:14-38:16, 40:1-41:16).

[4]     In his declaration, however, Newbold complains about several different issues with his device.  Ps. App. 1266-67 (Newbold Dec. ¶ 6).

Newbold demanded that Sprint provide him an entirely different model of phone altogether, which Sprint refused to do. App. 43 (*id.* at 88:20-89:15).

Newbold became a class representative in this lawsuit after he responded to a Doyle Lowther banner ad on an online Sprint complaint forum. App. 34 (*id.* at 52:14-53:23). When asked, Newbold could not identify either the amount of money or the type of equitable relief he was seeking in the lawsuit. App. 45 (*id.* at 96:10-18).

### 2.     *Shane Galitski also purchased the Sprint Epic 4G.*

Shane Galitski purchased his Epic 4G, from a Sprint store in Costa Mesa, California in October 2010 because he liked its slide-out keyboard. App. 88, 104 (Galitski Dep. at 18:25-21:16; Galitski Dep. Ex. 16). Galitski explained that he is suing Samsung because his Epic 4G had a defect that caused the phone to reboot and/or freeze.[5] App. 88 (*id.* at 18:6-23).

Galitski testified that his Epic 4G would randomly reboot itself approximately 2 to 3 times per month while he owned it, during which time he could not use the phone. App. 90-91 (*id.* at 27:25-30:13). Galitski described the rebooting as "annoying" to him. App. 91 (*id.* at 30:15-31:22). Galitski also had a freezing problem with his phone which occurred while he was attempting to use the device, but Galitski's device froze only a couple times per month. App. 91 (*id.* at 32:7-33:4). Galitski resolved the freezing problem by removing and reinserting the battery. *Id.* All told, Galitski's Epic 4G rebooted and/or froze a total of about four times per month. App. 91-92 (*id.* at 33:24-34:9)

Like Newbold, Galitski admitted that his Epic 4G functioned properly the vast majority of the time he owned it. App. 99 (*id.* at 63:4-64:6). As a result of reboots and/or freezes, Galitski was unable to use his Epic 4G for (at most) four or five minutes per month during the year he

---

[5]     Galitski's declaration is purposefully vague about the issues Galitski had with his device. Ps. App. 1263-64 (¶ 5). But it is clear from the declaration that Galitski is not complaining about his phone's failure to wake from sleep mode. *Id.*

used the phone. *Id.* Thus, by Galitski's own admission, Galitski's phone was non-functional for a total of about one hour during the entire year that he used it. *Id.* Also like Newbold, Galitski could not explain how much he had been damaged as a result of the four to five minutes per month he was unable to use the device. App. 99 (*id*. at 63:4-64:21).  As did Newbold, Galitski rooted his phone. App. 98 (*id*. at 60:6-61:24).

Galitski admitted that he never read Samsung limited warranty; and he does not recall ever contacting Samsung about the issues with his device. App. 93-94( *id*. at 38:12-39:9, 41:4-42:19). Galitski contacted Sprint instead, but mainly about other, unrelated issues with the device. App. 94-97; 102-103 (*id*. at 45:14-48:20, 50:21-54:25; Galitski Dep. Ex. 15). Galitski likewise never sent his Epic 4G to Samsung for repair or replacement. App. 93 (*id*. at 39:11-15).

Galitski became a class representative after he responded to a Doyle Lowther internet questionnaire and was contacted by a lawyer working for the firm. App. 86-87 (*id*. at 11:10-14:17). Galitski did not consult with any other law firms before signing up with Doyle Lowther. *Id.*

### 3.      *Richard Taliaferro purchased the Verizon Fascinate.*

For his part, Richard Taliaferro bought the Verizon model of the Galaxy S, the Fascinate, from a Fry's store in Roseville, California, in November 2010. App. 129-130; 148-152 (Taliaferro Dep. at 21:24-22:25; Taliaferro Dep. Exs. 3-4). He bought the phone at the suggestion of the Fry's salesperson and because he liked its screen size and Google Maps GPS function. App. 130-131 (*id*. at 25:10-27:4). Taliaferro used his Fascinate for about a year. App. 133 (*id*. at 34:19-22). Taliaferro identified three problems with his Fascinate. First, the device would freeze while he was using the Google Maps navigation application; and he would have to remove and reinsert the battery to get the device to function properly. App. 133 (*id*. at 35:5-37:25). This problem increased in frequency the longer Taliaferro used the phone, from once a

day to multiple times per day. App. 133 (*id*. at 37:20-25). Second, his phone would lose signal and drop calls while he was using it. App. 134-135 (*id*. at 38:4-20, 44:23-45:23). Third, Taliaferro complained that his phone would fail to wake from sleep mode, which problem manifested itself increasingly as he owned the device.[6] App. 135-136 (*id*. at 45:25-47:21).

Taliaferro explained that his issues with the Fascinate began to manifest themselves within a month of his purchase of the phone. App. 137 (*id*. at 53:6-9). Taliaferro contacted Verizon; and Verizon provided him with a replacement phone within six to nine months of his original purchase. App. 137-138 (*id*. at 53:10-54:17, 64:3-12). Taliaferro admitted that he never contacted Samsung. App. 141 (*id*. at 68:19-21). Taliaferro also admitted that he never sent his phone to Samsung for warranty service. App. 142 (*id*. at 70:11-24).

Taliaferro signed up with Doyle Lowther after he responded to an internet banner ad for the firm. App. 128 (*id*. at 15:12-16:7). At his deposition, Taliaferro could not identify how much monetary compensation he was seeking by his lawsuit. App. 143 (*id*. at 74:3-75:17).

### 4.     *Each Plaintiff's device came with a one-year limited warranty.*

While it is undisputed that no Plaintiff sent his Galaxy S device to Samsung for repair or replacement under the Samsung limited warranty, that warranty provides that Samsung will repair or replace any component part of the devices affected by defects in material and workmanship under normal use and service for one year from the date of purchase. App. 2. To obtain warranty service, purchasers were required to return their devices to an authorized phone service facility. App. 3. As relevant here, the limited warranty was conditioned on normal use of the device. The warranty excluded from coverage defects or damage resulting from accident, misuse, and exposure to moisture or dampness, defects from improper testing, operation, maintenance or installation of the device, defects caused by viruses or other software problems

---

[6]     In his declaration, Taliaferro focuses his discussion on his device's alleged failure to wake from sleep mode. Ps. App. 1269-70 (¶ 6).

introduced into the device, and defects or damage not the fault of Samsung, among many other exclusions. App. 2 ("**What is Not Covered?**")

> **5.** **Samsung's engineers tested Plaintiffs' phones and found that Taliaferro's phone had significant liquid damage.**

Plaintiffs did not engage any expert to test Plaintiffs' phones to determine the root cause of any of the problems they have identified, to determine whether the problems could even be replicated, or to exclude other possible causes. Similarly, Plaintiffs did not engage any expert to test Plaintiffs' phones to determine whether the so-called "common hardware defect" existed in the device or caused any of the problems identified by Plaintiffs.

Samsung inspected and tested each Plaintiff's phone from August 26 through August 29, 2014; App. 662-665 (Yerramaddu Dec. ¶ 2). The testing included using the phones as a normal user, standby tests (including overnight standby tests), power consumption and voltage tests, function tests, and inspections of the outside and inside of the devices, among other tests. App. 663-64 (*id.* at ¶¶ 5-13). For the most part, Plaintiffs' devices functioned normally during the testing and were able to send and receive calls and texts, wake, browse the internet, take pictures and videos and launch applications. *Id.* Only one of the devices, the Fascinate belonging to Taliaferro, exhibited any of the problems identified by Plaintiffs, when the device froze during overnight standby testing. App. 663-64 (*id.* at ¶¶ 8, 12). Upon inspection of the interior of Taliaferro's phone, however, Samsung's engineer identified significant liquid damage on the device's printed circuit board, chipset, and connectors.[7] App. 664 (*id.* at ¶ 10). Neither Newbold's nor Galitski's phone exhibited any symptoms of freezing or rebooting during the testing. App. 663-64 (*id.* at ¶¶ 3-13).

---

[7]      Samsung's Limited Warranty does not cover defects or damage resulting from exposure to moisture or dampness. App. 2.

**B.      Samsung and AT&T Tested the Captivate Device Extensively Before The Device Was Released Into the U.S. Market.**

While none of the Plaintiffs bought the AT&T Captivate, Plaintiffs rely almost entirely on evidence related to the Captivate to support their bid for class certification. Plaintiffs argue that Samsung knew that the Captivate had a power-off defect before the phone was released in the United States market in July 2010 and concealed that defect from AT&T and its customers.

Samsung denies Plaintiffs' allegations. Samsung did not engage in any deceptive conduct with respect to the Captivate or any other model of the Galaxy S; and there is no evidence that Samsung fabricated test results or engaged in any other wrongful or deceptive conduct with respect to any model of the device. In fact, the Captivate was rigorously tested by both Samsung and AT&T before it was released to the market; and the device and its software continued to be tested and improved even after it was released for sale in the United States.

*1.      AT&T's lab tested the Captivate before certifying it for release.*

## REDACTED

REDACTED

REDACTED

2.     *After AT&T granted the Captivate technical acceptance, AT&T and Samsung continued to test the device before release.*

REDACTED

---

9

    *3.*      *After release, AT&T used its Early Warning Process to identify early return issues for the Captivate.*

REDACTED

    *4.*      *AT&T identified failure to wake from sleep mode as an early return issue for a small number of the Captivates sold.*

REDACTED

---

[10]

REDACTED

[11]

12

# REDACTED

5.      *Samsung worked with its part supplier Maxim to resolve the failure to wake from sleep mode issue exhibited by the Captivate.*

# REDACTED

_____

# REDACTED

6.     ***Based on Maxim's recommendations, Samsung resolved the sleep mode issue on the Captivate by making capacitor changes on the device and by repairing returned devices.***

REDACTED

REDACTED

**C.** **Samsung Did Not Conceal a "Severity 1 Defect" from AT&T.**

REDACTED

**D.** **Maxim Did Not Identify A Common Hardware Defect in All Galaxy S Models.**

Plaintiffs next argue that Samsung's part supplier Maxim, in connection with helping Samsung resolve the Captivate issue, identified common hardware defects in all models of the Galaxy S, which Samsung failed to fix. Ps. Brief at 9-12. To support this argument, Plaintiffs cite the report of their expert, W. Ross Stone, who plans to offer the opinion that Maxim's analysis of the sleep mode issue on the Captivate shows that there were common hardware defects in all four

REDACTED

models of the Galaxy S phone that caused all models of the device to "randomly freeze, shut down, reboot, miss calls, miss texts, and/or power off while in standby mode." Ps. App. 1215.

Importantly, however, Stone is not offering the opinion that all Galaxy S devices actually manifested any of the many power-related issues identified in his report. App. 350 (Stone Dep. at 32:14-17) ("All of the members of the class, those phones have the defect. They may not have manifested the symptoms I identified here, but they all have the defect."); *see also* App. 350 (*id.* at 31:18-33:1). In fact, Stone admits that many Galaxy S devices sold to members of the class may have never suffered any of the symptoms identified in his report; and Stone was unable to provide any estimate of the failure rate for any model of the Galaxy S device. App. 374-375 (*id.* at 129:23-131:8).

### 1.    *Stone is not qualified to offer his "common hardware defect" opinions.*

While Stone's admission that not all Galaxy S devices manifested a power-related failure is helpful to show why this case should not proceed as a class action, Stone is not qualified to offer even the limited opinions contained in his report.[14] Fed. R. Evid. 702(a). As Stone's deposition testimony and resume show:

- The vast majority of Stone's career has been devoted to radio science, antennas, and propagation. Ps. App. 1214-15 (Stone Report at 1-2).

- Stone had never conducted any kind of failure analysis for any type of smartphone until he was hired for this case. App. 347 (Stone Dep. at 21:7-11).

- Even assuming he had wanted to perform any of his own tests, which he never did here, Stone does not have any type of lab capable of testing smartphones. App. 348 (*id.* at 22:9-19).

- Nothing in Stone's education or work experience indicates any relevant background in the analysis of smartphone circuitry or design or the testing of smartphones. Ps. App. 1214-15 (Stone Report at 1-2).

---

[14]    Contemporaneous with this filing, Samsung has moved to exclude Stone's opinions pursuant to *Daubert* and Federal Rule of Evidence 702.

- Stone has never designed smartphone circuitry, the printed circuit boards (PCB) used in smartphones, or the power management integrated circuits (PMIC) used in smartphones. App. 352 (Stone Dep. at 39:10-14; 40:18-22; 40:23-41:2).

- Stone has never published any papers or articles about the design or testing of smartphone circuitry. App. 354 (*id*. at 47:19-48:5).

- Stone himself does not even own a smartphone; and he has no personal or professional experience handling any model of the Galaxy S smartphone. App. 347; 348-49 (*id*. at 18:21-23; 25:19-26:8). Indeed, although Stone intends to testify about several purported power-related issues with the device, Stone was incapable of explaining how to turn on the Galaxy S device. App. 357 (*id*. at 60:24-61:11).

In summary, Stone is not qualified by knowledge, skill, experience, training, or education to review and critique Maxim's testing of the Captivate, or to offer the broad opinion that Maxim's review of the Captivate shows that **all** four models of the Galaxy S smartphone suffered from a common hardware defect that caused **all** of the power-related and other issues identified in his report. *See* Ps. App. 1214-15; 1225-35.

### 2. Stone's opinions are not based on reliable data or any scientific investigation.

Even assuming that Stone's background in "antennas and propagation" somehow qualifies him to testify about smartphone engineering, Stone's opinions are not based on sufficient facts or data; his opinions are not the product of reliable principles or methods; nor were those principles and methods reliably applied to the facts of the case. Fed. R. Evid. 702(b)-(d). With respect to the facts and data he relied upon in his analysis, Stone admitted that:

- His conclusions are based entirely on his reading and interpretation of Maxim's documents related to the sleep mode issue on the Captivate device and by looking at a few schematics. App. 349 (Stone Dep. at 26:5-12).

- He does not know what specific tests were performed by Maxim and he never reviewed any raw data from any Maxim testing of the Captivate. App. 364-65; 385 (*id*. at 88:9-90:11; 171:20-172:8).

- He has done no independent testing or analysis of any model of the Galaxy S smartphone to determine why a particular device failed. App. 347-49; 363 (Stone Dep. at 21:7-11; 25:19-26:8; 83:10-20). Thus, Stone has no basis to conclude that any other model of the Galaxy S suffered from the same sleep mode issue as the Captivate, much less any other power-related issue identified in his report.

- He never looked at any of the specific devices owned by the Plaintiffs, and was unaware of the specific issues that Plaintiffs complained about. App. 349; 351 (*id*. at 26:13-24; 34:11-35:23). Accordingly, Stone has no basis to opine that any Plaintiff's device suffered from the hardware defect he identified in his report or failed as a result of that alleged defect.

- He has not analyzed any other possible causes for the issues identified in his report, such as software-related causes, applications loaded on the devices, or rooting, among others. App. 359 (*id*. at 66:25-67:16).

- He relies on Maxim's testing to justify his conclusion that *all* power-related issues in all four models of the Galaxy S device were caused by common hardware defects even though Maxim itself did not look at random rebooting, freezing, or missed calls and texts in its analysis of the Captivate, among other power-related issues. App. 361; 363 (*id*. at 76:18-20; 84:8-85:15).

Accordingly, Stone's opinions are not the product of reliable principles or methods but are little more than guesswork unsupported by the scientific method. Fed. R. Evid. 702(b)-(d).

### 3.  *Stone's common hardware defect opinions are unreliable.*

Finally, Stone's ultimate conclusions that there were three likely "Causes" of the hardware defect in the Galaxy S device are themselves unreliable. Ps. App. 1218-19. Stone's Cause 1 – Samsung's alleged improper direct connection of the battery to the PMIC on the Captivate – is not supported by the documents that Stone relies upon, much less by any independent verification by Stone. At his deposition, Stone was unable to point out anywhere in Maxim's data sheet where Maxim stated that Samsung was required to place input capacitors between the battery and the PMIC on the Captivate. App. 370 (Stone Dep. at 113:5-14). Indeed, Stone admitted that he had never even reviewed a full copy of the Maxim data sheet in reaching his conclusion that Samsung failed to follow Maxim's recommendations. App. 369 (*id*. at 109:10-13). Moreover, Stone admitted that Maxim's recommendations to Samsung to fix the sleep mode issue on the Captivate did not involve the addition of input capacitors between the battery and the PMIC, so it is impossible for Stone to conclude that Samsung was somehow

required to revise the PCB layout on all Galaxy S models to resolve all possible power-related issues. App. 374; 233-244 (*id*. at 126:1-17; Sheppard Dep. Ex. 24).

Stone also admitted during his deposition that Cause 2 in his report – Samsung's use of tantalum capacitors in the Captivate – was only an issue with respect to the Captivate device because no other model of the Galaxy S used tantalum capacitors.[15] App. 371 (Stone Dep. at 115:7-117:8). Accordingly, none of Plaintiffs' devices suffered from Cause 2.

As for Cause 3, which Stone described as misrouting of the printed circuit board, Stone admitted both at his deposition and in his report that he was unable to confirm whether Cause 3 actually existed in the Verizon, Sprint or T-Mobile models of the Galaxy S device. App. 375 (*id*. at 131:16-132:5); Ps. App. 1222 ("Direct confirmation of the presence of Cause 3 in the Fascinate, Epic, and Vibrant phones could thus not be made at this time.").

Accordingly, Stone's conclusion that all four models of the Galaxy S device suffered from three hardware defects that caused the wide variety of power-related issues is unreliable and should be rejected by the Court.

**E.      Samsung's Expert Joe McAlexander Explains the Multiple Flaws in Stone's Analysis.**

Samsung's own electrical engineering expert Joe McAlexander points out the many flaws in Stone's analysis. App. 556-558 (McAlexander Dec. ¶ 156). Most importantly, McAlexander explains that Stone has improperly lumped all power-related issues into a single "power-off" category with no justification for doing so because there may be any number of causes (or combination of causes) for a device to suffer from a given issue.[16] App. 505-509; 517 (*id*. ¶¶ 59-62, 68, 78). In fact, as McAlexander points out, the power-related "Customer Trouble Indicator"

---

[15]      This is why Maxim recommended replacing one of the tantalum capacitors on the Captivate with a ceramic capacitor to resolve the Captivate sleep mode issue. App. 233-244 (Sheppard Dep. Ex. 24).

[16]      The possible causes for power-related issues not considered by Stone include: (1) hardware failure of a particular device's screen; (2) software issues; (3) firmware issues; (4) rooting; (5) liquid damage; or (6) other mechanical damage to the device. App. 517 (McAlexander Dec. ¶ 78).

used by the wireless carriers and Samsung (and relied upon heavily by Stone and Plaintiffs) actually encompasses a number of different possible causes for power-related defects. App. 508-511 (*id.* ¶¶ 68-70). Accordingly, there is no justification for Stone's broad conclusion that all power-related defects were caused by any alleged common hardware defect, particularly without an independent verification by Stone to support that conclusion.

With respect to Stone's reliance on Maxim's documents, McAlexander points out the undisputed fact that Maxim was asked to look solely at the failure to wake from sleep mode issue on the Captivate, not the other power-related issues identified in Stone's report or at any other model of the Galaxy S device. App. 510-520 (*id.* ¶¶ 70-86). McAlexander then explains why the capacitor changes recommended to Samsung by Maxim fixed the sleep mode issue on the Captivate, as shown by Maxim's own analysis and by Samsung's internal documents reflecting pre- and post-corrective action return rates. App. 509-511; 526-531 (*id.* ¶¶ 69-70, 100-111).

Finally, McAlexander points out that Stone has not examined the circuit boards for any Galaxy S device in order to justify his broad conclusion that each of those circuit boards was defective. App. 534-546 (*id.* ¶¶ 118-127). If Stone had done so, he would have seen that the circuit board design and layout for each device is unique.[17] App. 536-543 (*id.* ¶¶ 123-127). Because the different models of the device are not the same, Stone has no reasonable basis to extrapolate the result of Maxim's analysis of the Captivate to the devices purchased by Plaintiffs. Similarly, McAlexander explains that Stone has engaged in no testing or examination to show that any particular Plaintiff's device suffered from the defect(s) identified in his report. App. 556-558 (*id.* ¶ 156). As McAlexander concludes, Stone's opinions required essentially no expertise because Stone engaged in no investigation to support any of his conclusions. *Id.*

---

[17]     When asked at his deposition to identify specific models of the Galaxy S device from photographs of the printed circuit boards of the devices, Stone was unwilling and unable to do so. App. 383-384; 472-475 (Stone Dep. at 164:6-168:17; Stone Dep. Exs. 112-115).

**F.      Samsung Did Not Confirm the Existence of Any Common Class-Wide Defect or Refuse to Repair the Captivate.**

REDACTED

G.     **Plaintiffs Misrepresent Return Rate Statistics and Other Data for the Various Models of the Galaxy S.**

In their effort to bolster their commonality evidence, Plaintiffs also resort to misleading and incomplete citations of device-related statistics and return and exchange rates.[18] But Plaintiffs make no effort to connect any power-related issues or returns or exchanges to the specific sleep mode issue identified on the Captivate or to any of the "Causes" identified in Stone's report.

1.     *Captivate (AT&T).*

REDACTED

---

[18]     In its Memorandum and Order issued in *Amy Rothbaum v. Samsung Telecommunications America, LLC,* C.A. No. 11-10509-MLW, the Massachusetts district court rejected similar mischaracterizations of return rates for the Galaxy S device. App. 627-628. The district court also rejected a similar effort to conflate all power-related returns with the sleep mode issue identified in the Captivate. App. 625-26.

REDACTED

2.      *Fascinate (Verizon).*

REDACTED

REDACTED

3.      *Epic 4G (Sprint).*

REDACTED

4.      *Vibrant (T-Mobile).*

REDACTED

_____

# REDACTED

### III.    <u>ARGUMENT AND AUTHORITIES</u>

**A.    Legal Standard.**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011).  The purpose of class actions is to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion."  *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). "Under Rule 23, plaintiffs must first define the class with specificity and show they are members of the class." *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th 2003). Plaintiffs then must establish the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Here, Plaintiffs seek certification of a Rule 23(b)(3) class, which requires additional showings of predominance and superiority, *i.e.*, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Although the Court has broad discretion to certify a class, it must do so within the bounds of Rule 23. *Spence v. Glock*, 227 F.3d 308, 310 (5th Cir. 2000). Considering the "important due process concerns of both plaintiffs and defendants inherent in the certification decision," the district court must "conduct a rigorous analysis of Rule 23 prerequisites" before certifying a class. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320-21 (5th Cir. 2005). The Court must "go beyond the pleadings to determine whether the requirements of Rule 23 have been met: 'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (citation omitted). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Court must also consider "how a trial on the merits would be conducted" if the class were certified, *Cole*, 484 F.3d at 740, examining both the parties' claims and evidence, *Unger*, 401 F.3d at 321. "The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification." *Id.* Plaintiffs—as the parties seeking certification—have the burden of establishing that the requirements of Rule 23 have been met. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003); *McManus*, 320 F.3d at 548.

## B.    The Court Should Deny Class Certification.

In their brief, Plaintiffs ask the Court to certify a class of all California residents who purchased a Galaxy S Class Phone (AT&T Captivate, T-Mobile Vibrant, Sprint Epic 4G, and Verizon Fascinate) from June 1, 2010, through the present.[20] Ps. Brief at 3. Plaintiffs' request for certification is premised on Plaintiffs' allegation that Plaintiffs and class members all purchased defective "Class Phones" based on the purported expert opinions provided by Stone. *Id.* at 29-30.

While Rule 23(a)'s numerosity requirement may presumably be met here, Plaintiffs cannot satisfy the commonality, typicality, and adequacy requirements, as follows:

---

[20]     Plaintiffs' class definition excludes defendant, its officers and directors, their family members and other affiliated parties.

### 1.       *Plaintiffs fail to satisfy the commonality requirement.*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."[21] As

the Supreme Court noted in *Dukes*, "Rule 23 does not set forth a mere pleading standard. A party

seeking class certification must affirmatively demonstrate his compliance with the Rule—that is,

he must be prepared to prove that there are *in fact* sufficiently numerous parties, common

questions of law or fact, etc." 131 S.Ct. at 2551. As the Supreme Court also noted, virtually any

competently-crafted class action complaint is capable of raising "common questions." *Id.*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the

same injury,'" which "does not mean merely that they have all suffered a violation of the same

provision of law." *Id.* Instead, the "claims must depend on a common contention" and "[t]hat

contention . . . must be of such a nature that it is capable of classwide resolution – which means

that the determination of its truth or falsity will resolve an issue that is central to the validity of

each one of the claims in one stroke." *Id.*; *see also Ahmad v. Old Republic Nat'l Title Ins. Co.*,

690 F.3d 698, 704 (5th Cir. 2012).

There are several reasons why the commonality requirement is not satisfied here. ***First***,

as explained in Samsung's Motion to Exclude, Stone's common defect opinions do not meet the

standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Because Stone's opinions are not admissible, they

provide no support for a commonality finding in this case. *See Dukes*, 131 S.Ct. at 2553-54

---

[21]        Many of Plaintiffs' legal arguments about commonality rest on "sound bites" from *In re Deepwater
Horizon*, 739 F.3d 790 (5th Cir. 2014). *See* Ps. Brief at 28-29. Two features of that lengthy opinion make it largely
inapplicable to the specific issues presented by this case. First, *Deepwater Horizon* involved a settlement class,
where the parties agreed **_not_** to probe the purported merits of class claims. 739 F.3d at 807 ("Indeed, it would make
no practical sense for a court to require evidence of a party's claims when the parties themselves seek settlement
under Rule 23(e). Logically, requiring absent class members to prove their claims prior to settlement under Rule
23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven.")
Second, the actual holding of *Deepwater Horizon* addressed a very different legal argument – namely, whether
*Dukes* requires a common class contention that "relate[s] specifically to the damages component of the class
members' claims." *Id.* at 810. In rejecting that argument, the Fifth Circuit did not in any way lessen the commonality
burden in the context of a contested class certification, such as this one.

("The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. . . . We doubt that is so[.]").

*Second*, even if the Court considers Stone's opinions, Plaintiffs' factual contention that all devices suffered from a common hardware defect that caused the various symptoms identified by Stone cannot be resolved on a class-wide basis. Assuming that a particular phone suffered from a power-related issue at all, it is undisputed that those issues can be caused by a number of possible causes, from unrelated hardware failures, firmware failures, software failures, rooting, or customer misuse. App. 517 (McAlexander Dec. ¶ 78). Therefore, to determine why any particular device suffered a power-related problem (if any) would require individual examination of that device, as reflected by Samsung's testing of Plaintiffs' own phones. App. 662-665.

Accordingly, the reason why a particular device suffered any specific power-related issue cannot be resolved on a class-wide basis in one stroke but would require an individual inquiry, as Judge Carney already found in his order denying certification in the copycat class action filed in California, *Anderson v. Samsung Telecommunications, LLC*, Case No. SA-CV-13-01028-CJC, pending in the Central District of California, where plaintiffs made virtually identical claims to the claims made in this case. App. 607-608 (Order at 9-10) ("A Phone experiencing a power problem can have many different root causes, including 'problems with software, third party applications, hardware, batteries, chargers, network connection issues, rooting and damage caused by consumer misuse.'").

*Third*, Plaintiffs' factual contention that all Galaxy S devices suffered from a common defect is itself disproved by the Samsung documents cited by Plaintiffs in their brief. Samsung's return and exchange rate statistics show that between 1% and 3% of all Galaxy S models were returned or exchanged for all possible reasons. *See supra* at 22-25. Those documents also show that Samsung identified several possible causes for any particular device's power-related failure

after the devices were returned, again disproving Plaintiffs' common defect argument. App. 517

(McAlexander Dec. ¶ 78). For that reason, it is impossible to conclude that resolution of

Plaintiffs' common defect-based claims will somehow resolve the claims of all other class

members "in one stroke." *Dukes*, 131 S.Ct. at 2551.

**Finally**, there is no support for Plaintiffs' contention that there are common legal

questions in this case. As explained below in Samsung's discussion of Plaintiffs' failure to

establish the predominance element of Rule 23(b)(3), none of Plaintiffs' claims can be resolved

on a class-wide basis because each claim requires multiple individualized inquiries to establish

the elements of the claim at trial.[22] Accordingly, there are no common legal questions that are

capable of any meaningful class-wide resolution in this case.

### 2.   *Plaintiffs fail to satisfy the typicality and adequacy requirements.*

This Court should also deny class certification because Plaintiffs fail to satisfy the

typicality and adequacy requirements of Rule 23(a). Rule 23(a)(3) allows a class to be

maintained "only if . . . the claims or defenses of the representative parties are typical of the

claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To satisfy this typicality requirement,

representatives must have the same interests and have suffered the same injuries as members of

the proposed class. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977);

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Typicality does not exist when "[a]

named plaintiff who proved his own claim would not necessarily have proved anybody else's

claim." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

For its part, Rule 23(a)(4)'s adequacy requirement allows a class to be maintained "only

if the representative parties will fairly and adequately protect the interests of the class. Fed. R.

---

[22]   Although it is unclear from their brief, Plaintiffs appear to be asking the Court to certify the class on six claims: (1) breach of implied warranty; (2) breach of express warranty; (3) violation of California's Consumer Legal Remedies Act (CLRA); (4) violation of California's Unfair Competition Law (UCL); (5) violation of the Magnusson-Moss Warranty Act; and (6) violation of California's Song-Beverly Act. *See* Ps. Brief at 30-32, 42-44.

Civ. P. 23(a)(4). This issue is usually framed as whether the putative class representatives are willing and able to take an active role in and control the litigation and protect the interests of absent class members. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Further, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999).

In considering typicality, courts recognize that it tends to merge with commonality. *Dukes*, 131 S. Ct. at 2551 n.2. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. "Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Id.*

Importantly, as relevant in this case, "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006); *In re BP P.L.C. Sec. Litig.*, Civil Action No. 4:10-md-2185, 2013 WL 6388408, at *10 (S.D. Tex. Dec. 6, 2013). That is because the "challenge presented by a defense unique to a class representative" is that "the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck*, 457 F.3d at 297; *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980). Accordingly, where unique defenses against a named plaintiff exist, the court must consider the potential danger that the attention to this individual defense might harm the class. *Zachery v. Texaco Exploration & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999); *see also Beck*, 457 F.3d at 300.

Here, there are substantial differences between the claims and defenses of the Plaintiffs and those of the proposed class such that Plaintiffs cannot satisfy the typicality or adequacy requirements for class certification. At the outset, as with Plaintiffs' attempted showing of commonality, Stone's expert opinions provide no support for a typicality finding because Stone conducted no examination of Plaintiffs' Fascinate and Epic 4G devices to confirm that the alleged hardware defects he identified caused their phones to suffer from any power-related issues. Thus, there is no competent evidence before the Court that Plaintiffs' claims are typical of the claims of the proposed class.[23]

Moreover, Plaintiffs cannot satisfy the typicality requirements because no Plaintiff is making any claims related to the Vibrant or Captivate models of the Galaxy S device. Because those models used different printed circuit board layouts and different circuitry from the Epic 4G and the Fascinate, as confirmed by Samsung's expert Joe McAlexander, Plaintiffs' claims related to their particular models cannot be typical of the claims of proposed class members who purchased the Captivate or Vibrant models.[24] App. 536-546 (McAlexander Dec. ¶¶ 122-127).

---

[23]     Even if the Court considers Stone's opinions, the Plaintiffs themselves do not complain about many of the alleged injuries identified by Stone. *See supra* at 3-7. For example, no Plaintiff complains that he missed calls or missed texts on his device. *Id.* Further, neither Galitski nor Newbold complained that his Epic 4G powered-off while in sleep mode; and no particular failure mode could be replicated in either of their devices when those devices were tested by Samsung. *Id.* Moreover, each Plaintiff complained about different problems with their Galaxy S devices that occurred at different intervals. *Id.* Thus, differences among the claims of the Plaintiffs themselves also demonstrate that typicality cannot be met in this case.

[24]     Although Plaintiffs have not proposed any subclasses based on the different device models, it is notable that Plaintiffs would not be members of any such subclasses related to the T-Mobile Vibrant or the AT&T Captivate. This is at least some evidence that Plaintiffs cannot satisfy the typicality requirement. *Cf. Ordonez Orosco v.*

But, more importantly, Samsung has unique factual and legal defenses to Plaintiffs' claims that render their claims atypical of those of the proposed class and render Plaintiffs inadequate class representatives.[25] For example, Samsung has unique defenses to Taliaferro's claims given the undisputed evidence of significant liquid damage to his Fascinate. App. 664 (¶ 10). As for Newbold and Galitski, Samsung has unique defenses to their individual claims due to their rooting of their devices. *See supra* at 3-6. Samsung may also have unique defenses based on the various third party applications installed on the Plaintiffs' devices. App. 62-67; 105-107. Samsung also has unique defenses to each of Newbold's implied and express warranty claims because Newbold never sent his device to Samsung for repair or replacement pursuant to the Samsung limited warranty. *Id.*; *see also Robertson v. Fleetwood Travel Trailers, Inc.*, 144 Cal. App. 4th 785, 798-99 (2006) (requiring presentation of the device to an authorized manufacturer for repair to prove a breach of express warranty claim under the Song-Beverly Act).

Accordingly, Samsung's defenses related to Plaintiffs' individual claims go to the heart of the litigation and will play a significant role at trial and any class-wide trial of this case will invariably be consumed by the individual determinations of these factual and legal defenses. *See Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201 (W.D. Tex. 2004); *see also Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292, 297 (5th Cir. 2006) (typicality was not satisfied where the issues before the court were far too individualized). Thus, Plaintiffs cannot satisfy the typicality or adequacy requirements for class certification.

---

*Napolitano*, 598 F.3d 222, 227 (5th Cir. 2010) (affirming district court's denial of class certification because "[a] plaintiff cannot represent a class of whom he is not a party."); *McManus*, 320 F.3d at 548 ("Under Rule 23, plaintiffs must . . . show they are members of the class.").

[25]     These individual factual and legal defenses also show why Plaintiffs' individual claims against Samsung cannot be common to the claims of the proposed class members.

### 3.   *Plaintiffs fail to satisfy the predominance requirement.*

Plaintiffs also fail to meet their burden to establish that "questions of law or fact common to the members of the class predominate over any questions affecting individual members." Fed. R. Civ. P. 23(b)(3). The demanding Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. To analyze whether a class certification motion meets the predominance requirement, the court "must consider how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). "This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Bell Atl. Corp.,* 339 F.3d at 302 (internal quotation marks omitted). "The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 387 (N.D. Tex. 2009) (citation and internal quotation marks omitted).

Certification under Rule 23(b)(3) "'encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 315-16 (5th Cir.1978) (quoting Rule 23 advisory committee's note (1966)).

### a.   **Because each class claim pleaded by Plaintiffs requires individualized proof of actual injury, common issues do not predominate.**

Plaintiffs cannot establish predominance of common issues in this case because each of their claims requires individualized proof of actual injury by each proposed class member.

Specifically, "Cal. Civ. Code § 1780(a) allows an action to be brought by a consumer 'who suffers any damage' as a result of acts in violation of the CLRA." *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1146 (N.D. Cal. 2005). To plead a violation of California's UCL, "the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009); *see also* Cal. Bus. & Prof. Code § 17204. To state a claim for breach of the implied warranty of merchantability a plaintiff must allege injury. *See Birdsong*, 590 F.3d at 959. A breach of express warranty claim also requires proof that the alleged breach caused injury to the plaintiff. *Taliaferro v. Samsung Telecomms. Am., LLC*, Civil Action No. 3:11-CV-1119-D, 2012 WL 169704, at *2 (N.D. Tex. Jan. 19, 2012) (Fitzwater, C.J.).

Because each proposed class claim requires proof of some actual injury to a class member, thus necessitating an individualized and particularized inquiry into each class member's claim, Plaintiffs cannot show that common issues predominate in this case. *In re Toyota Motor Corp. Hybrid Marketing, Sales Practices and Prods. Liab. Litig.*, 288 F.R.D. 445, 449 (C.D. Cal. 2010). The *In re Toyota* case is particularly instructive on this point. There, plaintiffs alleged that Toyota knew of a defect in the anti-lock braking systems in certain models of its vehicles but continued to sell the vehicles without disclosing the defect, while advertising them as safe and reliable. *Id.* at 446. Plaintiffs sued Toyota for violations of the CLRA and UCL, for breach of the implied warranty of merchantability, and for common law breach of contract. *Id.* at 448. The district court denied certification because plaintiffs clearly could not satisfy the predominance requirement of Rule 23(b)(3):

> It is beyond dispute that the critical issue involved in this case is whether there is a manifest defect in the ABS that caused an ***actual injury*** to each member of the proposed class. Unless Plaintiffs can demonstrate such a manifest defect resulting in ***actual injury***, they cannot succeed on any of their five product liability claims alleged in [their complaint]. ***The resolution of this crucial issue, however, cannot be accomplished through common or generalized proof as is required to***

> *maintain a class action.* It must be done by an individualized and particularized
> inquiry for each member of the proposed class.

*Id.* at 449 (footnote omitted) (emphasis added). The same analysis applies here: each class

member will have to show that his or her device had a manifest defect that caused the device to

fail, resulting in some actual injury to them to prevail on any of their claims, which must be

accomplished through an individualized and particularized inquiry for each member of the

proposed class. *Id.*

   **b.**    **Plaintiffs' CLRA and UCL claims require multiple individualized**
      **inquiries.**

  There are additional reasons why common issues do not predominate with respect to

Plaintiffs' consumer protection claims under the CLRA and UCL. Plaintiffs make the conclusory

assertion that predominance is a test readily met for these claims. But, in doing so, Plaintiffs

ignore the reality here that questions of causation and reliance are not subject to common

proof.[26]

  Claims under the CLRA and the UCL require proof of causation and actual reliance. *See,*

*e.g.*, *Thomas v. Costco Wholesale Corp.*, Case No. 5:12-CV-02908-EJD, 2014 WL 1323192, at

*5, 7-8 (N.D. Cal. Mar. 31, 2014); *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D.

517, 532-37 (S.D. Cal. 2011); *Kaldenback v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th

830, 847-50 (2009). In order to avoid the predominance inquiry as to these elements, Plaintiffs

contend that reliance can be inferred and causation established by materiality under the CLRA

and that individualized proof of deception, reliance, and injury is not required under the UCL.

Ps. Brief at 38-40.

---

[26]   Generally, claims that include an element of reliance are not suitable for class treatment. *See Patterson v. Mobil Oil Co.*, 241 F.3d 417, 419 (5th Cir. 2001) ("Claims for money damages where individual reliance is an element are poor candidates for class treatment, at best."); *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 217 (C.D. Cal. 1994) (holding that court could not certify case because it presented "highly individualized questions of reliance which predominate in these proceedings").

Contrary to Plaintiffs' contention, however, there can be no presumption of reliance in this case for Plaintiffs' CLRA claim. Courts have repeatedly recognized that a presumption of reliance typically is permitted only in securities fraud cases and have specifically rejected the argument that reliance can be proven through class-wide circumstantial evidence, concluding that such an attempt would be just another effort to avoid the necessary proof of causation. *See, e.g., Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664-68 (9th Cir. 2004). Furthermore, courts routinely refuse to presume reliance where, as here, both misstatements and omissions are alleged. *Gartin v. S & M NuTec, LLC*, 245 F.R.D. 429, 438 (C.D. Cal. 2007).

Plaintiffs contend that Samsung misrepresented in its limited warranty that its Galaxy S devices were "free from defects in material and workmanship" and that Samsung failed to disclose that the devices were defective.[27] Notably, in doing so, Plaintiffs attempt to bootstrap Samsung's limited warranty into a representation that the devices are "defect-free," such that a failure to disclose the alleged defects would constitute concealment by Samsung. But nothing in the limited warranty expressly or impliedly warrants that the devices will be defect-free either during the warranty period or thereafter. *See, e.g., Hoey*, 515 F. Supp. 2d at 1104. The fact that the limited warranty provides for repair or replacement of any defective component part of the devices for one year actually belies any suggestion that Plaintiffs could have reasonably believed that any such representation had been made or have relied thereon. Even if the presumption applied outside the securities fraud context, the presumption would not apply in this case because

---

[27]     Plaintiffs' allegation that Samsung failed to disclose that the devices were defective hinges on the existence of a duty to disclose. "There is no authority," however, "that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007). "In fact, the California Supreme court has stated the general public policy that a consumer can be 'fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.'" *Id.* (quoting *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965). Moreover, "for the omission [of fact] to be material [for purposes of the duty to disclose under the CLRA], the failure must still pose safety concerns," which have neither been sufficiently alleged nor established here. *Wilson v. Hewlett-Packard Co.*, 688 F.3d 1136, 1141-43 (9th Cir. 2012) (citation and internal quotation marks omitted)).

Plaintiffs allege both misrepresentations and omissions. *Gartin*, 245 F.R.D. at 438; *see also Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).

Moreover, courts also routinely refuse to presume reliance on a class-wide basis and deny class certification when proposed class members are exposed to a variety of different information or in varying degrees. For example, in *Gartin*, the court refused to apply the presumption of reliance in a proposed class action based on alleged misrepresentations made in connection with the sale of dog treats because the proposed class members may not have read packaging, may have improperly used the treats, and may have had dogs with unique medical histories. 245 F.R.D. at 438-440; *see also Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993) (affirming denial of class certification and refusing to apply presumption of reliance in action alleging representations concerning orange juice). Similarly, an inference of common reliance here is improper because the class allegations relate to a class of consumers who may not have even read or known about the limited warranty, not to mention consumers who may not have even experienced any defect whatsoever with their Galaxy S devices. *See, e.g., Campion*, 272 F.R.D. at 538 (holding an inference of reliance did not apply where misrepresentations were alleged to have been made through various means); *Gonzalez v. Procter & Gamble Co.*, 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) ("Plaintiff's allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of Plaintiff's suit, do[] not allow an inference of common reliance or liability."). In fact, even Plaintiffs have varying accounts from each other—Newbold and Galitski never read the limited warranty; Taliaferro and Galitski never contacted Samsung about their devices or attempted to comply with the warranty's contractual precondition; and all three Plaintiffs purportedly experienced power-related issues at varying frequencies, with varying severity, and with different manifestations.

Furthermore, Plaintiffs gloss over important distinctions in the applicable law by suggesting that individualized proof of deception, reliance, and injury of absent class members is not required under the UCL as long as Plaintiffs can show that they lost money and were injured as a result of Samsung's business practices. Importantly, while that proposition may be true *for purposes of standing*, *see In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009), it does not impact the well-settled procedural requirements that the proponent of a class show that common issues of law and fact predominate, *see Campion*, 272 F.R.D. at 533 n.4.

Rather, courts routinely deny class certification where, as here, individualized proof is needed to show any given class member was ever exposed to the allegedly unfair or unlawful business practices or suffered any harm justifying restitution.[28] *See, e.g., Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (individual purchasing inquiries precluded class litigation over waffle labels); *Kaldenback*, 178 Cal. App. 4th at 850 (individual issues predominated proof of "unfairness," which required inquiry into whether each class member was exposed to or affected by the challenged practice). Indeed, as discussed above, the vast majority of Galaxy S devices did not experience any power-related issues at all, and even among those that did, there could have been various different causes, including but not limited to, software issues, customer misuse, and liquid damage. In fact, even Plaintiffs cannot refute that the significant liquid damage to Taliaferro's device or the rooting of Newbold and Galitski's devices did not cause or contribute to the issues they allegedly experienced with their devices. Accordingly, an individualized inquiry into each proposed class member's experience with his Galaxy S device, including, at minimum, what issues, if any, they

---

[28]     The UCL is violated where a defendant's act or practice is (1) unlawful; (2) unfair; (3) fraudulent; or (4) false advertising. Cal. Bus. & Prof. Code § 17200; *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Each prong of the UCL is a separate and distinct theory of liability. *Id.* According to the Amended Complaint, Plaintiffs' UCL claim is based on liability theories that Samsung's business acts or practices were unfair and unlawful within the meaning of the UCL. *See* Am. Compl. ¶¶ 180-83.

suffered and when, how frequently, and under what conditions would have to be undertaken. Because individual proof of causation and reliance for each class member would predominate at trial on the asserted CLRA and UCL claims, class certification is inappropriate here.

      **c.**      **Plaintiffs' class warranty claims require multiple individualized inquiries.[29]**

There are additional reasons why common issues do not predominate with respect to Plaintiffs' class warranty claims. As this Court has already recognized, Samsung's limited warranty contains a contractual precondition requiring a phone purchaser to return his or her phone to an "authorized phone service facility" to obtain warranty service. *See Galitski v. Samsung Telecomms. Am., LLC*, Civ. Action No. 3:12-CV-4782-D, 2013 WL 6330645, at *8 (N.D. Tex. Dec. 5, 2013) ("*Galitski I*"). Based on that determination, this Court previously dismissed Plaintiffs' claims for breach of express and implied warranty and SBA breach of express warranty for Plaintiffs' failure to plead their compliance with the warranty's precondition. *Id.* at *8-11. While the Court subsequently determined that Newbold plausibly alleged these same claims in Plaintiffs' Amended Complaint, *see Galitski v. Samsung Telecomms. Am., LLC*, Civ. Action No. 3:12-CV-4782-D, 2014 WL 3610789 (N.D. Tex. July 22, 2014) ("*Galitski II*"), the legal requirement that class members prove compliance with the warranty's contractual precondition shows why any claims premised on the warranty do not present common issues capable of class-wide determination.[30] In fact, it required an individual

---

[29]      Plaintiffs' federal Magnusson-Moss Warranty Act claim is premised on Samsung's alleged violation of its express and implied warranties. *See* Am. Compl. ¶¶ 153-57. Accordingly, Samsung's arguments as to all of Plaintiffs' state law warranty claims apply equally to Plaintiffs' Magnusson-Moss Act claim. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (stating that "disposition of the state law warranty claims determines the disposition of the Magnusson–Moss Act claims").

[30]      That is not to mention that Samsung's limited warranty covers only "defects in material and workmanship" and is therefore limited to manufacturing defects. App. 2; *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (finding that warranty guaranteeing against defects "in materials and workmanship" covers only manufacturing defects, not design defects). Thus, Plaintiffs' allegation of common defect based on the design of the device's circuitry is not covered by the warranty and provides no support for a commonality finding.

evaluation of Newbold's warranty claims by this Court, and two rounds of motions to dismiss, before this Court held that Newbold had even plausibly alleged compliance with the warranty's contractual precondition. At any class-wide trial of this matter Samsung would be entitled to argue that specific class members – including both Newbold and those similarly situated to Galitski and Taliaferro – failed to comply with the warranty's contractual precondition, thus barring their warranty-based claims. Notably, recognizing the individualized inquiries required to answer such critical issues, Judge Carney in the *Anderson* matter also found that the predominance requirement was not satisfied. App. 610-611 (Order at 12-13).

Leaving aside the individual issue of compliance with the contractual precondition, the class warranty claims would also require an individualized inquiry for Plaintiffs to show that Samsung breached its warranty in a specific case. Under California law, to prove a claim for breach of express warranty, the buyer must prove that "the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Taliaferro,* 2012 WL 169704, at *2.

Even assuming that Samsung's limited warranty rises to the level of a representation that its Galaxy S devices were "defect-free" and that the limited warranty covering defects in material and workmanship also covered the alleged design defect identified by Stone, Samsung would be entitled to put on proof at trial that it did not breach its warranty with respect to a particular device and thereby cause any injury. Taking the facts of Taliaferro's individual claims as an example, and assuming that Taliaferro could establish that he complied with the warranty's contractual precondition, Samsung would argue at trial that any injury Taliaferro suffered was due to liquid damage to his Fascinate, not any common hardware defect, and is therefore not covered by the warranty. *See In re Toyota*, 288 F.R.D. at 450 (holding that predominance could

not be met because, even in cases where a particular plaintiff claimed to have suffered an injury, "the determination of the actual cause of the injury or damages would require highly-individualized, fact-intensive inquiries") (citing cases). For class members who owned devices that never manifested any power-related defect, Samsung would be entitled to argue that it did not breach its warranty at all. *See id.* Accordingly, because the breach and causation elements of Plaintiffs' warranty-based claims require an individualized inquiry, common issues do not predominate.

Plaintiffs attempt to skirt the predominance analysis as to their express warranty claim by claiming that "[a]n express warranty claim requires common proof of the defect's existence, *not* its cause," and that "[p]roduct malfunction is not an element of plaintiffs' warranty claim." Ps. Brief at 41. In doing so, however, Plaintiffs overstate the applicable law, which expressly provides that "[a] breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life." *Am. Honda Motor Co., Inc. v. Superior Court*, 199 Cal. App. 4th 1367, 1375 (2011). Moreover, "the party moving for class certification must provide *substantial evidence* of a defect that is *substantially certain* to result *in malfunction* during the useful life of the product." *Id.* (emphasis added); *see also id.* at 1375-76 (distinguishing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010), which Plaintiffs cite in their brief, and stating that *Wolin* concerns Florida and Michigan substantive law, which is contrary to California law). Here, however, Plaintiffs have adduced no such competent evidence.

Moreover, the evidence here shows that the vast majority of Galaxy S devices did not experience any power-related issues at all, and even among those that did, there could have been many different causes, including causes excluded from warranty coverage. Compare *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1298-99 (1995) (court decertified class

"[b]ecause the vast majority of the Samurais sold to the putative class 'did what they were supposed to do for as long as they were supposed to do it'" (citation omitted)) with *Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699, 705 (1973) (court certified class of truck owners alleging that their trucks could not carry the amount of weight that GM had admittedly promised they could carry because each member of the putative class had a viable breach of express warranty claim and the record showed that "[*a*]*ll* of the wheels" would fail when carrying the promised weights (emphasis added)). Nor have Plaintiffs identified any specific affirmation of fact, promise, or description of the devices that constitutes an express or implied warranty that the devices will be defect-free either during the warranty period or thereafter. *See, e.g., Hoey*, 515 F. Supp. 2d at 1104.

Similarly, Plaintiffs' claim for breach of implied warranty under the Song-Beverly Act does not present predominant common issues that are capable of class-wide resolution. Under the Song-Beverly Act, every retail sale of consumer goods in California is accompanied by an implied warranty that the goods are merchantable. Cal. Civ. Code § 1792. To be merchantable, the product must, among other things, be "fit for the ordinary purposes for which the goods are used." *Id.* § 1791.1(a)(2); *see also Galitski II* at *11. "[A] breach of the implied warranty of merchantability means the product **did not possess even the most basic degree of fitness for ordinary use**." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003) (emphasis added).

While an implied warranty claim applies an objective standard as to whether any particular product-related issue renders a device unfit for ordinary purposes, *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012), this claim is not subject to common proof because each class member experienced power-related issues at varying frequencies (if ever), with varying severity, and with different manifestations, as proved by Plaintiffs' own testimony. *See supra* at 3-7. For example, Galitski testified that his device was

inoperable (at most) for only four or five minutes per month, while Newbold complained about more frequent issues with his device. *Id.* But they both testified that their devices were fully operational during the vast majority of the time they used them. *Id.* And Samsung's testing of these devices indicated that they functioned properly. App. 663-665. Thus, even applying an objective standard, individualized inquiries would have to be made in order to determine whether proposed class members experienced any power-related issues (if at all) that rendered their devices unfit for ordinary purposes.

This evidence, which Samsung would be entitled to show at any trial of Plaintiffs' individual claims, shows that Plaintiffs' specific devices were "fit for the ordinary purposes for which the goods are used." Cal. Civ. Code § 1791.1(a)(2).  Given the facts of Plaintiffs' own claims, their implied warranty claim presents no predominant common issue that can be determined on a class-wide basis. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010) (striking class claim for violation of implied warranty because the claim "would require an individual determination of whether a plaintiff's Machine was fit for its ordinary purpose given that the defect could render certain Machines more inoperable than others").

### d.     Proving damages requires an individualized inquiry.

Proving each class member's entitlement to monetary damages and other relief also presents an individualized inquiry that is not capable of class treatment. In their brief, Plaintiffs argue that they can come up with a "single, 'reasonable' damage amount for the 'common' hardware defect," based on the costs to repair or replace the device, the cost of the device itself, or Samsung's profit on the device. Ps. Brief at 45. Even assuming that Plaintiffs can somehow establish Samsung's liability on a class-wide basis for the tens of thousands of Galaxy S devices sold in California, Plaintiffs do not explain how they can calculate damages on a class-wide basis, much less how they will deal with class members who never experienced any power-

related issues or class members – Galitski, for example – who rarely suffered any power-related issues at all.[31] Nor do Plaintiffs explain how they will deal with the fact that class members paid retailers or their wireless carriers different prices for their devices. App. 139; 148-149 (Taliaferro Dep. at 59:24-61:4; Taliaferro Dep. Ex. 3); App. 36; 50-51 (Newbold Dep. at 58:5-18; Newbold Dep. Ex. 9); App. 95; 104 (Galitski Dep. at 49:7-9; Galitski Dep. Ex. 16). *See In re Toyota*, 288 F.R.D. at 450 ("Merely offering a creative damages theory does not establish the actual injury that is required to prevail on their products liability claims.").

Recognizing the impossibility of calculating damages for class members, Plaintiffs ask the Court, alternatively, to certify a liability-only class pursuant to Rule 23(c)(4). Ps. Brief at 37, 44. But Plaintiffs' request for certification of a liability-only class does not relieve them of their Rule 23 burden to provide the Court with "an understanding of the relevant claims, defenses, facts, and substantive law presented in the case," *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); and an adequately detailed and reasonable plan for how the class trial will be conducted, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 n.15 (5th Cir. 1998); *see also Madison v. Chalmette Ref., LLC,* 637 F.3d 551, 557 (5th Cir. 2011) (rejecting the "figure it out as we go approach"). Absent this analysis, the Court cannot conclude that common issues predominate or that class adjudication is superior, given the individual inquiry required to calculate damages. *See id.*

An individual analysis would also be necessary to determine whether restitution and disgorgement are appropriate and, if so, the amount thereof.[32] *See, e.g., Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1401 (2010) (finding the object of restitution under the UCL is to restore plaintiff to "the status quo ante"). Here, Plaintiffs apparently seek both restitution and

---

[31]     Plaintiffs cite Stone's opinion for the proposition that repair costs are "uniform" for all Class Phones. Ps. Brief at 45 (citing Ps. App. 1223). Stone offers no such opinion.

[32]     Notably, a UCL claim is equitable in nature and remedies under the UCL are limited to injunctive relief and restitution; damages and attorneys' fees are not available. *E.g., Campion*, 272 F.R.D. at 532.

disgorgement in connection with their UCL claim.[33] Disgorgement is a far broader remedy than restitution. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1013 (2004). There are two kinds of disgorgement—restitutionary and nonrestitutionary:

> With restitutionary disgorgement, the focus is on the plaintiff's loss. It is typified by the situation where "the disgorged money or property [came] from the prospective plaintiff in the first instance." Restitutionary disgorgement also refers to situations where it is not possible to restore the money to the specific direct victims of the unfair practice. By contrast, with nonrestitutionary disgorgement, the focus is on the defendant's gain from the unfair practice; the plaintiff need not have suffered a loss.

*Id.* Nonrestitutionary disgorgement is not a remedy available under the UCL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) ("This court has never approved of nonrestitutionary disgorgement of profits . . . under the UCL"); *Feitelberg*, 134 Cal. App. 4th at 1020 (concluding that "nonrestitutionary disgorgement is not available to a private plaintiff, regardless of the nature of the UCL proceeding as a class action"). Because the nonrestitutionary disgorgement remedy "closely resembles a claim for damages, something that is not permitted under the UCL," a court may not "order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits." *Korea Supply*, 29 Cal. 4th at 1150-51, 1177.

Here, Plaintiffs claim that individualized proof is not required because their claims for restitution and disgorgement are based on Samsung's revenues and profits from selling the Galaxy S devices during the class period, regardless of cause and experience of the putative class, which, as Plaintiffs have defined it, includes every California resident who purchased the Captivate, Vibrant, Epic 4G, and Fascinate from June 1, 2010 through the present. In doing so, Plaintiffs plainly demonstrate that they seek nonrestitutionary disgorgement, which is

---

[33]      Plaintiffs also claim to seek restitution in connection with their CLRA claim, but provide no substantive discussion thereof. Ps. Brief at 46. In any event, the discussion of restitution under the UCL applies equally to restitution under CLRA. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 & n.22 (2006) (stating that the restitution of property is an available remedy under the CLRA, and that the discussion of restitution under the UCL applies to restitution under the CLRA).

unavailable under California law. *E.g., id.* at 1143; *Feitelberg*, 134 Cal. App. 4th at 1020. Plaintiffs' attempt to avoid the predominance issue as to their claim for restitution is also unavailing because in order to qualify for restitution, a class member must present evidence quantifying the amount necessary to restore to him what has been acquired by violation of the statute. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). Thus, each class member would have to prove the amount of money Samsung wrongfully obtained from him by reason of Samsung's allegedly unfair or unlawful conduct.

### e.  Plaintiffs have not shown that they can ascertain class membership.

While failure to adequately define an ascertainable class is the least of the problems with Plaintiffs' request for class certification, Plaintiffs offer no evidence that they can identify California purchasers of all four models of the Galaxy S device. Samsung does not have access to this information: as Plaintiffs state in their brief, Samsung only collects information for customers who return their devices to Samsung for service. Ps. Brief at 47; App. 262 (Sheppard Dec. ¶¶ 21-22.) Other than simply asserting that they can get the necessary information to identify class members from each of the wireless carriers, Plaintiffs offer no proof that it is possible to do so. Plaintiffs also do not explain how they will deal with class members who, like Newbold, purchased devices that are among the Class Phones but then exchanged them for different devices also among the Class Phones. App. 25 (Newbold Dep. at 14:23-16:6). Accordingly, Plaintiffs have not shown that they can ascertain class membership.

### 4.  *Plaintiffs fail to satisfy the superiority requirement.*

In determining whether a Rule 23(b)(3) class is superior to other available methods for fairly and efficiently adjudicating this controversy, both Rule 23(b)(3)(D) and the relevant case law require this Court to give meaningful consideration to how this case will be tried. *See* Fed. R. Civ. P. 23(b)(3)(D) (requiring district courts to consider "the likely difficulties in managing a

class action" in certifying a Rule 23(b)(3) class); *Madison*, 637 F.3d at 555. Typically, in seeking certification of a Rule 23(b)(3) class, class proponents provide the court a detailed trial plan explaining how they intend to determine class-wide liability and damages issues for each of their class claims and detailing how they will handle any individual issues that may arise. *Madison*, 637 F.3d at 555. The district court can then evaluate that trial plan in making its predominance determination and in analyzing whether the court is capable of managing the trial of plaintiffs' claims on a class-wide basis. *Id.*

Here, Plaintiffs have provided no trial plan to the Court, much less offered any discussion of how this case can be managed at a class-wide trial.[34] *See* Ps. Brief at 49. In fact, Plaintiffs' entire manageability discussion is limited to two sentences on the next to last page of their brief and includes a citation to a Northern District class certification order in *Hamilton v. First American Title Ins. Co.*, 266 F.R.D. 153 (N.D. Tex. 2010), that was summarily vacated on appeal by the Fifth Circuit, *see* 423 F. App'x 425 (5th Cir. 2011). Without a trial plan, much less a robust discussion of how their cases can be tried on a class wide basis, Plaintiffs cannot meet their burden to show that this case is manageable, much less that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.  Fed. R. Civ. P. 23(b)(3)(D).

As for the existence and nature of other litigation, which the Court is instructed to consider by Rule 23(b)(3)(B), this case is one of three class actions filed against Samsung related to the Galaxy S mobile device. The other two cases have already been resolved against the plaintiffs. In *Amy Rothbaum v. Samsung Telecommunications America, LLC*, C.A. No. 11-

---

[34]    Samsung served interrogatories on each Plaintiff in mid-2013 asking them to explain how they intended to try this case on a class-wide basis and to provide their trial plan. App. 78; 80; 118; 121; 165; 167 (Nos. 17 and 24). Plaintiffs objected to Samsung's discovery requests as "premature and subject to ongoing discovery," among many other objections, and have never provided any answer. That failure to provide a trial plan evidently continues even in their brief in support of their motion for class certification.

10509-MLW, pending in the District of Massachusetts, District Judge Wolf recently excluded Rothbaum's expert who, like Plaintiffs' expert in this case, was attempting to offer the opinion that 100% of Samsung's Galaxy S phones were defective, and granted summary judgment against Rothbaum on her implied warranty claims because no reasonable jury could conclude that Rothbaum's phone lacked "operative essentials." App. 643. The district court also granted summary judgment on her Massachusetts Consumer Protection claim because the evidence was insufficient to support such a claim. App. 656-61. In the other case, *Amira Anderson v. Samsung Telecommunications America, LLC*, Case No. SACV-13-01028-CJC, pending in the Central District of California, Judge Carney recently denied certification of a California-only class alleging virtually identical claims as the claims alleged by Plaintiffs in this case. App. 599.

While this Court, in reviewing Plaintiffs' motion for class certification, must exercise its own judgment, Samsung submits that the orders entered in *Rothbaum* and, particularly, in *Anderson* provide additional authority for the Court to deny class certification here because Plaintiffs in this case are treading much of the same ground, asserting essentially the same claims, and relying on the same evidence as did the plaintiffs in the prior cases.

## IV.   CONCLUSION

For the reasons stated in this brief, Samsung requests that the Court deny Plaintiffs' motion for class certification in its entirety.

Date:  November 12, 2014                    Respectfully submitted,

                                            */s/ John Volney*
                                            Jeffrey M. Tillotson, P.C. (jtillotson@lynnllp.com)
                                            Texas State Bar No. 20039200
                                            John Volney (jvolney@lynnllp.com)
                                            Texas State Bar No. 24003118
                                            Alan Dabdoub (adabdoub@lynnllp.com)
                                            Texas State Bar No. 24056836
                                            **LYNN TILLOTSON PINKER & COX, L.L.P.**
                                            2100 Ross Avenue, Suite 2700
                                            Dallas, Texas  75201
                                            (214) 981-3800 Telephone
                                            (214) 981-3839 Facsimile

                                            **ATTORNEYS FOR DEFENDANT
                                            SAMSUNG TELECOMMUNICATIONS
                                            AMERICA, LLC**

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via the Court's ECF system on November 12, 2014.

                                            */s/ John Volney*
                                            John Volney