IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANE GALITSKI, RICHARD TALIAFERRO and BRIAN NEWBOLD, Individually and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 3:12-CV-4782-D |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | § § § § | |
| Defendant. | § § | |

**Plaintiffs' Opposition to Defendant's Motion to Exclude Expert Opinions Offered By
Plaintiffs' Expert W. Ross Stone and Brief in Support**

**[REDACTED]**

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................1

II.  ARGUMENT........................................................................................2

   A. Doctor Stone confirmed the existence of a common hardware defect in the Class Phones........................................................................2

   B. Doctor Stone is qualified to opine on the common hardware defect................3

   C. Doctor Stone's opinions are relevant and can assist the fact finder in understanding the common hardware defect..........................................7

   D. Doctor Stone's opinions are based on reliable facts, as even McAlexander agrees.............................................................................................8

      1.  Doctor Stone analyzed reliable sources.........................................8

      2.  Samsung's disagreement with Dr. Stone's conclusions does not render the opinions unreliable......................................................12

      3.  Samsung wrongly suggests that Dr. Stone must meet every *Daubert* factor to be reliable..........................................................14

III. CONCLUSION....................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Carter v. Massey-Ferguson, Inc.*,
716 F.2d 344 (5th Cir. 1983) .................................................................................... 10

*E.E.O.C. v. Manville Sales Corp.*,
27 F.3d 1089, 1093 (5th Cir. 1994) ............................................................................ 7

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .................................................................................................. 13

*Gussack Realty Co. v. Xerox Corp.*,
224 F.3d 85 (2d Cir. 2000) ........................................................................................ 10

*Huss v. Gayden*,
571 F.3d 442, 452 (5th Cir. 2009) .............................................................................. 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................................................................. 14

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
910 F.2d 167 (5th Cir. 1990) ................................................................................. 4, 5

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ...................................................................................... 4

*Nunn v. State Farm Mut. Auto. Ins. Co.*,
2010 U.S. Dist. LEXIS 61740 (N.D. Tex. June 22, 2010) ......................................... 5

*Orthoflex, Inc. v. ThermoTek, Inc.*,
986 F. Supp. 2d 776 (N.D. Tex. 2013) ................................................................ passim

*Osburn v. Anchor Labs., Inc.*,
825 F.2d 908 (5th Cir. 1987) ............................................................................. 12, 13

*Peteet v. Dow Chem. Co.*,
868 F.2d 1428 (5th Cir. 1989) ............................................................................. 9, 10

*Rolls-Royce Corp. v. Heros, Inc.*,
2010 U.S. Dist. LEXIS 3716 (N.D. Tex. Jan. 14, 2010),
*vacated on other grounds*, 2011 U.S. Dist. LEXIS 33649 (N.D. Tex. Mar. 30, 2011) .......... 5, 6

*Roman v. W. Mfg., Inc.*,
691 F.3d 686 (5th Cir. 2012) .................................................................................... 14

*Smith v. Borden, Inc.*,
   188 F.R.D. 257 (M.D. La. 1999) ....................................................................................... 14

*United States v. 14.38 Acres of Land*,
   80 F.3d 1074 (5th Cir. 1996) ................................................................................. 9, 10, 14

I.  **INTRODUCTION**

Defendant Samsung Telecommunications America, LLC ("Samsung") moves to exclude the opinions of Plaintiffs' expert, Dr. Ross Stone, who in his expert report identifies a common hardware defect in all Class Phones. ECF No. 149. According to Samsung, Dr. Stone is unqualified because he has neither designed nor published papers regarding smartphone circuitry. The Fifth Circuit has never required testifying experts have, as Samsung contends, prior experience with the specific product for which an opinion is made. Moreover, Samsung ignores Dr. Stone's work history and education. Doctor Stone's 45 years of experience in analyzing and addressing ▓▓▓▓ in circuitry, including telecommunications devices, clearly qualifies him to opine that ▓▓▓▓ within the Class Phone's circuitry caused the ▓▓▓▓ ▓▓▓▓.

Samsung's relevancy attacks on Dr. Stone's expert report fare no better. Doctor Stone's opinions about the common hardware defect relate directly to Plaintiffs' consumer protection and warranty claims. Expert testimony about the Class Phones will help the fact finder understand complicated scientific and engineering principles relating to circuits and ▓▓▓▓. Doctor Stone's opinions are certainly relevant, especially given his opinions are supported by reliable third-party testing results and Samsung circuit diagrams, which together show a common hardware defect exists in all Class Phones.

Samsung raises several challenges to Dr. Stone's conclusion, but these attacks go to the weight of Dr. Stone's opinions, not their admissibility. Although Samsung disagrees with Dr. Stone's conclusions and asks the Court to accept the conclusions of its designated expert, Joseph McAlexander, instead, these are not grounds to exclude Dr. Stone's testimony. Weighing competing evidence, even expert opinions, is a job for the fact finder. By education, knowledge,

and experience, including with electronics, ███████████████, and telecommunications, Dr. Stone is more than qualified to offer opinions in this case. And both Stone and McAlexander rely on testing results and root cause analyses by ███████████ ████████████████████████████████████ in the Class Phones, and both find ██████ testing and analyses reliable and scientific. Samsung's motion to exclude should be denied.

## II.  ARGUMENT

### A. Doctor Stone confirmed the existence of a common hardware defect in the Class Phones

Doctor Stone is an electrical engineer with a Ph.D in applied physics and 45 years experience in analyzing ████████████████ in circuitry, including telecommunications circuitry.[1] APP. 1214-15. Doctor Stone opines as to "whether there was a hardware defect" in the Class Phones, which caused the ██████████████, and if so, the "likely cause." APP. 1215. After analyzing the results of ██████ extensive testing, reviewing Samsung's circuit diagrams and schematics for each Class Phone, and considering deposition testimony and other documents, Dr. Stone concluded there was a common hardware defect in the Class Phones.

Doctor Stone concluded that "Cause 1" ████████████████████ applied to all Class Phones. In the Captivate, certain ██████████████████████████████████████, which, consistent with Dr. Stone's experience and confirmed by ██████ testing, resulted in ██████  in the phone's circuitry, thereby causing the ██████ ████████████ APP. 1217-18, 1221. Such a ██████████████████████████

---

[1] Citations refer to the Appendix in Support of Plaintiffs' Motion for Class Certification ("APP."), Appendix in Support of Plaintiffs' Reply in Further Support of Motion for Class Certification ("Reply APP."), and the appendix accompanying Samsung's Opposition to Plaintiffs' Motion for Class Certification ("STA APP.").

2

████████████████████████████ (Reply APP. 22 (37:11-17)), ████████████
████████████████████████. STA APP. 368 (103:23-104:6). Doctor Stone compared the circuit diagrams of the Fascinate, Epic, and Vibrant with each other and with the Captivate circuit diagram and concluded the "relevant portions of the circuit diagrams" associated with the ██████████ issue were "identical to each other." APP. 1221. Because "all four phones had the same ████████████████████████████████████████ Vbatt," Dr. Stone explained, Cause 1 was "present in all four phones." APP. 1221. McAlexander agrees the ████████ is present in all four phones. Reply APP. 46 (260:15-261:12) (agreeing all four phones had the ████████████).

### B. Doctor Stone is qualified to opine on the common hardware defect

Samsung makes the sweeping charge Dr. Stone is unqualified to offer "any opinions" about the Galaxy S smartphone. ECF No. 149 at 4. According to Samsung, Dr. Stone is unqualified because he has no lab to test smartphones, has published no papers about "smartphone circuitry," has not designed "smartphone circuitry" ████████████ ████████, did not conduct failure analysis of smartphones prior to this case, and does not own a smartphone. ECF No. 149 at 4-5. Under Samsung's reasoning, everything else in Dr. Stone's background can be ignored.

Samsung never explains why Dr. Stone's work history and education, which includes a Ph.D in applied physics, disqualify him from offering an expert opinion. Doctor Stone pursued his doctorate in the "department of applied electrophysics," which combined "electrical engineering" and "radio science." STA APP. 384 (169:11-21). He has 45 years of experience with "cellular and telecommunications equipment and systems" (APP. 1214) and is an expert on ████████████████████ caused by ████████████████████ (STA APP. 352-53 (41:13-42:25)),

3

which is the precise subject matter of his expert report and testimony. APP. 1215. For Samsung, though, these qualifications simply do not matter.

Moreover, Dr. Stone's experience includes testing and analyzing the very components at issue here: "cellular telecommunication circuits, methods, and equipment" (APP. 1215), "circuits and systems" of cellular-telephone handsets and systems (APP. 1215), including an analysis of circuits within smartphones. STA APP. 356 (56:6-14). As chief scientist for McDonnell Douglas Technologies, Dr. Stone designed and tested integrated circuits and printed circuit boards. STA APP. 353 (44:19-45:5). He has written and edited peer reviewed papers concerning the "testing of circuits for ▬▬▬▬▬▬." STA APP. 354 (48:2-7). And after a rigorous review of his qualifications, Dr. Stone was separately elected by his peers on recognition of his outstanding qualifications to the highest level of membership, Fellow, in two of the most prestigious organizations for electrical engineering (IEEE and CIE). APP. 1214. Under IEEE rules, no more than one-tenth of one percent of the membership can be elected to Fellow in any year (http://www.ieee.org/membership_services/membership/fellows/index.html), and the CIE has similarly stringent requirements. Under Fifth Circuit precedent, Dr. Stone is well qualified to offer expert opinions in this case. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176-77 (5th Cir. 1990) (engineer experienced in designing devices similar to a brake press qualified to testify on safety of brake press), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc). His training, education, knowledge and experience in designing, analyzing and testing telecommunications circuitry for ▬▬▬ ▬▬▬ allows him to opine on the ▬▬▬▬▬▬ in Samsung's telecommunications circuitry. He understands the components and principles of physics at issue. Likewise, through

4

his extensive experience with publication and peer review journals, he knows and understands the testing process for circuits and is therefore qualified to analyze and explain ▓▓▓▓ testing.

Given Dr. Stone's qualifications, it is not surprising that Samsung relegates to a footnote the only two decisions that allegedly support its motion to exclude. ECF No. 149 at 5 n.2 (citing *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 61740 (N.D. Tex. June 22, 2010) and *Rolls-Royce Corp. v. Heros, Inc.*, 2010 U.S. Dist. LEXIS 3716 (N.D. Tex. Jan. 14, 2010), *vacated on other grounds*, 2011 U.S. Dist. LEXIS 33649 (N.D. Tex. Mar. 30, 2011)). Much like the Fifth Circuit's *Lavespere* opinion, *Nunn* and *Rolls-Royce* reject the very premise on which Samsung relies—if Dr. Stone is not an expert in "smartphone circuitry," he cannot testify about the circuitry or ▓▓▓▓▓▓▓▓ in Class Phones. *See also Lavespere*, 910 F.2d at 177 ("such an approach would often mean that the only experts who could testify regarding a machine are those who have an interest in defending its design.").

In *Nunn,* the Court found an auto repair technician qualified to offer a damage estimate even though the technician "lack[ed] the expertise to perform" the repair work and typically did not offer estimates on the vehicle type at issue. 2010 U.S. Dist. LEXIS 61740, at *10. In contrast to the *Nunn* expert, Dr. Stone has actually worked with, designed, and tested circuit boards and other telecommunications equipment for ▓▓▓▓▓▓▓▓, and Samsung never disputes his 45 years of work with circuitry and ▓▓▓▓▓▓▓▓.

In *Rolls-Royce*, the plaintiff challenged the defendant's expert as unqualified to testify about "turbine" engine parts because he had "never worked on projects involving parts for that engine, ha[d] never seen a Rolls-Royce part drawing for the Model 250 engine, and ha[d] never seen a data package submitted by a manufacturer for [regulatory approval of that engine]." 2010

5

U.S. Dist. LEXIS 3716, at *11. The expert instead had experience with "piston" engines. *Id*. This Court rejected Rolls-Royce's argument:

> Rolls-Royce offers nothing more than a bare assertion that piston engines are so different from turbine engines that experience with one is useless in analyzing the other. Obviously, the two engines make use of different physical processes. But Rolls-Royce does not explain how—given the nature of and purposes for Dedmon's proposed testimony—the process of designing piston engine replacement parts is materially different from designing turbine engine replacements parts. Similarly, Rolls-Royce does not explain how, if at all, seeking FAA approval for piston engine replacement parts materially differs from the approval process for turbine engine replacement parts.

*Id*. at *12. As in *Rolls-Royce*, Samsung never explains why Dr. Stone's extensive experience with circuit boards, ████████████, and cellular communications makes him unqualified to testify about the Class Phones. Further, Samsung never argues, let alone shows, how its circuits are "materially different" from other circuits or the ████████████ here is somehow unique, making Dr. Stone's analysis "useless." *See id*. Even Samsung's designated expert agrees all Class Phones use the same ████████ and have the ████████ ████████ identified and Dr. Stone confirmed (Cause 1). Reply APP. 38-39 (121:25-124:6), 46 (260:15-261:12).

Samsung cannot resort to "bare assertion[s]" that Dr. Stone is unqualified. *Rolls-Royce*, 2010 U.S. Dist. LEXIS 3716, at *12. Yet Samsung does just that to support its claim that Dr. Stone is unqualified to review or critique ████ testing methods. ECF No. 149 at 5. Defendant cannot simply sweep aside Dr. Stone's extensive experience in designing and testing electronic circuitry and analyzing studies and other written materials. APP. 1214-15. In all, Samsung ignores Dr. Stone's background as well as Fifth Circuit precedent that holds "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

### C. Doctor Stone's opinions are relevant and can assist the fact finder in understanding the common hardware defect

Samsung argues Dr. Stone's opinions are not relevant to class certification. ECF No. 149 at 6. This argument ignores that the determination of relevancy is whether the testimony will help the trier of fact understand evidence or determine a fact issue. *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994) (finding trial court abused its discretion by excluding evidence related to age-related statements in an age discrimination case because such statements "obviously relevant to a showing of age bias"); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 782, 790-791 (N.D. Tex. 2013) (finding expert testimony concerning similarities in competitors' products—even if it related to conduct of a third party—relevant to element of unfair competition and fraud claims). Here, Dr. Stone's testimony will help the fact finder understand the evidence and determine facts in issue.

Doctor Stone explains ▮▮▮▮▮▮▮▮ within circuits and the Class Phones and shows how ▮▮▮ testing and Samsung's schematics suffice to prove a common hardware defect in all four phones. Doctor Stone's opinions about the common hardware defect are relevant to Plaintiffs' consumer protection and warranty claims and can assist the fact finder in comprehending engineering principles relating to circuits and ▮▮▮▮▮▮▮▮. Technical and science-based issues go to the heart of the case and are plainly relevant to claims and defenses. *See Manville*, 27 F.3d at 1093 (standard for relevance is liberal); *Orthoflex*, 986 F. Supp. 2d at 782, 790-791 (same).

Samsung makes the surprising argument that Dr. Stone's opinions are somehow irrelevant to Plaintiffs' class allegations. *See* ECF No. 149 at 6 (stating Dr. Stone's opinion that Class Phones suffered from a common hardware defect is not relevant to "this proceeding" or

"commonality" inquiry). Under Fifth Circuit standards, Dr. Stone's opinions are relevant to establishing the requirements of class certification, including, for example, commonality.

**D. Doctor Stone's opinions are based on reliable facts, as even McAlexander agrees**

Doctor Stone's opinions are reliable because they are based on scientifically valid and accepted methodology of analyzing reliable test results and circuitry schematics to identify sources of ▮▮▮▮▮ within circuits. This methodology, grounded in basic principles of physics and electronic circuitry design, has widespread acceptance, and was used by both Dr. Stone and McAlexander in forming their opinions. Reply APP. 34, 41 (81:7-22, 198:25-199:6).

Samsung, however, contends that Dr. Stone's opinions are unreliable because (1) Dr. Stone's "conclusions are based entirely on his reading and interpretation" of ▮▮▮▮ testing and Samsung's circuitry schematics (ECF No. 149 at 6); (2) Dr. Stone's conclusions have "too many analytical gaps" or are incorrect (ECF No. 149 at 7-8); and (3) Dr. Stone does not meet each *Daubert* factor (ECF No. 149 at 11). These arguments miss the mark.

**1. Doctor Stone analyzed reliable sources**

For Samsung, Dr. Stone's opinions are unreliable for three reasons: (1) Dr. Stone's sources do not support his conclusions, (2) Dr. Stone did not "test" the phones at issue, and (3) Dr. Stone did not consider alterative causes. ECF No. 149 at 6-7. Samsung's first attack is implicitly grounded on the contention that Samsung's own phone schematics and ▮▮▮▮ testing Samsung requested are unreliable. *See* ECF No. 149 at 6-7 (asserting Dr. Stone's conclusions are "based entirely on his reading and interpretation" of ▮▮▮▮ testing and schematics, and that such information is not "sufficient facts or data"). But even McAlexander relied on ▮▮▮▮ testing and Samsung's circuitry schematics, and testified it was appropriate to do so. Reply APP. 34, 41 (81:7-22, 198:25-199:6). In making the determination whether an expert's opinion is

8

based on information "of a type reasonably relied upon by experts in the particular field," trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989).

No party disputes that ▮▮▮▮▮▮ in the Class Phones, was in the best position to analyze and identify the hardware defect. In McAlexander's opinion, ▮▮ conducted a "thorough investigation" and testing of circuitry. STA APP. 498 (¶45). Doctor Stone agreed ▮▮ did "extensive testing," Reply APP. 20 (26:8-12), the testing was "more than sufficient to provide the information needed" for his opinions, Reply APP. 21 (30:6-11), and ▮▮ provided the "key" portions of the data. STA APP. 385 (170:14-172:7). Regarding ▮▮ testing and analyses, Dr. Stone:

> went through the report and looked at what they had done. [He] understood what ▮▮ identified as the root causes of the defect. [He] looked at the schematic diagrams for the phones. [He] verified that, in fact, the causes associated with the defect were present, not only in the ▮▮ but in the other three models of the phone as well. [He] drew further conclusions, as are given in [his] report here.

Reply APP. 24 (84:8-20). No basis exists for a *Daubert* challenge to Dr. Stone's opinions. The five *Daubert* factors courts consider (*Orthoflex*, 986 F. Supp. 2d at 783), which concern reliability, simply are not at issue here, because both sides relied on the same evidence—▮▮ testing and analyses—and their designated experts agree the ▮▮ evidence is reliable and followed the scientific method.

Samsung's argument fails for another reason as well. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). In *14.38 Acres*, expert Varner opined that a levee would cause flooding on property, and based his opinion on "maps,

photographs and data, and his inspection of the property, as well as his experience as a civil engineer." 80 F.3d at 1079. In turn, expert Walker relied on that analysis, as well as discussions with "brokers and lenders; comparable sales; and his experience as a real estate appraisal" to value the property. *Id*. The government, much like Samsung here, contended that the sources were insufficient and the analysis was belied by other data. *Id*. The Fifth Circuit rejected the government's argument:

> The perceived flaws in the testimony of [the plaintiff's] experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process.

*Id*. This Court should likewise reject Samsung's argument that Dr. Stone's testimony is unreliable because Dr. Stone—like Samsung's designated expert—interpreted and relied (in part) on ▬▬ extensive testing and analysis. Even if, as it appears, Samsung believes McAlexander may rely on ▬▬ testing and the circuitry schematics, but Dr. Stone cannot, Samsung's argument concerns Dr. Stone's sources, and thus is nothing more than a "perceived flaw" in Dr. Stone's opinion, which is no basis for "truncating" the adversarial process. *See id*.

Next Defendant contends Dr. Stone's opinions are unreliable because Stone failed to "test" the phones. Nothing required Dr. Stone to "test" the phones, as the Fifth Circuit makes clear. "A personal examination of the person or object of the expert's testimony is not required under Fed. R. Evid. 703." *Peteet*, 868 F.2d at 1432. Expert testimony does not require personal knowledge, and an expert may base his opinion on facts or data presented at trial. *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349-51 (5th Cir. 1983); *see also Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) ("Xerox's primary argument is that plaintiffs' experts failed to conduct their own tests and relied only on data provided by Xerox's own experts

10

and [state government]. [But under Rule 703] an expert may rely on facts or data 'perceived by *or* made known to the expert[.]'").

As this Court explained in *Orthoflex*, "the fact that [expert] did not perform extensive scientific experiments to examine the functionality of the devices goes to the weight, not the admissibility, of his opinions." 986 F. Supp. 2d at 802. Even McAlexander never examined Plaintiffs' phones. Reply APP. 50 (296:13-18). Moreover, Dr. Stone's analysis of the schematic diagrams arguably has greater reliability because any "testing" would have required Dr. Stone to destroy the Plaintiffs' phone by drilling through or slicing off the ten layers of circuitry that make up the printed circuit board in the phone. In contrast, the schematic diagrams, which are used by experts in the field, were sufficient to identify the common hardware defect, and Samsung does not argue otherwise. STA APP. at 523, ¶91 (confirming ▮▮▮▮▮ in the ▮▮▮▮ from schematics).

Samsung's final argument—Dr. Stone did not consider other causes—misstates the evidence and, in any case, is no basis for finding Dr. Stone unreliable. *See* ECF No. 149 at 7. As is clear from his report and testimony, Dr. Stone considered and identified three alternative causes of the ▮▮▮▮▮▮. APP. 1221-22. Likewise, when asked whether liquid damage to a phone would cause the ▮▮▮▮, Dr. Stone explained that such damage is "highly unlikely" to cause the ▮▮▮▮ at issue. Reply APP. 20 (29:4-14).

Nevertheless, this Court rejected the argument Samsung now makes. In *Orthoflex*, ThermoTek argued that Dr. Varcoux's testimony should be excluded because he "wholly fail[ed] to negate a variety of other possible causes, such as the corroded parts coming into contact with tap water, spilled beverages, rain, or simply being placed in a wet sink to fill the reservoir." 986 F. Supp. 2d 776, 802-03. The Court disagreed, reasoning there was no evidence that any of these

"intervening" events actually occurred and "although it is possible that these alternative causes explain the corrosion, Dr. Vacroux's ultimate conclusion that the machines exhibit a design defect does not depend on their susceptibility to corrosion." *Id*. Thus, "ThermoTek's speculation that other causes might explain some of Dr. Vacroux's findings" was, like Samsung's conjecture here, "not enough to justify exclusion." *Id*.

### 2. Samsung's disagreement with Dr. Stone's conclusions does not render the opinions unreliable

Samsung also challenges the reliability of Dr. Stone's opinions based on its disagreement with Dr. Stone's conclusions. Samsung suggests Dr. Stone's opinions (1) suffer from an "analytical gap," or (2) are unsupported. Both arguments fail.

Defendant first argues an "analytical gap" exists because Dr. Stone allegedly "lumped" all power-related issues into a single "power-off" category, though McAlexander believes there could be other causes of the "power-off defect." ECF No. 149 at 8. The fact McAlexander believes other factors could theoretically cause users to miss calls or suffer a power-off does not challenge Dr. Stone's analysis of ▇▇▇▇▇▇▇▇, and does not call into question anything Dr. Stone did when reviewing schematics or other information. For example, as to Cause 1, Dr. Stone explained the logical connection of causation: ▇▇▇▇▇▇▇▇ would cause the phone to freeze or power-off, thereby causing users to miss texts or phone calls. McAlexander's disagreement with Dr. Stone does not create an "analytical gap" and does not justify striking his opinions. Where experts draw different conclusions from the same sources, the "jury must be allowed to make credibility determinations and weigh the conflicting evidence in order to decide the likely truth of a matter not itself initially resolvable by common knowledge or lay reasoning." *Osburn v. Anchor Labs., Inc.*, 825 F.2d 908, 916 (5th Cir. 1987).

12

The only case Samsung cites to support its "analytical gap" argument is *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145 (1997), but *Joiner* is inapposite. There the Supreme Court considered whether certain studies were statistically significant to show a relation between exposure to chemicals and diseases in humans, and thus has nothing to do with applying principles of physics or identifying sources of ▮▮▮▮▮ in circuitry. By contrast in *Orthoflex*, this Court found no analytical gap where, like Samsung here, the plaintiffs "do not posit that the testing procedures were flawed, that the tools used to study the wraps were defective, or even that the measurements or data" were inaccurate. 986 F. Supp. 2d 786.

Nothing is unreliable about Dr. Stone's analysis or ▮▮▮ testing. Dr. Stone analyzed "circuit diagrams" and concluded the relevant portions of the phone circuitry, including the circuits that caused the ▮▮▮▮▮, were identical. APP. 1221. McAlexander concedes all four phones had the ▮▮▮▮▮ Dr. Stone identifies, ▮▮▮ did a "thorough investigation," and the underlying schematic diagrams are correct. STA APP. 498, ¶ 45. In sum, there is no "analytical gap."

Samsung, through McAlexander, suggests ▮▮▮ root cause analysis does not permit Dr. Stone to conclude Class Phones suffered the same defect (ECF No. 149 at 9), and also that each phone's circuit board design is unique, such that Dr. Stone cannot determine that any of the phones were defective (ECF No. 149 at 10). Again, as mentioned, although McAlexander disagrees with Dr. Stone and believes ▮▮▮ analyses support a different conclusion, this is not a basis to exclude Dr. Stone. *See Osburn*, 825 F.2d at 916. Likewise, McAlexander misconstrues Dr. Stone's analysis with respect to the circuitry schematics: Dr. Stone stated that the "relevant portions" of the *circuitry* were identical, not that each Class Phone's layout was identical. *Compare* ECF No. 149 at 9 *with* APP. 1221.

### 3. Samsung wrongly suggests that Dr. Stone must meet every *Daubert* factor to be reliable

Samsung contends Dr. Stone must meet every *Daubert* factor, including that "his technique or theory about the Galaxy S devices has been generally accepted in the scientific community." ECF No. 149 at 11. The *Daubert* analysis, however, is "flexible," and "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [their] testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). *Daubert* was not meant to circumvent federal evidence law, and "the trial court's role as gatekeeper is not intended to serve as replacement for the adversary system." *14.38 Acres*, 80 F.3d at 1078. Thus, the Fifth Circuit rejects rigid applications of *Daubert*, such as any expert's opinions are unreliable because his "method has not been subjected to peer review and publication." *Compare* ECF No. 149 at 11 *with Roman v. W. Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012) (concluding "absence of textual support or published studies is not dispositive when reliable methods are used."); *see also Smith v. Borden, Inc.*, 188 F.R.D. 257, 262 (M.D. La. 1999) ("While none of the plaintiff's experts have ever designed aerosol cans, this is not a requirement").

Here, Dr. Stone considered reliable information, used scientifically valid and accepted techniques to analyze that information, and then drew conclusions based on his 45 years of specific experience analyzing ▓▓▓▓▓▓▓▓▓▓ within circuits. Given McAlexander used the same information and methods, Samsung cannot credibly argue otherwise.

### III. CONCLUSION

Samsung's motion fails to make valid attacks against Dr. Stone's qualifications, the relevancy of his opinions, or the reliability of the sources on which he relies. Doctor Stone has 45 years of relevant experience, his opinions can educate the trier of fact about technical and

scientific issues directly related to the claims and defenses at issue, and his analyses follow accepted engineering methods and are supported by reliable sources. The mere fact that Samsung or McAlexander disagrees with Dr. Stone's conclusions does not create an "analytical gap" or a basis for exclusion. The motion should be denied.

Date:  December 22, 2014                    Respectfully submitted,

DOYLE LOWTHER LLP

__/s/ James R. Hail_____
James R. Hail (TX SBN 24002207)
jim@doylelowther.com
William J. Doyle, II (CA SBN 188069)
bill@doylelowther.com
John A. Lowther (CA SBN 207000)
john@doylelowther.com
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
858.935.9960 – Telephone
858.939.1939 – Facsimile

STANLEY-IOLA, LLP
Marc R. Stanley
marcstanley@mac.com
Martin Woodward
Scott Kitner
310 Monticello Avenue, Suite 750
Dallas, TX 75205
214.443.4300 – Telephone
214.443.0358 - Facsimile

GLYNN LAW GROUP
Thomas E. Glynn
tom@glynnwgroup.com
10200 Willow Creek Road, Suite 170
San Diego, CA 92131
858.271.1100 – Telephone
858.876.1530 – Facsimile

THE CONSUMER LAW GROUP
Alan M. Mansfield
alan@clgca.com
10200 Willow Creek Road, Suite 160

San Diego, CA 92131
619.308.5034 – Telephone
888.341-5048 – Facsimile

*counsel for plaintiffs and proposed class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and correct copy of the above and foregoing document has been served on all counsel of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on December 22, 2014:

/s/ *James R. Hail*

James R. Hail