**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SHANE GALITSKI, RICHARD** | § | |
| **TALIAFERRO and** | § | |
| **BRIAN NEWBOLD, Individually** | § | |
| **and on behalf of All Others Similarly** | § | |
| **Situated,** | § | |
| | § | **CIVIL ACTION NO.** |
| **Plaintiffs,** | § | |
| | § | **3:12-CV-4782-D** |
| **v.** | § | |
| | § | |
| **SAMSUNG TELECOMMUNICATIONS** | § | |
| **AMERICA, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT**
**OPINIONS OFFERED BY PLAINTIFFS' EXPERT W. ROSS STONE**

**I.      Stone is not qualified to testify about alleged hardware defects in Samsung's Galaxy**
**S line of smartphones.**

In response to Samsung's arguments that Stone is not qualified to offer any expert

opinions about the Galaxy S line of smartphones, Plaintiffs concede that Stone has no specific

experience, education, training, knowledge, or background related to smartphone design,

smartphone testing, or smartphone circuitry. Ps. Response at 3. Instead, Plaintiffs rely on Stone's

Ph.D, his experience with "cellular and telecommunications equipment and systems," and his

purported expertise on "electronic interference caused by voltage within a circuit." *Id.*

But Stone's experience as a "radio scientist" who specializes in antennas and propagation

does not qualify him to offer any expert testimony as to an alleged common hardware defect in

the four models of the Galaxy S smartphone sold in the United States. In their response,

Plaintiffs do not identify any specific experience or education in Stone's past in the design,

engineering or testing of electronic devices that would qualify him to testify about smartphone circuitry and why a particular smartphone (much less four different smartphones) may have suffered from a power-related issue. Nor do Plaintiffs identify any experience or education in Stone's past related to failure analysis of similar consumer electronic devices or their circuitry. As an example, Stone was "Chief Scientist" at McDonnell Douglas for just one year, 1989, when he was involved in the engineering of military-related products. App. 353 (Stone Dep. at 43:1-45:10). As Stone admitted, his one year of experience at McDonnell Douglas predated the advent of the smartphone. *Id.* (43:15-44:4). Further, because Stone refused to identify the types of devices he worked on for McDonnell Douglas, it is impossible for the Court to conclude that Stone's one year working for a defense contractor over twenty years ago qualifies Stone to offer an expert opinion about an alleged common hardware defect in each of the four models of the Galaxy S smartphone released in 2010. *Id.* (44:10-45:10).

Plaintiffs also argue that Stone "has written and edited peer-reviewed papers" related to the "testing of circuits for interference and noise." Ps. Response at 4. But, when Stone was asked to identify his publications that related to that subject, Stone testified that those particular publications were not on the list he provided. App. 354 (47:19-48:17). In their response, Plaintiffs do not identify any peer-reviewed papers written or edited by Stone about the "testing of circuits for interference and noise," much less any other publications written or edited by Stone that would support a finding that Stone is qualified to testify about alleged hardware defects in the Galaxy S line of smartphones or in any other consumer electronic devices.

With respect to Stone's past work on "cellular telecommunications circuits, methods, and equipment" and work on cellular-telephone handsets and systems, it is clear from Stone's deposition that the vast majority of that experience is in Stone's actual area of expertise, antennas

and propagation, not failure analysis of consumer electronic devices such as Samsung's Galaxy S line of smartphones. His one prior engagement as an expert in a federal court matter involved patent litigation related to antennas. App. 345-46 (11:18-14:5). He has also evaluated patent portfolios in the WiFi and WiMAX fields and for patent infringement. App. 356 (54:17-57:20).

But, other than citing Stone's work in their response, Plaintiffs do not explain why Stone's prior work experience qualifies him to testify about alleged hardware defects in the Galaxy S line of smartphones. This is not a case, as in *Lavespere v. Niagara Machine & Tool Works, Inc.*, where the expert had practical experience designing devices similar to the device at issue in the lawsuit and where the expert had already been qualified by other courts to testify about the device at issue. 910 F.2d 167, 176-77 (5th Cir. 1990). Accordingly, far from supporting the admissibility of Stone's expert opinions in this case, as argued by Plaintiffs, the Fifth Circuit's opinion in *Lavespere* actually shows why Stone is not qualified: unlike the expert in *Lavespere*, Stone has no practical experience designing consumer electronic devices or performing the failure analysis he offers in this case, either for the device at issue or for similar devices. As Stone freely admitted at his deposition, this case was the first time he performed any sort of failure analysis on a smartphone. App. 348 (22:14-19).

In their response, Plaintiffs also rely on Stone's membership in "two of the most prestigious organizations for electrical engineering." Ps. Response at 4. Again, however, Plaintiffs do nothing to show why Stone's membership in those organizations qualifies him to offer any expert opinions regarding the Galaxy S line of smartphones. Stone may be imminently qualified to offer expert testimony about antennas and propagation because of his fellowship in IEEE and CIE and his editorship of the *IEEE Antennas and Propagation Magazine*, and because of his antennas and propagation work experience, but Plaintiffs offer no link between that

experience and the expert opinions and analysis Stone is attempting to offer here.[1] In fact, Stone admitted at his deposition that he is not a member of the IEEE's Solid-State Circuit Society, which is the organization that deals with the design of integrated circuits. App. 353-54 (45:11-46:5).

Finally, Plaintiffs attempt to argue that this Court's opinions in *Nunn v. State Farm Mutual Auto Insurance Co.* and *Rolls-Royce Corp. v. Heros, Inc.*, support the admissibility of Stone's opinions in this case. Ps. Response at 5-6. In *Nunn*, this Court found that the plaintiff insured's vehicle damage expert was qualified to offer a damage estimate for fire damage to a Range Rover, even though he lacked expertise to perform many of the needed repairs, because he had 28 years of experience preparing preliminary estimates of vehicle damage. 2010 WL 2540754, at *3 (N.D. Tex. June 22, 2010). Here, by contrast Stone does not have any years of experience performing failure analyses for consumer electronic devices such that the Court could conclude, based on that prior experience, that Stone is qualified to offer opinions regarding the Galaxy S line of smartphones, much less that all four models of the device suffered from a "common hardware defect" that caused them to malfunction in multiple ways.

In *Rolls-Royce*, this Court found the plaintiff's expert was qualified to offer limited expert testimony regarding the Parts Manufacturer Approval ("PMA") industry based on his experience in that industry. 2010 WL 184313, at *3 (N.D. Tex. Jan. 14, 2010). Here, because Stone is not just offering general opinions about the consumer electronics industry, the Court's reasoning in *Rolls-Royce* does not apply in this case.

---

[1]    The "Field of Interest" statement for the IEEE Antennas and Propagation Society says nothing about the design, testing, or failure analysis of printed circuit boards or power management integrated circuits in consumer electronic devices. *See* http://www.ieeeaps.org/aboutaps.html. The focus of the IEEE APS Society includes the following: "antennas, including analysis, design, development, measurement, and testing; radiation, propagation, and the interaction of electromagnetic waves with discrete and continuous media; and applications and systems pertinent to antennas, propagation, and sensing, such as applied optics, millimeter- and sub-millimeter-wave techniques, antenna signal processing and control, radio astronomy, and propagation and radiation aspects of terrestrial and space-based communication, including wireless, mobile, satellite, and telecommunications." *Id.*

But more than that, if the Court were to apply the logic of *Rolls-Royce*, Stone's opinions regarding the design and functioning of the printed circuit boards and power management integrated circuits installed in the Galaxy S line of smartphones should be excluded because Stone has no relevant experience or knowledge regarding those parts (or similar parts) used in smartphones such as the Galaxy S. Specifically, in making its ruling in *Rolls-Royce*, this Court noted that plaintiff's PMA expert could not offer testimony about the specific parts in question because he had no knowledge of those parts. 2010 WL 184313, at *3 ("Without knowledge of the parts in question, the design and approval process, or the Model 250 engine, Dedmon cannot offer testimony about how Hye-Tech developed Model 250 engine parts – an ultimate issue in the case."). Applying that same reasoning, Stone should not be allowed to offer the broad, untested opinion that four different models of the Galaxy S smartphone suffered from a common hardware defect.

II.     **Stone's opinion that all Galaxy S smartphones contained a common hardware defect is irrelevant because Stone admits that he has no basis to opine that any device malfunctioned as a result of the alleged defect.**

Although Plaintiffs rely on Stone's analysis for their argument that all models of the Galaxy S suffered from a "common hardware defect," Stone admitted in his deposition that not all Galaxy S smartphones sold in the United States ever manifested the power-related issues identified in Stone's report[2] and Stone also admitted that he had no knowledge of the failure rates or return rates for power-related issues for the hundreds of thousands of Galaxy S devices sold. App. 350 (31:18-33:1); App. 374-75 (129:23-131:8). Given Stone's admissions, Samsung argued in its motion to exclude that Stone's "common hardware defect" opinions should be excluded

---

[2]     In fact, as explained in Samsung's class certification briefing, the Named Plaintiffs themselves did not suffer from all of the many power-related issues identified in Stone's report.

because they are irrelevant to the Court's commonality and predominance inquiries under Federal Rule of Civil Procedure 23.

Plaintiffs ignore Samsung's argument in their response. Nowhere do Plaintiffs explain how Stone's opinion that there was a "common hardware defect," which Stone admits may never have manifested itself in any particular device, supports a finding that common questions predominate over individual questions in this case. Nor do Plaintiffs explain how Stone's defect opinion is relevant given Stone's admission that he has no knowledge of power-related return rates or failure rates. Under these circumstances, the Court should exclude Stone's opinions because they are irrelevant to the Court's class certification inquiries. *See In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices, & Prod. Liability Litig.*, 288 F.R.D. 445, 449 (C.D. Cal. 2013) (refusing to certify class alleging similar claims) ("Most problematic for Plaintiffs is that they seek to certify a class in which the substantial majority of class members never suffered an actual injury that was caused by a manifest defect in the ABS.").

**III.   Stone's opinion that all Galaxy S smartphones suffered from a common hardware defect is unreliable for multiple reasons.**

In responding to Samsung's unreliability arguments, Plaintiffs try to characterize Samsung's motion as simply presenting a battle of the experts between Stone and Samsung's expert Joe McAlexander. Far from presenting a simple battle of the experts, however, Samsung's motion explains why Stone's broad, untested conclusions are not based on sufficient facts and data and are, therefore, unreliable. Samsung's Motion at 6-11.

As explained in Samsung's motion, Stone relies on Maxim's testing of the failure to wake from sleep mode issue on the Captivate model of the Galaxy S phone and his quick review of Galaxy S design schematics for the four models at issue in this lawsuit to conclude – with no further analysis and with no testing – that all four models of the Galaxy S smartphone suffered

from a hardware defect (or defects) that caused them "to randomly freeze, shut down, reboot, miss call, miss texts, and/or power-off while in standby mode." Ps. App. 1215.

Stone's broad conclusion is unreliable and should be excluded for a number of reasons. *First*, Plaintiffs have failed to explain why Maxim's testing of the Captivate model of the Galaxy S device supports Stone's expert opinions regarding power-related failures on different models of the Galaxy S device. The simple, undisputed fact is that Maxim was not asked to and did not perform any tests on the Fascinate, Vibrant or Epic 4G models of the Galaxy S device for failure to wake from sleep mode or for any other power-related issues. App. 389-398. Moreover, Maxim determined that the specific sleep issue on the Captivate was due to use of tantalum capacitors on that specific device, which Stone admits were not used on other models of the Galaxy S. Ps. App. 1221; App. 397, 401 (Maxim's October 21, 2010 report). Because each model of the Galaxy S smartphone uses different circuit board designs, components, and layouts, it is not possible to extrapolate results from one model of the device to another. App. 536-546 (McAlexander Dec. ¶¶ 123-127).

*Second*, Plaintiffs have failed to explain why Maxim's testing of the failure to wake from sleep mode issue on the Captivate supports Stone's expert opinions that all four models of the Galaxy S suffered from a defect that caused them to randomly freeze, shut down, reboot, miss call, miss texts, and/or power-off while in standby mode. The simple, undisputed fact is that Maxim looked solely at the sleep mode issue on the Captivate and, even then, was only able to replicate that specific failure mode in one of the six allegedly defective devices provided to it. *Id.* Nothing in Maxim's testing relates to random freezing, shutting down, rebooting, missing calls or missing texts. Accordingly, Maxim's report provides absolutely no support for Stone's broad conclusion.

*Third*, Plaintiffs have failed to explain why Maxim's recommended fixes to the Captivate – replacement of one specific tantalum capacitor with a ceramic capacitor and removal of another capacitor – were insufficient to resolve the sleep mode issue on the Captivate. If (as Plaintiffs argue) Maxim's report provides a reliable analysis, then certainly Maxim's repair recommendation, which Samsung adopted, solved the issue in the Captivate. Because other models of the Galaxy S did not use tantalum capacitors (as Stone concedes), the power-related issue for the Captivate was solved as result of Maxim's suggested fix.

In any event, instead of explaining why Stone is justified in leaping from Maxim's analysis of the sleep mode issue on the Captivate to his broad common hardware defect conclusions, Plaintiffs argue that Maxim was in the best position to analyze and identify the hardware defect. Ps. Response at 9. Samsung agrees with Plaintiffs on this point, but only insofar as Maxim's analysis and testing relates to failure to wake from sleep mode on the Captivate. Nothing in Maxim's report regarding the Captivate supports any defect finding in any other model of the Galaxy S for any of the many power-related issues identified by Stone.

In response to Samsung's argument that Stone performed no testing of the Plaintiffs' Galaxy S phones or any other Galaxy S devices, Plaintiffs argue that Stone was not required to perform any independent testing to justify his broad conclusions.[3] While experts may not be required by Rule 703 to perform independent testing for their expert opinions to be admissible, Samsung submits that Stone's conclusions are unreliable without testing to justify them. The sole tests Stone relies upon are Maxim's tests of the sleep mode issue on the Captivate and, even then, Stone does not know what tests Maxim performed on the single Captivate that exhibited the

---

[3]      For its part, Samsung had its engineers test Plaintiffs' devices and Samsung has submitted those results to the Court. App. 662-65.  Neither Newbold's device nor Galitski's device exhibited any failure mode identified by Stone. *Id.*  Taliaferro's device froze, but Samsung's inspection showed significant liquid damage. *Id.* Having never looked at Taliaferro's device, Stone's opinion that liquid damage was "highly unlikely" to cause issues with Taliaferro's device is nothing more than speculation. *See* Ps. Response at 11.

sleep mode issue. App. 364-65, 385 (Stone Dep. at 88:9-90:11; 171:29-172:8). Samsung submits that Stone's failure to test his conclusions by testing other models of the Galaxy S device in an attempt to duplicate his alleged failure modes and to isolate the cause – as did Maxim in its testing of the sleep mode issue on the Captivate – renders Stone's conclusions unreliable.

Finally, throughout its response, Plaintiffs argue that Stone's opinions are reliable because Stone used the same information and methods as did Samsung's expert McAlexander. This is obviously not true. Nowhere in his report does McAlexander offer the same sort of wild extrapolation as Stone offers in his report. App. 510-521 (McAlexander Dec. at ¶¶ 70-86). Instead, McAlexander explains why Maxim's analysis of the sleep mode issue on the Captivate cannot be used to justify the conclusions contained in Stone's report. *Id.*

## IV. Conclusion.

As set out here and in its motion to exclude, Samsung respectfully requests that the Court exclude the expert opinions of Plaintiffs' expert W. Ross Stone from the Court's consideration of Plaintiff's motion for class certification and for any other purpose related to this lawsuit. Stone is clearly not qualified under Federal Rule of Evidence 702(a) to offer his purported expert opinions. He has no relevant knowledge, skill, experience, training or education to qualify him to offer expert testimony about Samsung's Galaxy S line of smartphones, their design, or what might have caused a particular device to malfunction. Further, Stone's opinions should be excluded because they not relevant to the Court's commonality and predominance inquiries under Federal Rule of Civil Procedure 23(a)(2) and (b)(3). As Stone admits, he has no knowledge of whether any particular device ever manifested any of the many power-related issues identified in his report, so his opinions provide no support for commonality or predominance findings in this case. Finally, Stone's opinions should be excluded because they

are unreliable under Federal Rule of Evidence 702(b)-(d). Stone has conducted no testing or analysis to support his opinions; and the materials relied upon by Stone do not support his broad, unjustified conclusions.


Date:  January 12, 2015                    Respectfully submitted,

                                           */s/ John Volney*
                                           Jeffrey M. Tillotson, P.C. (jtillotson@lynnllp.com)
                                           Texas State Bar No. 20039200
                                           John Volney (jvolney@lynnllp.com)
                                           Texas State Bar No. 24003118
                                           Alan Dabdoub (adabdoub@lynnllp.com)
                                           Texas State Bar No. 24056836
                                           **LYNN TILLOTSON PINKER & COX, L.L.P.**
                                           2100 Ross Avenue, Suite 2700
                                           Dallas, Texas  75201
                                           (214) 981-3800 Telephone
                                           (214) 981-3839 Facsimile

                                           **ATTORNEYS FOR DEFENDANT
                                           SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC**


## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via the Court's ECF system on January 12, 2015.

                                           */s/ John Volney*
                                           John Volney


4811-5275-3185