IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANE GALITSKI, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:12-CV-4782-D |
| VS. | § | |
| | § | *This memorandum opinion and order was filed unsealed |
| SAMSUNG TELECOMMUNICATIONS | § | on September 11, 2015, with the redactions that defendant |
| AMERICA, LLC, | § | requested in its unopposed motion to have certain parts |
| | § | remain under seal.  For citation purposes, the date the |
| Defendant. | § | memorandum opinion and order was filed is August 28, 2015. |

MEMORANDUM OPINION
AND ORDER

In this putative class action arising from the sale of allegedly defective Galaxy S

mobile phones manufactured by defendant Samsung Telecommunications America, LLC

("Samsung"), the dispositive question presented by plaintiffs' motion for class certification

is whether they have met the predominance requirement of Fed. R. Civ. P. 23(b)(3).

Concluding that they have not, the court denies the motion.[1]

I

A

Plaintiffs Shane Galitski ("Galitski"), Richard Taliaferro ("Taliaferro"), and Brian

Newbold ("Newbold") bring this putative class action against Samsung on behalf of

hundreds of thousands of California consumers who purchased allegedly defective Galaxy

---

[1]The court is deciding this motion for class certification without conducting an evidentiary hearing or receiving oral testimony, as permitted under Rule 43(c).  *See, e.g., Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 384 n.1 (N.D. Tex. 2009) (Fitzwater, C.J.), *aff'd sub nom. Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011).

S mobile phones sold under the brand names AT&T Captivate ("Captivate"), T-Mobile Vibrant ("Vibrant"), Sprint Epic 4G ("Epic"), and Verizon Fascinate ("Fascinate").  They allege that all four Galaxy S models suffered from a common hardware defect that could cause them to randomly freeze, shut down, reboot, and power off while in standby or sleep mode, rendering the phones unfit for their intended use and purpose.  Plaintiffs move to certify the following Rule 23(b)(3) class:

> All California residents who purchased a Samsung Galaxy S Class Phone (AT&T Captivate, T-Mobile Vibrant, Sprint Epic 4G, and Verizon Fascinate) from June 1, 2010 through the present.  Excluded from the Class are defendant, its officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendant had a controlling interest or was controlled by.

Ps. Br. 3.

## B

In July 2010 Samsung and AT&T launched the Captivate, the first of the Galaxy S phones to be sold in the United States.  After the phones were released, AT&T used an "Early Warning Process" ("EWP") to analyze the first 200 Captivate phones returned by customers.  As part of the EWP, AT&T provided returned phones to Samsung to validate reported problems and identify any necessary corrective action.  One of early-return issues that AT&T identified was the phone's failure to wake from sleep mode (the "power-off issue").

Samsung asked Maxim Integrated Products, Inc. ("Maxim"), the supplier of the power

management integrated circuit ("PMIC"), to assist in identifying a possible cause of the

power-off issue.  After testing six failed Captivate phones (one of which experienced the

issue), Maxim determined that ███████████████████████████████████

███████████████████  Maxim summarized the "root cause" of the power-

off issue as follows:



Ps. App. 479.  According to Samsung, this problem could be addressed by ███████

███████████████████████████████████████████████████

███████████████████████  Plaintiffs maintain that although "[t]he full

details of what Maxim discussed and communicated to Samsung are presently unclear,"

Maxim identified the core problem as a ██████████████  and recommended that

███████████████████████████

 After receiving Maxim's analysis, Samsung changed its production line in early

November 2010 for all new Captivates, incorporating additional sensitivity testing for the

PMIC and making capacitor changes on all Captivates that were returned for any reason to

Samsung's repair facility in Texas.  Samsung did not issue a product recall for units produced

before November 2010.  It instructed retailers to continue to sell through existing inventory

and to exchange any devices returned because of the power-off issue.  According to Samsung, AT&T considered the power-off issue to be resolved by the end of 2010.  It contends that "no other models of the Galaxy S device had the same [power- off] issue as the Captivate," D. Br. 15, and that the circuit board design and layout for each of the four Galaxy S phones is unique.  Plaintiffs disagree.  They rely on the expert opinions of W. Ross Stone, Ph.D. ("Dr. Stone"),[2] who concludes that all four models of the Galaxy S phone have the same circuit configuration that Maxim identified as "Cause 1"[3] of the power-off issue. Plaintiffs also maintain that the Fascinate, Epic, and Vibrant all experienced freezing,

---

[2]Samsung has filed a motion to exclude the expert opinions of Dr. Stone.  *See infra* § VIII.  Because the court concludes that plaintiffs' motion for class certification should be denied even if it considers Dr. Stone's expert opinions, it will assume for purposes of this decision that Dr. Stone's opinions are admissible, and it denies the motion to exclude.

[3]Dr. Stone identified "Cause 1" of the power-off issue as follows:



Ps. App. 1218.

powering off, and resetting while in standby mode, similar to the issues reported for the Captivate.

Samsung sold each Galaxy S phone with a limited warranty ("Warranty") that warranted the phone against defects in material and workmanship. The Warranty provides, in pertinent part:

> [Samsung] warrants to the original purchaser ("Purchaser") that SAMSUNG's phones and accessories ("Products") are free from defects in material and workmanship under normal use and service for the period commencing upon the date of purchase and continuing for the following specified period of time after that date: . . . Phone 1 Year[.] . . .

> During the applicable warranty period, SAMSUNG will repair or replace, at SAMSUNG's sole option, without charge to Purchaser, any defective component part of Product. To obtain service under this Limited Warranty, Purchaser must return Product to an authorized phone service facility in an adequate container for shipping, accompanied by Purchaser's sales receipt or comparable substitute proof of sale showing the original date of purchase, the serial number of Product and the sellers' name and address. To obtain assistance on where to deliver the Product, call Samsung Customer Care at [telephone number]. Upon receipt, SAMSUNG will promptly repair or replace the defective Product.

D. App. 2-3. Plaintiffs contend that because all Galaxy S phones contain a defective component part ████████ Samsung is obligated under the terms of the Warranty to repair or replace the defective component or the entire Galaxy S phone.

## C

In August 2010 plaintiff Newbold purchased an Epic model phone and used it for approximately 1½ years. During the time Newbold owned the phone, it frequently rebooted

itself while it was in sleep mode and occasionally crashed and/or froze while in use. Newbold testified that his phone rebooted itself from once each day to as many as one or two times an hour.  He complained to Sprint (his wireless carrier) on numerous occasions, but Sprint was unable to resolve the problems.[4]  Newbold also complained to Samsung, but he contends that Samsung's representative told him to seek help from Sprint.  Newbold never returned his phone to Samsung or to Sprint for repair or replacement, and he did not review the Samsung Warranty to determine how to get warranty service from Samsung.  Instead, he demanded that Sprint provide him a different model of phone, but Sprint refused.

Plaintiff Galitski purchased his Epic model phone in October 2010 and used it for approximately two years.  Galitski's phone randomly rebooted itself approximately two to three times per month, and, once or twice per month, it froze while he was attempting to use it.  Although Galitski contacted Sprint mainly about other issues unrelated to the phone itself, he does not recall ever contacting Samsung about the issues with his phone, and he never sent his phone to Samsung for repair or replacement.  Galitski testified that, before he purchased the Epic, he did not read the Samsung Warranty.

Plaintiff Taliaferro purchased a Fascinate model phone in November 2010.  Within one month of his purchase, he began experiencing three problems: the phone froze while he

---

[4]After Newbold took every step that Samsung and Sprint suggested to remedy the problems with his Epic phone, and after Sprint and Samsung told him there was nothing more that he could do to address his issues other than replace the phone at his cost, Newbold "rooted" his phone—i.e., replaced the standard software with unauthorized software developed by a third party—in an effort to resolve the problems.

was using the Google Maps navigation application; it lost signal and dropped calls while he was using it; and it failed to wake from sleep mode.  Taliaferro contacted Verizon, and, within six to nine months of his original purchase, Verizon provided him with a replacement phone.  Taliaferro neither contacted Samsung nor sent his phone to Samsung for warranty service.  During overnight standby testing performed on plaintiffs' phones in connection with this lawsuit, Taliaferro's Fascinate froze.[5]  Samsung contends that, when the interior of Taliaferro's phone was inspected, its engineer identified significant liquid damage on the device's ███, chipset, and connectors.

## D

Taliaferro, Newbold, and Galitski filed this lawsuit against Samsung in the Central District of California, alleging claims under federal and California law for breach of express warranty; breach of implied warranty; violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1792 (West 2009); violations of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act ("Magnuson-Moss Act"), 15 U.S.C. § 2301 *et seq.*; violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (West 2009); violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (West 2008); and common law claims for assumpsit and quasi-contract.  The case was subsequently transferred to this court.  After denying Samsung's motion to compel arbitration, the court granted in part Samsung's Rule

---

[5]Testing was also performed on Newbold's and Galitski's phones, but neither phone exhibited any symptoms of freezing or rebooting.

12(b)(6) motion to dismiss, dismissing plaintiffs' claims for breach of express warranty, breach of implied warranty under the California Uniform Commercial Code ("UCC"), breach of express warranty under the Song-Beverly Act, and common law counts for assumpsit and quasi-contract. *See Galitski v. Samsung Telecomms. Am., LLC*, 2013 WL 6330645, at *8, 9, 11, & 16 (N.D. Tex. Dec. 5, 2013) (Fitzwater, C.J.) ("*Galitski I*"). The court also granted plaintiffs leave to replead.

Plaintiffs then filed an amended complaint alleging claims for breach of express warranty, breach of implied warranty, violation of the Song-Beverly Act, violation of the Magnuson-Moss Act, violation of the CLRA, and violation of the UCL. Samsung moved to dismiss Newbold's express warranty and implied warranty claims, but the court denied the motion. *See Galitski v. Samsung Telecomms. Am., LLC*, 2014 WL 3610789, at *5-6 (N.D. Tex. July 22, 2014) (Fitzwater, C.J.) ("*Galitski II*").

Plaintiffs now move for class certification under Rule 23(b)(3). They maintain, in relevant part, that

> [t]his case presents straightforward common issues: (1) is the Class Phone (or more specifically the printed circuit board) defective across all Class Phone lines; (2) was that defect ever fully repaired prior or subsequent to release of the phones; (3) does the presence of this defect constitute a defect covered by either express or implied warranty and was it a non-disclosed material fact; and (4) what is the reasonable remedy for distributing a Class Phone with a known, but undisclosed, material defect? Answers to these questions will resolve the claims of each Class Member in one common trial of these issues and produce one unified conclusion.

Ps. Br. 26-27.[6]  Plaintiffs also contend that they can meet the predominance requirement.

Samsung opposes plaintiffs' motion, arguing, *inter alia*, that plaintiffs cannot make the

required showing of predominance.  The court has heard oral argument.

## II

"A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites

found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3)." *Mullen v.*

*Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999).  The four Rule 23(a)

prerequisites are:

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or

---

[6]In addressing the commonality requirement of Rule 23(a), plaintiffs contend there are "[n]umerous common questions of law and fact [that] satisfy the commonality requirement," and they maintain that the following are examples:

> (a) whether a defect exists in the Class Phones that caused the phones to randomly freeze, shut down, reboot, miss calls, miss texts, and power-off while in standby mode;
>
> ███████████████████████████████████████
> ███████████████████████████████████████
> (c) whether the ███████████████████████
> ███████████
> (d) whether express or implied warranties required replacement of the  or the entire phone due to each Class Phone having a defect; and
> (e) whether the defect was a material fact Samsung failed to disclose to consumers.

Ps. Br. 29 (citations omitted).

defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  The two additional Rule 23(b) requirements are "predominance" and "superiority," which require that common questions "predominate over any questions affecting only individual members," and that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615; *Mullen*, 186 F.3d at 623-24.

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23.  The Rule does not set forth a mere pleading standard.  Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  The provision at issue here is Rule 23(b)(3), which requires a court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members.

Repeatedly, we have emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.  Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim.  That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.

> The same analytical principles govern Rule 23(b). If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).

*Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S.Ct. 1426, 1432 (2013) (citations, internal quotation marks, and emphasis omitted).

"To decide whether there is a class-wide basis for deciding the predominant issues, [the court] must first ascertain which are the predominant issues that must be decided on a class basis." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008). The court must "identify the substantive issues that will control the outcome of the case, assess which of these issues will predominate, [and] determine whether these issues are common throughout the proposed class." *Id.* A class plaintiff cannot merely point to a "common course of conduct" without also demonstrating "whether the common course of conduct provide[s] a class-wide basis for deciding the predominant class issues of fact and law." *Id.* "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

> For a question to be a common substantive issue that predominates, it must be definitively answered for all class members using a generalized set of facts and producing one unified conclusion. A court must not "assume[] that because the common issues would play a part in every trial, they must be significant.

*Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 390 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)), *aff'd sub nom. Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011).

In analyzing whether a class certification motion satisfies the predominance requirement, the court also "must consider how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). "This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (citation and internal quotation marks omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S.Ct. 2179, 2184 (2011) (quoting Rule 23(b)(3)).

The failure to satisfy the predominance requirement is sufficient of itself to warrant denying class certification. *Hancock*, 263 F.R.D. at 392 ("Because the court has determined that the proposed class fails to meet the predominance requirement of Rule 23(b)(3), it is unnecessary to examine the remaining certification requirements of Rule 23(a).").[7]

---

[7]Because the court concludes that plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3), it is unnecessary to examine the remaining certification requirements.

III

The court begins with plaintiffs' express warranty claims.[8]

A

In support of their assertion that class-wide issues will predominate in the adjudication

of their express warranty claims, plaintiffs posit that Samsung provides the same written

---

[8]Plaintiffs appear to bring three express warranty claims: a claim under the California UCC; a claim under the Song-Beverly Act; and a claim under the Magnuson-Moss Act. Under California law, the elements of a claim for breach of an express warranty are: (1) the defendant made an affirmation of fact or promise, or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff. *Keegan v. Am. Honda Motor Co.*, 838 F.Supp.2d 929, 949 (C.D. Cal. 2012) (citation and internal quotation marks omitted). "The essential elements of a cause of action under the [UCC] for breach of an express warranty *to repair defects* are (1) an express warranty to repair defects given in connection with the sale of goods; (2) the existence of a defect covered by the warranty; (3) the buyer's notice to the seller of such a defect within a reasonable time after its discovery; (4) the seller's failure to repair the defect in compliance with the warranty; and (5) resulting damages." *Orichian v. BMW of N. Am., LLC*, 172 Cal.Rptr.3d 876, 885 (Cal. Ct. App. 2014) (emphasis added) (citations omitted). "A plaintiff pursuing an action under the Song-Beverly Act has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 50 Cal.Rptr.3d 731, 741 (Cal. Ct. App. 2006). "[T]he [Magnuson-Moss Act] creates a private cause of action for a warrantor's failure to comply with the terms of a written warranty." *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 873 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 918 (9th Cir. 2005)); *see also* 15 U.S.C. § 2310(d)(1) ("[A] consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty . . . may bring suit[.]"). The Magnuson-Moss Act "'calls for the application of state written and implied warranty law, not the creation of additional federal law,' except in specific instances in which it expressly prescribes a regulating rule." *Daugherty v. Am. Honda Motor Co.*, 51 Cal.Rptr.3d 118, 124 (Cal. Ct. App. 2006)(quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)).

warranty to all class members, warranting that its Galaxy S phones "are free from defects in material and workmanship," Ps. Br. 40; rather than being "free from defects," the Captivate, Fascinate, Epic, and Vibrant phones suffer from a common hardware defect; for plaintiffs' express warranty claims, common proof can be used to establish liability, or lack thereof; an express warranty claim requires common proof of the defect's existence, not its cause, and common proof whether Samsung violated its written warranty by failing to repair the defect; California express warranty law focuses on the seller's behavior and obligations—the seller's affirmations, promises, and descriptions of the goods—all of which help define what the seller in essence agreed to sell; product malfunction is not an element of plaintiffs' warranty claim; once made, any affirmation is part of the agreement unless there is clear affirmative proof that the affirmation has been taken out of the agreement; and, at trial, plaintiffs will offer Samsung's written warranties (which are the same for all models) as common proof, thereby allowing this element to be proved with common facts, breach will be established through evidence of the common hardware defect because all of the class phones have the same ███ containing the same defect and root cause; common issues will therefore predominate; and, once express representations are shown to have been made, Samsung must prove by clear affirmative proof its guarantee against defects in manufacture and workmanship has somehow "been taken out" of the class's sales transactions.  Plaintiffs therefore appear to maintain that the predominant issues to be decided concerning their breach of express warranty claims are whether the Galaxy S phones were defective and whether Samsung breached the Warranty by failing to repair the defect, both of which they

contend only require class-wide proof.  As noted, plaintiffs posit that "[p]roduct malfunction is not an element of [their] warranty claim."  *Id.* at 41 (citing *Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699, 704-06 (1973)).

B

The court disagrees with plaintiffs' contention that common issues will predominate the adjudication of their express warranty claims.

1

Samsung has presented evidence that the power-off issue may have been caused by various reasons, including reasons unrelated to hardware failures, firmware failures, software failures, rooting, or customer misuse.  In fact, Dr. Stone, plaintiffs' expert, identifies three different likely causes of the power-off issue, at least one of which is unique to the Captivate phone.  Thus while Dr. Stone's "Cause 1" may be one reason that a particular phone exhibited the power-off issue, a phone could also have exhibited the power-off issue for reasons completely unrelated to "Cause 1."  *See, e.g., Anderson v. Samsung Telecomms. Am., LLC*, No. 8:13-CV-01028-CJC-JPR, slip op. at 9-10 (C.D. Cal. Oct. 20, 2014) ("A [Galaxy S] experiencing a power problem can have many different root causes, including 'problems with software, third party applications, hardware, batteries, chargers, network connection issues, rooting and damage caused by consumer misuse.'  As such, certain class members who experienced uninitiated power off or freezing of the Phone may not be covered by the Warranty, while others will.").  Accordingly, for each class member whose phone exhibited the power-off issue, Samsung is entitled to introduce evidence that, as to that class member's

phone, there was another, more likely cause of the power-off issue (including a cause not covered by the Warranty). Thus "the determinative question of whether [breach] can be established via class-wide proof must, given the particular facts of this case, be answered in the negative." *Gene and Gene*, 541 F.3d at 329. Plaintiffs have failed to demonstrate that the question whether Samsung breached the Warranty can be definitively answered for all class members using a generalized set of facts and producing one unified conclusion. "In short, there is no class-wide proof available to decide [the question of breach] and only mini-trials can determine this issue." *Id.* at 328-29.

2

Moreover, under California law, a latent defect discovered after the warranty period has expired cannot form the basis of a breach of express warranty claim, even if the warrantor knew of the defect at the time of sale. *Daugherty v. Am. Honda Motor Co.*, 51 Cal.Rptr.3d 118, 122 (Cal. Ct. App. 2006); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022-23 (9th Cir. 2008). The reason for such a rule is that

> [e]very manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted.

*Clemens*, 534 F.3d at 1023; *see also Daugherty*, 51 Cal.Rptr.3d at 122 ("Opening the door to plaintiffs' new theory of liability would change the landscape of warranty and product liability law in California. Failure of a product to last forever would become a 'defect,' a

- 16 -

manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself.").[9]

Therefore, plaintiffs will not be able to prevail on their breach of express warranty claims merely by presenting class-wide proof that all Galaxy S phones contained the same "Cause 1" defect. Rather, under California law, it will be necessary for plaintiffs to prove that each individual class member's Galaxy S phone experienced the power-off issue as a result of the allegedly defective ███, *and* that this occurred during the one-year Warranty period. This showing cannot be made through proof of a common design defect that, for any given class member's phone, may or may not have caused that phone to malfunction at all, or to have malfunctioned during the one-year Warranty period. Instead, it will be necessary for plaintiffs to introduce evidence for each member of the proposed class establishing that the "Cause 1" defect caused that particular class member's phone to experience the power-off defect within the one-year Warranty period.

───────────────

[9]In their reply, plaintiffs rely on *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal.Rptr.2d 761 (Cal. Ct. App. 2001), for the proposition that "'proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product.'" Ps. Reply 21 (quoting *Hicks*, 107 Cal.Rptr.2d at 768). "[I]t is unclear whether *Hicks* applies to consumer products with limited lifespans . . . —indeed, multiple district courts have concluded that it does not." *Elias v. Hewlett-Packard Co.*, 903 F.Supp.2d 843, 851 (N.D. Cal. 2012) (citing cases). But even assuming that *Hicks* would apply in this case, plaintiffs have not demonstrated that the alleged design defect in the Galaxy S phones is *substantially certain* to result in malfunction during the useful life of the phones. Indeed, they would be hard pressed to do so given the evidence in the class certification motion record that indicates that only a small percentage of Galaxy S phones were returned for *any reason*, much less because they experienced the power-off issue.

C

Individual issues also predominate with respect to the Warranty precondition that a phone purchaser return the phone to an "authorized phone service facility" "[d]uring the applicable warranty period," D. App. 3, which in this case is one year.  The court has already held that the Warranty requires as a precondition that a phone purchaser return his or her phone to an "authorized phone service facility."  *Galitski I*, 2013 WL 6330645, at *8. Accordingly, under *Galitski I* no class member can recover for breach of the Samsung Warranty unless the member first establishes that he or she returned the Galaxy S phone to an authorized phone service facility during the warranty period.

In deciding whether to certify a class, the court must "consider how a trial on the merits would be conducted if a class were certified."  *Sandwich Chef,* 319 F.3d at 218. Because returning their phones to an authorized service facility within the one-year warranty period is a precondition to recovery under the Warranty, a trial of plaintiffs' express warranty claims will require the jury to determine, for each individual class member, whether and when that class member returned the Galaxy S phone to an authorized phone service facility. For those class members who, like Newbold, *did not* return their phones to an authorized phone service facility, the jury must then decide whether Samsung waived the precondition or permitted the precondition to be satisfied by return to the customer's wireless carrier.  For those class members who *did* return their Galaxy S phones to an authorized phone service facility (or who did not return their phones to an authorized phone service facility but for whom Samsung waived this warranty precondition), a jury must still decide whether

- 18 -

Samsung repaired their phones after a reasonable number of attempts, thus precluding a finding of liability on those class members' express warranty claims.

Although records are likely available that show which class members returned their phones to an authorized service facility within the one-year Warranty period, plaintiffs will be unable to establish their breach of warranty claims unless they prove that Samsung failed to repair the phones as warranted, and, for their Song-Beverly Act express warranty claim, that Samsung failed to repair the phone after a reasonable number of attempts.  *See Robertson v. Fleetwood Travel Trailers of Cal., Inc*., 50 Cal.Rptr.3d 731, 741 (Cal. Ct. App. 2006); *see also* Cal. Civ. Code § 1793.2(d).  To make this determination, it will be necessary for the jury to consider, *inter alia*, whether a repaired phone still exhibited the power-off issue, and, if so, whether it did so because of a common design defect or because of some other cause not covered by the Warranty.  These issues will predominate, and they cannot be determined through common proof.

Nor does the question of waiver present common issues that can be established on a class-wide basis.  In *Galitski I* the court held that plaintiffs could not satisfy Samsung's warranty precondition by returning their defective Galaxy S phones to their wireless carriers. *Galitski I*, 6330645, at *8.  Plaintiffs then amended their complaint to allege that Newbold telephoned Samsung regarding his defective phone and Samsung told him to contact Sprint to resolve his phone's problems.  *Galitski II*, 2014 WL 3610789, at *3.  The court held in *Galitski II* that, as to Newbold only, plaintiffs had plausibly alleged that Samsung designated Sprint as an "authorized phone service facility," and that Newbold had adequately pleaded

that he had satisfied the precondition contained in Samsung's express warranty by returning his phone to Sprint.[10]  *Id.* at *3 & n.3.  It held in the alternative that, as to Newbold, Samsung waived the warranty precondition that required that he return his defective phone to an "authorized phone service facility" by instructing Newbold, when he called Samsung regarding his defective phone, that he should contact Sprint to resolve the problems he was experiencing.  *Id.* at *4.  The court's holdings are based on facts that are unique to Newbold. Indeed, the court expressly noted that the plaintiffs had only alleged that Newbold contacted Samsung and was told to contact Sprint; he had not alleged that "any other named plaintiff or member of the putative class similarly contacted Samsung."  *Id.* at *3 n.3.  To determine whether Samsung permitted the Warranty precondition to be satisfied by returning a defective phone to a particular class member's wireless carrier, or waived the precondition as to that class member, the jury must consider whether each individual class member

───────────────

[10]The court reasoned:

> [t]he allegations in the amended complaint admittedly lack factual detail: for example, plaintiffs do not allege when Newbold telephoned Samsung, what number he called, with whom he spoke, or precisely what he was told regarding Samsung's warranty.  But they are sufficient at the pleading stage, when all allegations are taken as true and all reasonable inferences are drawn in Newbold's favor, to plausibly allege, at least as to Newbold, that Sprint constituted an "authorized phone service facility" and that Newbold complied with the warranty's precondition by returning his defective phone to Sprint.

*Galitski II*, 3610789, at *3 (footnote omitted).

contacted Samsung, and, if so, what the Samsung representative told that class member regarding warranty repairs.[11]  These questions cannot be resolved on a class-wide basis, and they will predominate.

D

Regarding their express warranty claim under the Song-Beverly Act, plaintiffs maintain that they must show that the product had a defect or nonconformity covered by the express warranty, the product was presented to an authorized representative of the manufacturer for repair, and the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts; all of the class phones have the same power-off defect that prohibits the phone from performing its basic function; it is a common question whether this is a covered defect under Samsung's warranty; and Samsung and its authorized representatives were presented opportunities to repair, but the defect was never fixed.  The court disagrees, concluding that, as to plaintiffs' express warranty claims under the California UCC, the Song-Beverly Act, and the Magnuson-Moss Act, the predominant issues cannot be tried on a class-wide basis.

Although there are some common issues, the following questions, which must be decided on an individual class member basis, will predominate: (1) whether the class

---

[11]In their reply, plaintiffs contend that the evidence shows that Samsung waived the Warranty preconditions by replacing the capacitors on all returned Captivates, regardless of the warranty status.  The court disagrees that Samsung's voluntary replacement of the capacitors on returned Captivates establishes the class-wide waiver of the Warranty precondition.

member's Galaxy S phone exhibited the power-off issue at all; (2) if so, whether the class member's Galaxy S phone exhibited the power-off issue during the warranty period; (3) whether the power-off issue that the class member's Galaxy S phone exhibited was caused by the design of the ███, as opposed to any number of other possible causes; and (4) whether the class member returned his or her Galaxy S phone to a Samsung authorized phone service facility for repair during the warranty period, whether Samsung in some way waived this requirement, and whether Samsung failed after a reasonable number of attempts to repair a phone that was covered under the Warranty.  Although "the presence of individualized issues will not necessarily prevent certification, there must be some underlying common question whose resolution would 'constitute a significant part of the individual cases.'" *Hancock*, 263 F.R.D. at 390 (quoting *Mullen*, 186 F.3d at 626).  Plaintiffs have failed to make this showing.  Therefore, because there is "no class-wide proof available" to determine whether Samsung's Warranty was breached with respect to any particular class member or whether Samsung's Warranty repair obligation arose by virtue of a class member's compliance with the Warranty precondition, "and only mini-trials can determine th[ese] issue[s]," the court holds that the predominance requirement of Rule 23(b)(3) is not satisfied. *Id.* at 389 (quoting *Gene and Gene*, 541 F.3d at 328) (internal quotation marks omitted).

IV

The court now considers plaintiffs' implied warranty claims under the Song-Beverly Act, the California UCC, and the Magnuson-Moss Act.

- 22 -

A

Concerning their implied warranty claims, plaintiffs contend that they must show the class phones were unmerchantable; the core test of merchantability is fitness for the ordinary purpose for which such goods are used; Dr. Stone will explain the defect common to the phones; plaintiffs will present evidence that AT&T found that the Captivate ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████ and questions for plaintiffs' implied warranty claims thus can be definitively answered for all class members at once, based on the same generalized set of facts.

Plaintiffs rely on the same reasoning in support of certifying their Magnuson-Moss Act claim. They maintain that the Magnuson-Moss Act provides a federal cause of action for state law express and implied warranty claims; by establishing the class's express warranty and implied warranty claims through common proof, plaintiffs also establish a violation of the Magnuson-Moss Act; and common legal issues predominate.

B

The Song-Beverly Act and the California UCC both recognize an implied warranty of merchantability. Under the Song-Beverly Act, to be merchantable, consumer goods must "(1) [p]ass without objection in the trade under the contract description[,] (2) [be] fit for the

- 23 -

ordinary purposes for which such goods are used[,] (3) [be] adequately contained, packaged, and labeled[, and] (4) [c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a).   Similarly, under the California UCC, to be "merchantable," goods must "at least" be "fit for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314.  The implied warranty of merchantability "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal.Rptr.2d 526, 529 (Cal. Ct. App. 1995) (citations and internal quotation marks omitted).  "'The core test of merchantability is fitness for the ordinary purpose for which such goods are used.'" *Mexia v. Rinker Boat Co.*, 95 Cal.Rptr.3d 285, 289 (Cal. Ct. App. 2009) (quoting *Isip v. Mercedes-Benz USA, LLC*, 65 Cal.Rptr.3d 695, 700 (Cal. Ct. App. 2007)).  "Such fitness is shown if the product is in safe condition and substantially free of defects[.]" *Id.* (internal quotation marks and citations omitted).

Under California law, "[t]he mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability.  Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (citing *Am. Suzuki Motor Corp.*, 44 Cal.Rptr.2d at 528-29).  Whether a product is unfit for its ordinary purpose is a question of fact for the jury.  *E.g., Brand v. Hyundai Motor Am.*, 173 Cal.Rptr.3d 454, 462 (Cal. Ct. App. 2014).

Samsung has offered evidence that, despite the alleged "common" hardware defect ("Cause 1" as identified by Dr. Stone), not all Galaxy S phones experienced the power-off

issue.  In fact, Samsung's evidence permits the reasonable inference that *most* members of the proposed class likely never experienced the power-off issue, or, if they did, experienced it so infrequently that they did not report the problem to Samsung or to their wireless carriers.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████   "Unless a product actually manifests an alleged defect, the plaintiff has not suffered damages with respect to an implied warranty claim."  *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal.Rptr.3d 5, 33 (Cal. Ct. App. 2008) (citation omitted); *see also Am. Suzuki Motor Corp.*, 44 Cal.Rptr.2d at 531 (denying class certification where vast majority of cars sold to the putative class "did what they were supposed to do for as long as they were supposed to do it" and, thus, remained fit for their ordinary purpose.).  Accordingly, the trial of plaintiffs' implied warranty claims will require individualized proof that each particular Galaxy S phone actually experienced the power-off issue with such frequency as to render the phone unfit for its ordinary purpose.  For class members who, like Galitski, experienced the power-off issue only a few times a month or even less, a jury may find that, despite the occasional power-off issue, the class members' phones were nonetheless fit for their ordinary purpose (i.e., making and receiving telephone calls and performing various Internet functions).  *See, e.g., Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123, 1148 (N.D. Cal. 2010) (rejecting

certification where "the implied warranty claim would require an individual determination of whether . . . a plaintiff's [washing] Machine was fit for its ordinary purpose given that the defect could render certain Machines more inoperable than others.  This is a significant concern for class certification, especially given the varying factual allegations made by the various named plaintiffs."); *see also, e.g., Anderson*, No. 8:13-CV-01028-CJC-JPR, slip op. at 11 (holding that implied warranty claim was not suitable for certification of class of Galaxy S phone purchasers because "each proposed member may have experienced these freezing problems differently, including varying frequency, severity, and cause of interruption in use.").

Moreover, there are time considerations that a jury must evaluate regarding each class member's implied warranty claims.  The implied warranty "is coextensive in duration with an express warranty which accompanies the consumer goods," but "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c); *see also Atkinson v. Elk Corp. of Tex.*, 48 Cal.Rptr.3d 247, 256 (Cal. Ct. App. 2006) (stating that, under the Magnuson-Moss Act, "the duration of the implied warranty is the length of the express warranty").  Because the Samsung express warranty at issue is for one year, the implied warranty of merchantability is also for one year.  Accordingly, not only will it be necessary for the jury to consider whether each class member's phone exhibited the power-off issue with enough frequency to render it unfit for its ordinary purpose; it will also be necessary for the jury to decide, for each individual class member, whether the power-off issue occurred

during the one-year warranty period.  *See, e.g.*, *Marcus v. Apple Inc*., 2015 WL 151489, at *9 (N.D. Cal. Jan. 8, 2015) (holding that plaintiffs failed to adequately plead breach of implied warranty of merchantability where they alleged they were able to use their computers for over 18 months); *Elias v. Hewlett-Packard Co.*, 903 F.Supp.2d 843, 852-53 (N.D. Cal. 2012) (dismissing plaintiff's Song-Beverly Act implied warranty claim where plaintiff alleged "his computer's issues arose only after seventeen months of use, well outside the one-year period established by the Song-Beverly Act."); *Tietsworth*, 720 F.Supp.2d at 1142-43 (holding, where washing machine served "ordinary purpose of cleaning clothes within the [applicable implied warranty] period," plaintiff could not state implied warranty claim under Song-Beverly Act based on allegation machine "stopped working altogether" after expiration of statutorily provided period).

Contrary to plaintiffs' position, common questions do not predominate in connection with their implied warranty claims.  Evidence that all Galaxy S phones contained a common hardware defect will not establish that, as to any particular class member, Samsung breached the implied warranty of merchantability.  Rather, it will be necessary for the jury to consider whether each individual class member's Galaxy S phone experienced the power-off issue at all within the one-year warranty period, and, if so, whether the power-off issue occurred with sufficient frequency to render the particular phone unfit for its ordinary purpose.  "Absent any larger common questions requiring class-wide determination, such an exercise would require the court to conduct the type of mini-trials that defeat class certification."  *Hancock*, 263 F.R.D. at 390.

C

Class plaintiffs also assert warranty claims under the Magnuson-Moss Act, which authorizes a civil suit by a consumer to enforce the terms of an implied or express warranty. *See Daugherty*, 51 Cal.Rptr.3d at 124.  It "'calls for the application of state written and implied warranty law, not the creation of additional federal law,' except in specific instances in which it expressly prescribes a regulating rule."  *Id.* (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)).  Because the court has concluded that common issues do not predominate with respect to plaintiffs' express or implied warranty claims under California law, the court also concludes that common issues do not predominate with respect to plaintiffs' express or implied warranty claims under the Magnuson-Moss Act.

V

The court now turns to plaintiffs' UCL claim.

A

Plaintiffs assert that the predominance requirement is met with respect to their UCL claim because relief is available without individualized proof of deception, reliance, and injury; the UCL focuses on the defendant's conduct, rather than the plaintiff's damages; once one representative plaintiff shows he lost money and was injured in fact as a result of Samsung's business practices, no further individualized proof of injury or causation is required to impose restitution liability against Samsung in favor of absent class members; and, at trial, plaintiffs will show they lost money and were injured in fact by purchasing defective class phones, thereby shifting the focus to Samsung to justify its business conduct

and enabling Samsung's liability to be definitively answered for all class members using a generalized set of facts and producing one unified conclusion.[12]

B

The UCL forbids "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."   Cal. Bus. & Prof. Code § 17200. "[R]elief under the UCL is available without individualized proof of deception, reliance and injury," because requiring individualized proof would conflict with the broad relief afforded by § 17203, which provides that restitution is available "to restore to any person in interest

_____

[12]Plaintiffs also contend that Samsung engaged in "unlawful" business acts and practices by, *inter alia*, violating the Magnuson-Moss Act and Song-Beverly Act and by breaching implied and express warranties, and that it engaged in "unfair" business acts and practices by making express and implied warranties that it refused to honor.  Because, for the reasons explained above, plaintiffs' warranty claims are not suitable for class treatment, plaintiffs' UCL claim based on Samsung's alleged breaches of warranty is likewise unsuitable for class treatment.  Before a jury can find that Samsung engaged in unlawful or unfair business acts and practices as to any individual class member based on Samsung's alleged breach of its warranties, it must decide highly individualized fact questions to determine whether, as to that specific class member, Samsung even breached its warranties. *See, e.g., Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 475 (N.D. Cal. 2014) ("The Court has already determined that individual questions are likely to predominate over common questions regarding Plaintiffs' unconscionability[,] breach of contract[,] and breach of the implied covenant of good faith and fair dealing claims for the Fifteen-Minute Class. Consequently, the Court concludes that individual questions are also likely to predominate regarding Plaintiffs' claim under the 'unlawful' prong of the UCL for the Fifteen-Minute Class." (citations omitted)); *Faulk v. Sears Roebuck & Co.*, 2013 WL 1703378, at *10 (N.D. Cal. Apr. 19, 2013) ("Faulk predicates his UCL claim on the alleged violations of the warranty laws and CLRA.  The proof necessary to establish violation of those other laws, including reliance, causation and damages, is the same proof that would establish a violation of the unlawful prong of the UCL.  Because Faulk has failed to show these other claims are suitable for classwide treatment, it follows that his UCL [claim] also is not suitable for classwide treatment.").

any money or property, real or personal, which may have been acquired by means of the

unfair practice." *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009) (citation omitted) ("to

hold that the absent class members on whose behalf a private UCL action is prosecuted must

show on an individualized basis that they have 'lost money or property as a result of the

unfair competition' would conflict with the language in section 17203 authorizing broader

relief." (citation omitted)); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th

Cir. 2012) ("Under California's UCL, restitution is available to absent class members without

individualized proof of deception, reliance, or injury.").[13]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  Although California law remains somewhat unsettled

regarding what type of conduct constitutes an "unfair business practice" in the context of a

consumer lawsuit,[14] the court will assume that determining whether Samsung engaged in an

"unfair business practice" will not require individualized evidence from each class member

---

[13]At oral argument, Samsung relied on *Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014), and *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014), to contend that following the Supreme Court's decision in *Comcast Corp.*, it can no longer be assumed that a class member asserting a UCL claim is entitled to recover regardless whether the class member was injured.  The court need not decide this question.

[14]In *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007), the Ninth Circuit observed that California's UCL, as it applies to consumer suits "is currently in flux," and "[t]he California courts have not yet determined how to define 'unfair' in the *consumer* action context[.]" *Id.* at 735.

but will instead focus only on the conduct of Samsung. *In re Tobacco II*, 207 P.3d at 30 (the focus of the UCL is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."). But even if the court makes this assumption, plaintiffs have not shown that damages can be determined on a class-wide basis or that the individualized inquiries necessary to determine damages for each class member will not predominate in the trial of plaintiffs' UCL claim.

Plaintiffs contend that restitution and disgorgement are the two primary remedies available under the UCL and are based on Samsung's revenues and profits from selling defective class phones, and that this can be established on a class-wide basis without resort to individualized proof.[15] They maintain that restitution can be determined on a class-wide basis without requiring individualized proof because "Samsung maintains information on the revenues and profits from its sale of the [Galaxy S] [p]hones." Ps. Br. 46. Plaintiffs seek disgorgement of all profits Samsung earned from the sale of the allegedly defective Galaxy

---

[15]Plaintiffs rely on various forms of relief when arguing that common questions predominate regarding the calculation of monetary relief. *See* Ps. Br. 44-46. But in determining whether damages for plaintiffs' UCL claim can be determined on a class-wide basis, plaintiffs are limited to the relief they seek for the UCL claim. *See Comcast Corp.*, 133 S.Ct. at 1433 (holding in context of Rule 23(b)(3) class certification that model purporting to serve as evidence of damages in class action must measure only those damages attributable to theory accepted by district court for class action treatment). Although plaintiffs suggest that damages susceptible to class-wide proof might be available for their other claims, *see* Ps. Br. 44-45 (suggesting that repair or replacement of the defective phones is an available remedy for plaintiffs' warranty claims), they do not argue that such damages are available for their UCL claim.

S phones and contend that this amount is easily calculable, relying on evidence that Samsung made up to a ▓▓▓▓ profit margin from its sale of the Galaxy S phones, and that these phones were sold at retail, on average, for $550. Alternatively, plaintiffs contend that they are entitled to "restitution for the money paid for the defective phones." Ps. Reply 23.

First, plaintiffs propose that Samsung disgorge all of the profits earned from its sale of the Galaxy S phones. "While not expressly addressed by the California Supreme Court in the specific context of a class action, courts have generally found that '*nonrestitutory disgorgement* is not an available remedy in a UCL class action.'" *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) (quoting *Madrid v. Perot Sys. Corp.*, 30 Cal.Rptr.3d 210, 225 (Cal. Ct. App. 2005)); *see also Feitelberg v. Credit Suisse First Boston, LLC*, 36 Cal.Rptr.3d 592, 607 (Cal. Ct. App. 2005) ("nonrestitutory relief is unavailable in class actions brought under the UCL"). Plaintiffs cannot establish through class-wide proof the amount that Samsung must disgorge from profits earned from sales of the Galaxy S phones, because there is evidence that Samsung is entitled to present at trial that most class members received *some* benefit from their phones—indeed, that many class members received the *full* benefit from their phones. Plaintiffs have not established that awarding class members the *full amount* by which Samsung profited from its sale of the Galaxy S phones correlates, in any way, to the amount necessary to restore to each class member that which Samsung obtained by its allegedly unfair practices. Awarding class members the full amount that Samsung profited could likely be achieved on a class-wide basis, but this method would result in the award of nonrestitutory disgorgement for many

of plaintiffs' proposed class members, which California law does not permit.  *See Red*, 2012
WL 8019257, at *11.  Accordingly, questions involving the amount of disgorged profits to
be received by individual class members will predominate.

Nor does plaintiffs' second proposal for calculating damages present a common issue
that can be decided by class-wide proof.  Restitution relief under the UCL is an equitable
remedy, the purpose of which is to restore the status quo by returning to the plaintiff funds
in which he or she has an ownership interest.  *Korea Supply Co. v. Lockheed Martin Corp*.,
63 P.3d 937, 947 (Cal. 2003).  Although a court of equity "may exercise its full range of
powers in order to accomplish complete justice between the parties," the restitution awarded
must be a "quantifiable sum" and must be supported by substantial evidence.  *Colgan v.
Leatherman Tool Grp., Inc*., 38 Cal.Rptr.3d 36, 61 (Cal. Ct. App. 2006) (citations and
internal quotation marks omitted).  "The restitution awarded 'must correspond to a
measurable amount representing the money that the defendant has acquired from each class
member by virtue of its unlawful conduct.'" *Algarin v. Maybelline, LLC*, 300 F.R.D. 444,
460 (S.D. Cal. 2014) (quoting *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097,
at *11 (N.D. Cal. Jan. 7, 2014)).

Plaintiffs propose that Samsung be required to pay restitution to the class members,
calculated as "the money paid for the defective phones."  Ps. Reply 23.  To the extent
plaintiffs intend to argue that class members should be compensated based on whether their
Galaxy S phones actually exhibited a defect, for the reasons explained above, *see supra*
§§ III(B)(1), III(D), and IV(B), an individualized inquiry will be required to determine

whether and to what extent any particular Galaxy S phone exhibited the power-off issue.  To the extent plaintiffs seek, for each class member, to recover the *full price* paid for each member's Galaxy S phone, such an award would constitute nonrestitutionary disgorgement, which California law does not allow.  *See Red*, 2012 WL 8019257, at *11 ("The Court thus cannot approve Plaintiffs' proposal that Kraft disgorge the full profits earned from sales of the Products within the class period, as Plaintiffs undeniably received some benefit from the Products and thus awarding class members full refunds on their purchases would constitute nonrestitutionary disgorgement.").

Plaintiffs have failed to present the court with any feasible method of determining what amount of restitution each class member is owed.  In *Bell Atlantic Corp.* the Fifth Circuit addressed the extent to which the necessity of individualized damages calculations may preclude class certification:

> We realize that relatively few motions to certify a class fail because of disparities in the damages suffered by the class members.  Even wide disparity among class members as to the amount of damages suffered does not necessarily mean that class certification is inappropriate, and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.  Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate.

*Bell Atl. Corp.*, 339 F.3d at 306-07 (citation and footnotes omitted).  Thus "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class."  *Steering*

*Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citing *Bell Atl. Corp.*,

339 F.3d at 308); *see also O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 745

(5th Cir. 2003) ("In light of the individual calculation of damages that is required, the district

court abused its discretion in certifying [plaintiffs'] claims.").

The court concludes that plaintiffs have not met their burden of establishing that the

award of restitution damages presents a common issue that can be determined on a class-wide

basis.[16]  The only two methods that plaintiffs propose for awarding restitution damages to

individual class members would require the jury to decide, for each individual class member,

whether he or she received any value from his or her Galaxy S phone, or would require the

_____

[16]Plaintiffs suggest that "[i]f necessary, damages determinations may be bifurcated from liability," Ps. Reply 24, but they neither move for certification of an issue class under Rule 23(c)(4) nor provide the court with a workable trial plan for deciding individualized questions of damages once Samsung's liability is decided.  Moreover, although Rule 23(c)(4) permits a district court to certify "a class action with respect to particular issues," the Fifth Circuit has cautioned that

> [a] district court cannot manufacture predominance through the nimble use of subdivision (c)(4).  The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial. Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

*Castano*, 84 F.3d at 745 n.21.

- 35 -

court to award damages that, for many class members, would be unauthorized under California law.  The court therefore holds that plaintiffs have not established for their UCL claim that damages can be awarded on a class-wide basis.[17]

VI

Finally, the court considers whether common questions of law or fact will predominate with respect to the trial of plaintiffs' CLRA claim.

A

Plaintiffs maintain that predominance is a test that is readily met for consumer fraud claims like those brought under the CLRA.  They posit that the CLRA makes unlawful various unfair methods of competition and unfair or deceptive acts or practices; they can show on a class-wide basis that the omitted facts were deceptive and material; under the CLRA, causation can be established on a class-wide basis by materiality, which is judged by an objective reasonable person standard that is subject to common proof and suitable for treatment in a class action; and, at trial, they can present evidence of the common hardware defect in the Captivate, Fascinate, Epic, and Vibrant phones, and the jury can determine whether this information was material to the entire class, so there is no risk that a failure of proof on the common question of materiality will result in individual questions predominating.

---

[17]In addition to restitutionary damages, the UCL authorizes injunctive relief.  Courts routinely allow certification under Rule 23(b)(2) of classes seeking equitable relief.  But because plaintiffs request class certification only under Rule 23(b)(3), the court need not consider whether plaintiffs' UCL claims might be certified under Rule 23(b)(2).

B

The CLRA is designed "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.  To achieve this end, "[t]he CLRA enables a consumer to bring a class action on behalf of himself or herself and other consumers similarly situated if the consumer has suffered 'any damage' from the use of any of 23 enumerated acts or practices." *Thompson v. Auto. Club of S. Cal.*, 158 Cal.Rptr.3d 694, 702 (Cal. Ct. App. 2013) (citing Cal. Civ. Code § 1780(a)).  "A CLRA claim warrants an analysis different from a UCL claim because the CLRA requires each class member to have an actual injury caused by the unlawful practice."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (citing *In re Steroid Hormone Prod. Cases*, 104 Cal.Rptr.3d 329, 337 (Cal. Ct. App. 2010)).

In its brief (and at oral argument), Samsung argues that "[p]laintiffs cannot establish predominance of common issues in this case because each of their claims requires individualized proof of actual injury by each proposed class member." D. Br. 33.[18]  By proof of "injury," Samsung means proof of a defect:

---

[18]At oral argument, Samsung's counsel listed among the individual issues that would predominate the questions whether a class member actually had a problem with his or her phone and whether the problem was due to the defect on which plaintiffs base their lawsuit. He asserted, for example, that evidence about the Captivate phone could not be applied to the other three models due to differences in circuitry, which he maintained explained the empirical evidence showing that the return rates for the other phones were markedly less than for the Captivate.

each class member will have to show that his or her device had a manifest defect that caused the device to fail, resulting in some actual injury to them to prevail on any of their claims, which must be accomplished through an individualized and particularized inquiry for each member of the proposed class.

*Id.* at 35.[19]  The court agrees.  For the reasons already addressed,[20] the court holds that it will be necessary for the jury when addressing plaintiffs' CLRA claim to decide whether each individual class member's phone was defective, and this question affecting only individual class members will predominate.

It is no answer to this conclusion for plaintiffs to contend that they can establish through class-wide proof that Samsung failed to disclose and actively concealed a material fact, and that materiality in turn establishes causation.  Plaintiffs' CLRA claim is based on Samsung's alleged failure to disclose to, and active concealment from, phone purchasers the fact that the Galaxy S phone was defective and failed to perform in accordance with expected

---

[19]Samsung advanced this argument as to all of plaintiffs' claims, including their CLRA cause of action.  *See* D. Br. 35 (referring to grounds addressed to plaintiffs' CLRA and UCL claims as being additional reasons).

[20]*See supra* § III(B)(1) (noting that Samsung had presented evidence that the power-off issues may have been caused by various reasons, including reasons unrelated to hardware failures, firmware failures, software failures, rooting, or customer misuse); § III(D) (identifying individual issues that will predominate, including whether the class member's Galaxy S phone exhibited the power-off issue, and whether the power-off issue that the class member's phone exhibited was caused by the design of the ▮▮▮, as opposed to any number of other possible causes); and § IV(B) (noting that Samsung has offered evidence that, despite the alleged common hardware defect identified by Dr. Stone, not all Galaxy S phones experienced the power-off issue, and that Samsung had offered evidence that permitted the reasonable inference that most members of the proposed class likely never experienced the power-off issue, or, if they did, experienced it so infrequently that they did not report the problem to Samsung or to their wireless carriers).

- 38 -

characteristics, uses, and benefits.  *See* Am. Compl. ¶¶ 168-69.  They rely on alleged

violations of the following CLRA provisions: Cal. Civ. Code § 1770(a)(5), (7), (14), and

(16). Am. Compl. ¶ 172.[21]  To prevail on their CLRA claim, plaintiffs must prove that

Samsung in fact violated one or more of these provisions of the CLRA.  At oral argument,

plaintiffs' counsel recognized the necessity that plaintiffs prove an unlawful or unfair act.

As applied to plaintiffs' theory of liability, this requires proof that the phone the class

member purchased was defective.  Samsung is entitled to defend against this fundamental

allegation on an individual class member basis, thereby leading to the unavoidable

---

[21]Cal. Civ. Code § 1770 provides, in pertinent part:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> \*   \*   \*
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> \*   \*   \*
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> \*   \*   \*
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.
>
> \*   \*   \*
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

conclusion that individual questions will predominate.

VII

In this case, to support certifying a class of literally every purchaser of a Galaxy S phone in California between June 2010 and the present (excluding Samsung and related persons), plaintiffs rely on an oversimplified methodology to establish liability and available remedies.  At oral argument, plaintiffs maintained that they can prove at trial on a class-wide basis that the four models of the Galaxy S phone had a common hardware defect in the PMIC that adversely affected the operation of the phone; Samsung was aware of the defect in the phone and had a duty to disclose it; failing to make the disclosure was a material omission, which, in turn, establishes causation and reliance as to the entire class; for their UCL claim, individualized proof of deception, reliance, and injury is unnecessary, and the focus will be on Samsung's conduct, not plaintiffs' damages; proof of whether Samsung engaged in an unlawful act or an unfair act will rely on common evidence; once it is proved that one class member was injured, this is sufficient as to the entire class based on common evidence; and relief in the form of restitution can be decided by the court based on Samsung's profits from selling the Galaxy S phones.  But this macro-level methodology will not withstand micro-level rigorous analysis and close scrutiny.   It breaks down because Samsung is clearly entitled to litigate on an individual class member basis such fundamental and dominant issues as: whether a class member's phone was defective at all; whether the class member experienced the power-off issue as a result of the allegedly defective ███ whether the class member experienced the power-off issue during the one-year warranty period; whether a

class member returned his or her phone to an authorized phone service facility during the warranty period, and, if not, whether Samsung waived the precondition or permitted the precondition to be satisfied by return to the customer's wireless carrier; whether with respect to a class member who did return his or her phone to an authorized phone service facility, Samsung repaired the phone after a reasonable number of attempts; whether the power-off issue occurred with sufficient frequency to render the particular phone unfit for its ordinary purpose; and whether a class member received some benefit from his or her phone, thereby affecting the amount of disgorged profits that should be awarded to the individual class member.   These are questions that affect individual class members, they cannot be adjudicated based on a generalized set of facts and producing one unified conclusion, and they predominate.

VIII

Samsung has filed a November 12, 2014 motion to exclude expert opinions offered by plaintiffs' expert Dr. Stone.  As the court explains *supra* at note 2 , because the court concludes that plaintiffs' motion for class certification should be denied even if the court considers Dr. Stone's expert opinions, it denies the motion to exclude, without prejudice to reconsidering the motion prior to or during trial.

The court also denies without prejudice plaintiffs' December 22, 2014 motion to exclude opinions offered by designated experts Joseph C. McAlexander, Abhiram Reddy Yerramaddu, and Jay Amin, without prejudice to reconsidering the motion prior to or during trial.

- 41 -

* * *

Plaintiffs' motion for class certification is therefore denied, and Samsung's and plaintiffs' motions to exclude expert opinions are denied without prejudice.

**SO ORDERED**.

August 28, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE